✓ FILED  ___ LODGED
___ RECEIVED  ___ COPY

SEP 2 3 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____KCG_____ DEPUTY

1  Erik Arthur Otteson,
2  PO Box 4093
3  Cottonwood, AZ 86326
4  (928) 254-1037
5  vkngfleettrust@gmail.com
6
7  **UNITED STATES DISTRICT COURT**
8  **FOR THE DISTRICT OF ARIZONA**
9

| | |
|---|---|
| ERIK ARTHUR OTTESON,<br>Trustee of the VKNG FLEET TRUST,<br>    Plaintiff<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br>    Defendant | )<br>)<br>)<br>)<br>)<br>) Case No. CV-25-08198-PCT-DWL<br>)<br>)<br>) |

10      **AMMENDED COMPLAINT**

11  **I.    INTRODUCTION**

12  Plaintiff brings this action to redress the unlawful denial of banking access following the

13  lawful presentment of Certification of Trust. Despite written notice and clear authority,

14  Defendant obstructed account access, refused fiduciary recognition, and failed to cure.

15  This action arises from intentional interference with rights secured under federal law.

16  Plaintiff seeks appropriate judicial remedy as the Court deems just and proper.

17  **II.    JURISDICTION AND VENUE**

18     A. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this

19         action arises under the Constitution and laws of the United States, including rights

20         secured by the Fifth and Thirteenth Amendments. The conduct giving rise to the

21         claim involves federal questions of liberty and due process.

B. Supplemental jurisdiction is proper under 28 U.S.C. § 1367, as any related state law claims form part of the same case or controversy under Article III of the Constitution, arising from the same operative facts and underlying events.

C. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred within this judicial district, including the denial of access to accounts, presentment of trust certification, and related correspondence and obstruction.

## III. PARTIES

A. Plaintiff, Erik Arthur Otteson, appears solely in his capacity as trustee and real party in interest for the Vkng Fleet Trust, pursuant to Rule 17(a)(1)(E) of the Federal Rules of Civil Procedure. The Vkng Fleet Trust is a private express trust, not an entity or juridical person, and has no capacity to sue or be sued in its own name.

1. In Navarro Savings Ass'n v. Lee, 446 U.S. 458 (1980), the Supreme Court affirmed that trustees who hold legal title and manage litigation on behalf of a trust may sue in their own names as the real parties in interest. Plaintiff meets this standard.

2. To the extent Americold Realty Trust v. ConAgra Foods, 577 U.S. 378 (2016), suggests a different analysis for statutory or business trusts, that case is inapplicable. Plaintiff represents a non-statutory, non-entity trust with no shareholders, and therefore proceeds under the clear rule established in Navarro.

3. Any prior captioning, filing, or docketing that has misidentified the Plaintiff as a natural person in his individual capacity is hereby corrected. Plaintiff reaffirms that

he has only ever appeared in a representative capacity, and such appearance is fully authorized by trust instrument and law.

B. Defendant JPMorgan Chase Bank, N.A. ("Chase") is a national banking association chartered under the laws of the United States, authorized to conduct business within the District of Arizona, and operating branches within the division of this Court.

IV.     FACTUAL ALLEGATIONS

A. May 14, 2025 — Defendant presented Plaintiff with its Certification of Trust (a contract document containing indemnifications and consideration) for execution. Plaintiff lawfully indorsed the contract with "Without Prejudice" pursuant to A.R.S. § 47-1308 / UCC § 1-308 to reserve rights. Defendant accepted the contract for internal review. (Exhibit A)

B. May 14 – May 21, 2025 — Defendant retained the contract in review. No notice of defect or rejection was given. During this time, Defendant internally approved the contract and, through banker Christian Zamora, scheduled a May 22 meeting for the purpose of opening accounts pursuant to that approval.

C. May 22, 2025 — Accounts were opened based solely on the approved Certification of Trust. This constituted performance under the contract and confirmed its acceptance. (Exhibit G)

D. May 27, 2025 — Defendant issued a "Please Act Now to Avoid Disruption" notice demanding updated documentation by June 6, 2025, without identifying any

1      lawful defect in the signed contract. This initiated anticipatory breach and

2      obstruction of contracted banking functions. (Exhibit B)

3     E. June 3, 2025 — Plaintiff delivered a written clarification notice upon Defendant,

4      expressly reaffirming the validity of the signed Certification of Trust and

5      requesting acknowledgment. This was a good faith effort to resolve the ambiguity

6      created by Defendant's anticipatory breach, providing Defendant a clear

7      opportunity to cure without litigation (Exhibit C).

8     F. June 4, 2025 — Plaintiff delivered a second notice directly to Defendant's branch

9      representative, demanding correction of Defendant's obstruction and reiterating

10     Plaintiff's readiness to perform all contractual duties. This notice demonstrated

11     Plaintiff's consistent good faith, while Defendant's refusal to respond or cure

12     constituted ongoing obstruction and deliberate bad faith under A.R.S. § 47-1304 /

13     UCC § 1-304 (Exhibit D).

14    G. June 6, 2025 — Defendant closed the accounts. This action constituted breach, as

15     it unlawfully reversed performance already tendered under an accepted contract.

16     This constituted breach.

17    H. June 9, 2025 — Defendant relied on an internal memo authored by Patricia Tracy

18     Jude D. San Agustin, a non-attorney located overseas, to adjudicate A.R.S. § 47-

19     1308 / UCC § 1-308 and reject Plaintiff's lawful signature. This reliance

20     substituted arbitrary policy for law and constituted constructive fraud (Exhibit E).

21    I. June 10, 2025 — Plaintiff mailed a formal Notice of Legal Dispute and Demand to

22     Cure via certified mail to Defendant's Legal Department, placing Defendant on

unambiguous notice of breach. This notice memorialized Defendant's failure to cure after multiple opportunities, preserving Plaintiff's rights and demonstrating exhaustion of reasonable remedies before litigation (Exhibit H).

J. July 31, 2025 — After nearly two months of silence, Defendant responded to Plaintiff's complaints by citing a different agreement — the "Deposit Account Agreement" allegedly provided at account opening and available on Chase.com — as its authority for closure. This agreement was never presented or agreed to prior to account opening, and is not the contract in dispute. The July 31 letter is an on-record admission of a post-acceptance contract swap. (Exhibit I)

## V.     COUNT I
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

A. Plaintiff incorporates all preceding allegations as if fully set forth herein.

B. The relationship between a bank and its customer is governed not only by contract, but by statutory and common law duties recognized in Arizona. Every agreement imposes an implied covenant of good faith and fair dealing, including trust accounts. This duty is codified in UCC § 1-304, which states that "[e]very contract or duty within [the Uniform Commercial Code] imposes an obligation of good faith in its performance and enforcement."

C. Arizona courts have clarified this duty repeatedly. In Wells Fargo Bank v. Arizona Laborers, 38 P.3d 12 (Ariz. 2002), the Arizona Supreme Court held that the implied covenant applies both to the performance of express contract terms and to

any discretionary conduct by one party that may affect the rights of another. This includes financial institutions managing fiduciary accounts.

D. Defendant JPMorgan Chase Bank, N.A. accepted the Plaintiff's trust documentation, opened the trust account, and issued account credentials. It then repudiated its own actions based on an internal signature interpretation, without reference to law, and without any formal notice of deficiency.

E. The Arizona Court of Appeals in Schoenfelder v. Arizona Bank, 796 P.2d 881 (Ariz. Ct. App. 1990), reaffirmed that banks have an affirmative duty to verify authority under UCC Articles 3 and 4. Failure to honor that duty, or to replace legal standards with internal policy, constitutes breach. Chase's internal memo — produced after the fact — confirms that its decision was based not on statutory criteria, but on an informal preference, contrary to law and practice.

F. The relevant communications and notices, preserved in the state court record, reflect that this rejection was not based on fraud, deficiency, or risk. Rather, Chase applied a moving and unwritten standard, concealed its rationale, and refused to cure or explain the issue when prompted. The bank chose to terminate an accepted trust relationship while publicly maintaining that no error occurred.

G. This pattern meets the threshold for intentional concealment under Wells Fargo. The standard of good faith was not met. The discretion exercised by Chase was not neutral, but strategic — and executed in defiance of both commercial norms and the duties codified in the UCC.

H. Once the account was opened and fiduciary credentials verified, Chase was bound to act consistently with law and with its own prior conduct. Instead, it obstructed a fiduciary function without legal cause, forcing Plaintiff to seek redress through correspondence, administrative escalation, and ultimately litigation. These actions were not the product of mistake. They reflect deliberate corporate conduct under the color of policy, outside the scope of law.

I. The legal standards for breach have already been satisfied. If one were to examine the lodged evidence and preserved state court filings, it would be apparent that the prima facie judicial criteria outlined in both Wells Fargo v. Arizona Laborers and Schoenfelder v. Arizona Bank have been met. The dispute is not whether a breach occurred — it is whether this Court will now recognize that breach and provide remedy.

J. Plaintiff therefore seeks declaratory judgment that Defendant breached its contractual and statutory duty of good faith and fair dealing, and requests equitable and declaratory relief — including an order reinstating the trust account, and a finding that Defendant violated its obligations under UCC § 1-304.

## VI. COUNT II

## DENIAL OF PROCEDURAL DUE PROCESS

A. Plaintiff realleges and incorporates all preceding paragraphs as if fully stated herein.

B. Once a fiduciary account is opened, with credentials reviewed and accepted, the relationship between a financial institution and a trustee assumes a legal character.

      The trustee gains a legitimate expectation in the continued access, administration, and enforcement of the account in furtherance of lawful duties.

C. Termination of such access — without prior notice, without identification of any deficiency, and without an opportunity to rebut or cure — constitutes deprivation under color of policy.

D. In Mathews v. Eldridge, 424 U.S. 319 (1976), the United States Supreme Court held that due process requires balancing three factors: (1) the private interest affected, (2) the risk of erroneous deprivation through current procedures, and (3) the institutional interest in procedural efficiency. Plaintiff's interest here was fiduciary in nature, relating to the operation of a lawfully formed trust. The risk of erroneous deprivation was near certain, given that no notice of deficiency or opportunity to respond was ever provided.

E. Similarly, in Goldberg v. Kelly, 397 U.S. 254 (1970), the Court held that due process demands a pre-termination evidentiary hearing when an institution deprives a party of a protected interest. Though Chase is a private bank, its conduct in this case mirrored that of an adjudicator: it accepted documents, issued fiduciary credentials, and then unilaterally revoked access — based on internal interpretation, without lawful notice or hearing.

F. The deprivation in question was not financial alone — it was procedural. Plaintiff had no opportunity to prevent the closure of the trust account. No allegations of fraud, misrepresentation, or error were ever stated. The decision was carried out through vague letters and verbal disclaimers, often after the fact.

G. When prompted for clarification and correction, Chase refused. When warned that legal rights were being obstructed, Chase ignored the claim. When formally noticed of a legal dispute and given an opportunity to cure, Chase chose silence.

H. This pattern of concealment, selective communication, and refusal to engage is precisely what Mathews and Goldberg were designed to prevent. Due process safeguards apply not only to the state, but to any actor who exerts quasi-judicial power with the force and effect of deprivation, particularly when a protected legal interest is obstructed.

I. Chase cannot act as gatekeeper of a fiduciary relationship, then revoke that relationship without due process. The conduct at issue was not an oversight — it was a knowing assertion of interpretive authority, executed in defiance of law and due process protections.

J. The Court need not look further than the preserved communications and timeline of record to conclude that Chase's conduct meets the judicial standard of Mathews and Goldberg. Plaintiff was denied notice, denied the opportunity to be heard, and deprived of a protected interest in the administration of a lawful trust account. These facts establish a prima facie violation of Plaintiff's rights under both the Fifth Amendment and the Fourteenth Amendment to the United States Constitution.

K. Plaintiff therefore seeks declaratory judgment that Defendant's actions constituted a violation of procedural due process, as recognized under the Fifth and Fourteenth Amendments, and requests appropriate equitable relief — including

recognition of the deprivation and such injunctive or restorative measures as the Court deems just and proper.

## VII. COUNT III

### IRREPARABLE HARM AND ONGOING CONSTITUTIONAL DEPRIVATION

A. Plaintiff realleges and incorporates all preceding paragraphs as if fully stated herein.

B. The obstruction of access to fiduciary accounts not only interfered with commercial capacity — it interfered with constitutional rights. Plaintiff's right to contract, to be heard, and to administer a lawful trust was deprived, and continues to be deprived.

C. In Elrod v. Burns, 427 U.S. 347, 373 (1976), the United States Supreme Court held:

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."

D. In Roman Catholic Diocese of Brooklyn v. Cuomo, 592 U.S. ___ (2020), the Court reaffirmed:

"Even in a pandemic, the Constitution cannot be put away and forgotten."

E. The principle of irreparable harm is not confined to speech or worship — it applies to any loss of protected rights. Once due process is violated, once access to fiduciary function is revoked, once judicial doors are closed — the harm is immediate, and it is constitutional.

F. In Weinberger v. Romero-Barceló, 456 U.S. 305 (1982), the Court stated plainly:

1  "Irreparable injury is the sine qua non of injunctive relief."

2  And yet, despite that standard, Plaintiff has not been heard. No injunction has been granted. The court has thus far remained silent.

G. Plaintiff now appears not only in the wake of Chase Bank's obstruction, but in the shadow of a courtroom unwilling to acknowledge the voice of the aggrieved. Plaintiff has made formal attempts to correct the caption, to identify the real party in interest, to assert standing under both Rule 17(a)(1)(E) and controlling trust law. These pleas were ignored.

H. As shown in Exhibit X, the state court failed to recognize Plaintiff's capacity as trustee of the Vkng Fleet Trust. This failure compounds the original harm — transforming it from a single-point denial into a systemic injury. The very forum of redress became a forum of exclusion.

I. What began as obstruction by a private institution has now evolved into judicial silence, enforced through procedural misidentification and refusal to acknowledge standing. This is not merely a contract dispute — it is the erosion of liberty by concealment and avoidance.

J. The Constitution cannot be put away. When a trustee is denied standing, when rights are deprived without process, and when courts refuse to acknowledge the proper party, the harm is not theoretical. It is lived. It is present. It is ongoing.

K. Plaintiff therefore seeks declaratory judgment recognizing that irreparable harm has occurred, that constitutional rights have been obstructed, and that continued judicial refusal to hear the real party in interest constitutes a violation of due

process and equal protection under the Fourteenth Amendment. Plaintiff seeks immediate equitable relief in the form of standing recognition, injunctive preservation of rights, and formal acknowledgment of ongoing harm.

### VIII. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in favor of the Plaintiff and against Defendant JPMorgan Chase Bank, N.A., and specifically prays for the following relief:

A. That the Plaintiff is recognized as proceeding in proper capacity under Federal Rule of Civil Procedure 17(a)(1)(E), as the duly authorized trustee of a private trust, and that standing is affirmed on the basis of the trustee's right to initiate litigation for breach of duty and deprivation of protected rights.

B. That the Plaintiff's claims for monetary relief previously stated in state court in the amount of $299,000.00 are hereby withdrawn without prejudice, in favor of constitutional and equitable remedies sought under federal jurisdiction.

C. That this Court decline to assign any specific compensatory dollar value, and instead determine what measure of punitive damages, if any, reflects:

    1. the cost of liberty lost,

    2. the weight of due process denied,

    3. the severity of irreparable harm endured, and

    4. the fracturing of a family for over four months, triggered solely because one man refused to acquiesce to banking operations lacking clean hands—**res ipsa loquitur**.

    D. That Plaintiff be awarded reasonable costs and preparation expenses, including but not limited to the prevailing hourly rate for litigation professionals, and specifically including the rate customarily charged by senior partners such as Nicole Goodman, to be established through industry-standard billing records or expert testimony.

    E. That Plaintiff be granted such declaratory and injunctive relief as the Court deems just and proper to prevent further harm, restore standing, and vindicate the rights violated herein.

    F. That the Court award any further relief deemed appropriate in law or equity, including findings of fact that ensure these harms are preserved on the record for future constitutional review.

## IX. JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment of the United States Constitution, Plaintiff demands a trial by jury on all issues so triable as a matter of right.

## RESERVATION OF RIGHTS

Plaintiff expressly reserves all rights, remedies, and defenses, both legal and equitable, under the United States Constitution, the Arizona Constitution, the Uniform Commercial Code, applicable federal and state law, and the law of trusts. No part of this complaint shall be construed as a waiver of any right not specifically surrendered. Plaintiff further reserves the right to amend this pleading as justice requires under Rule 15, to pursue

1  discovery under Rule 26, and to pursue sanctions and injunctive relief under Rule 37 and

2  other applicable authority.

3  Dated this 23rd day of September, 2025

4  Respectfully,

5  ERIK ARTHUR OTTESON

6  

7  Trustee of the VKNG FLEET TRUST

8  PO Box 4093
9  Cottonwood, AZ 86326
10  (928) 254-1037
11  vkngfleettrust@gmail.com
12
13  **CERTIFICATE OF SERVICE**

14  I hereby certify that on this 23rd day of September, 2025, a true and correct copy of the

15  foregoing AMMENDED COMPLAINT was served via Certified Mail, Return Receipt

16  Requested, upon the following:

17  Nicole M. Goodwin
18  Greenberg Traurig, LLP
19  2375 E. Camelback Road, Suite 700
20  Phoenix, Arizona 85016
21  CERTIFIED MAIL 9589 0710 5270 2831 2566 60
22
23  ERIK ARTHUR OTTESON

24

25  Trustee for the VKNG FLEET TRUST

Page 14 of 14