```
                                        ___FILED      ___ LODGED
                                        ___ RECEIVED   ___ COPY

                                            OCT 1 7 2025

                                        CLERK U S DISTRICT COURT
                                        DISTRICT OF ARIZONA
                                        BY_____ DEPUTY
```

Erik Arthur Otteson
PO Box 4093
Cottonwood, AZ 86326
(928) 254-1037
erikotteson@gmail.com

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ERIK ARTHUR OTTESON, Pro Se, | Case No. 3:25-cv-08198-DWL |
| Plaintiff, | |
| vs. | |
| JPMORGAN CHASE BANK, N.A., | **COMPLAINT** |
| Defendant. | |

This case presents a straightforward application of the Arizona Supreme Court's decision in Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund, 38 P.3d 12 (Ariz. 2002). Defendant Chase accepted Plaintiff's qualified signature on a banking document and opened business accounts. When Plaintiff exercised his statutory right under the Uniform Commercial Code to reserve his common-law rights by signing "without prejudice," Chase initially honored that signature and provided banking services. Chase then abruptly reversed course, demanded Plaintiff sign without the reservation, and ultimately closed the accounts. Plaintiff, seeking to understand the legal or policy basis for this reversal, sent three written requests asking Chase to produce the written policy it claimed justified its actions. Chase refused all three requests and never produced the policy. Under Wells Fargo, a bank acts in bad faith when it exercises discretionary power based on an internal policy but refuses to articulate or produce that policy, thereby preventing the customer from receiving the benefits of the banking relationship. That is precisely what happened here. Plaintiff seeks nominal damages of one dollar, punitive damages to deter similar conduct, a declaratory judgment clarifying the lawfulness of his indorsement, and the right to

amend this Complaint after discovery reveals the full extent of Defendant's knowledge and intent. The Wells Fargo breach is established by the undisputed documentary record. The purpose of this litigation is to determine, through discovery, whether Defendant's conduct was the result of negligence or scienter—a distinction that will determine the appropriate measure of punitive damages.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between the parties and the amount in controversy, including the potential for punitive damages based on Defendant's size and conduct, exceeds $75,000, exclusive of interest and costs.

2. Plaintiff Erik Arthur Otteson is an individual domiciled in Cottonwood, Arizona.

3. Defendant JPMorgan Chase Bank, N.A., is a national banking association. For purposes of diversity jurisdiction, a national bank is deemed a citizen of the state in which its main office is located. 28 U.S.C. § 1348. Defendant's main office is located in Columbus, Ohio. Defendant is therefore a citizen of Ohio.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

5. In June 2025, Plaintiff Erik Arthur Otteson, acting as Trustee of the VKNG FLEET TRUST (the "Trust"), sought to open trust bank accounts with Defendant Chase at a branch location in Arizona.

6. As part of the account opening process, Chase required Plaintiff to execute a standard form document titled "Certification of Trust." Plaintiff signed this document on or about June 14, 2025. (A true and correct copy of the Certification of Trust is attached hereto as Exhibit A.)

7. Exercising his statutory right under Arizona Revised Statutes § 47-1308 (Arizona's enactment of UCC § 1-308), Plaintiff wrote the words "without

1    prejudice" immediately above his signature on the Certification of Trust. This

2    notation constitutes an explicit reservation of rights expressly authorized by the

3    statute, which provides that "[a] party that with explicit reservation of rights

4    performs or promises performance or assents to performance in a manner

5    demanded or offered by the other party does not thereby prejudice the rights

6    reserved. Such words as 'without prejudice', 'under protest' or the like are

7    sufficient." A.R.S. § 47-1308(A). (See Ex. A, signature page.)

8        8. Chase accepted the Certification of Trust bearing Plaintiff's qualified

9    indorsement, processed the application, and opened trust bank accounts for the

10   Trust. By accepting Plaintiff's performance and opening the accounts, Chase

11   ratified the terms of the agreement, including Plaintiff's reservation of rights.

12       9. Shortly thereafter, on or about May 27, 2025, Chase sent Plaintiff a letter

13   titled "Action Needed," stating that Plaintiff must "visit [his] local branch to sign

14   updated documentation" by June 6, 2025, or the accounts would be restricted or

15   closed. The letter cited vague "Banking regulations" but did not identify any

16   specific regulation, statute, or internal policy, nor did it explain what was allegedly

17   deficient about the documentation Plaintiff had already provided. (A true and

18   correct copy of the Action Needed Letter is attached hereto as Exhibit B.)

19       10. On June 3, 2025, in an effort to resolve the matter in good faith and to

20   create a written record, Plaintiff hand-delivered a formal letter to Chase. In this

21   letter, Plaintiff explained that his indorsement was made pursuant to his rights

22   under UCC § 1-308, that Chase's acceptance of the indorsement and opening of

23   the accounts constituted ratification of the contract, and that he sought clarification

24   regarding Chase's objection. (A true and correct copy of Plaintiff's June 3, 2025

25   letter is attached hereto as Exhibit C.)

26       11. Having received no substantive response, Plaintiff hand-delivered a second,

27   more specific letter on June 4, 2025, addressed to Chase employee Christian

28   Zamora. In this letter, Plaintiff formally requested four pieces of information: (1)

the name of the decision-maker who objected to his indorsement; (2) the specific written policy or legal basis Chase was relying upon; (3) confirmation of whether this policy applies to trustee indorsements made under UCC § 1-308; and (4) whether Chase intended to close the account on this basis. Plaintiff explicitly stated his desire to "resolve this promptly and in good faith" but noted that he could not proceed "based solely on hearsay or unofficial phone representations." (A true and correct copy of Plaintiff's June 4, 2025 letter is attached hereto as Exhibit D.)

12. Chase did not respond in writing to this request. Chase did not produce a written policy. Chase did not provide a legal basis for its position. Chase did not identify the decision-maker. Chase provided no good faith explanation whatsoever.

13. Instead, on or about June 9, 2025, Chase internally circulated an email in which a Chase "Fraud Specialist" responded to an inquiry about Plaintiff's account. When asked whether "without prejudice" is acceptable on a signature for bank documents, the Fraud Specialist replied, "No, 'without prejudice' should not be included in the signature line of a legal bank document." The Fraud Specialist's explanation was that the term "applies to communications made during settlement negotiations" and that its use on a signature line "would be a misapplication of the term." Notably, this internal email makes no mention of UCC § 1-308, despite Plaintiff having put Chase on notice of the statute six days earlier in his June 3 letter. (A true and correct copy of this internal Chase email is attached hereto as Exhibit E.)

14. Based on this internal communication and without ever providing Plaintiff the written policy or legal justification he had requested, Chase proceeded to close Plaintiff's bank accounts.

15. Plaintiff is the sole Grantor, sole Trustee, and, by operation of law, the sole beneficial owner of the Trust, as the trust instrument designates no other beneficiaries. The injuries alleged herein—the loss of time, the interference with

with Plaintiff's ability to conduct business, and the denial of the benefits of the
banking relationship—are personal to Plaintiff as an individual. The Trust, a legal
entity that never became operational, suffered no cognizable harm.

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

I.   **DEFENDANT BREACHED THE IMPLIED COVENANT BY REFUSING TO ARTICULATE THE POLICY IT RELIED UPON TO CLOSE PLAINTIFF'S ACCOUNTS.**

    A.   **Under Arizona Law, Every Contract Contains an Implied Covenant of Good Faith and Fair Dealing.**

      1.  Arizona law implies a covenant of good faith and fair dealing in every contract. This covenant requires that neither party do anything that will deprive the other of the benefits of the agreement.

      2.  When Defendant accepted Plaintiff's Certification of Trust bearing his qualified indorsement and opened the trust bank accounts, a contractual relationship was formed. The benefit of this contract to Plaintiff was the ability to use the accounts for business purposes.

    B.   **The Arizona Supreme Court Has Held That a Bank Acts in Bad Faith When It Refuses to Articulate Its Reasons for Exercising Discretionary Power.**

      1.  In Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund, 38 P.3d 12 (Ariz. 2002), the Arizona Supreme Court addressed the obligations of a bank when it exercises discretionary authority based on an internal policy.

      2.  The Court held that when a bank acts based on an internal policy or guideline, the bank must act in good faith. A bank acts in bad faith when it "refuse[s] to articulate its reasons" for its actions, thereby preventing the other party from understanding or challenging the basis for the bank's decision. Id. at 18.

1    3.  The Court further held that when a bank's conduct prevents the other party

2    from receiving the benefits of the contract, that conduct constitutes a breach of the

3    implied covenant. Id.

4    **C.    Defendant's Conduct Is Indistinguishable from the Bad Faith Conduct**

5    **Condemned in Wells Fargo.**

6    1.  Defendant closed Plaintiff's accounts based on an asserted internal "policy"

7    regarding the acceptability of Plaintiff's qualified indorsement.

8    2.  Plaintiff, seeking to understand and potentially challenge this policy, made

9    three separate written requests for Defendant to produce the policy or articulate its

10   legal basis.

11   3.  Defendant refused all three requests. Defendant never produced a written

12   policy. Defendant never provided a coherent legal justification. Defendant never

13   identified the decision-maker responsible for the closure.

14   4.  By refusing to articulate its reasons or produce the policy it claimed to be

15   relying upon, Defendant prevented Plaintiff from receiving the benefits of the

16   banking relationship and acted in bad faith as a matter of law under Wells Fargo.

17   **D.    Defendant's Internal Communications Reveal That Its Policy Was**

18   **Based on a Legally Erroneous Understanding of the Law.**

19   1.  Discovery of Defendant's internal email (Exhibit E) reveals that

20   Defendant's policy was based on a fundamental misunderstanding of the law.

21   2.  Defendant's Fraud Specialist incorrectly concluded that "without prejudice"

22   applies only to settlement negotiations and is inappropriate on an indorsement line.

23   This conclusion is legally wrong. UCC § 1-308, as enacted in Arizona at A.R.S. §

24   47-1308, expressly authorizes the use of "without prejudice" or similar language to

25   reserve rights when signing documents.

26   3.  Defendant's refusal to produce this policy, combined with the revelation

27   that the policy was legally erroneous, demonstrates bad faith and supports an

28   award of punitive damages.

**E.    As a Direct and Proximate Result of Defendant's Breach, Plaintiff Has Suffered Harm.**

1.  Plaintiff has been deprived of the benefits of the banking relationship.

2.  Plaintiff has been forced to expend substantial time and resources to vindicate his statutory rights.

3.  Plaintiff has been prevented from conducting business through the accounts that Defendant initially opened and then wrongfully closed.

4.  These injuries entitle Plaintiff to nominal damages, punitive damages, and declaratory relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant as follows:

**A.    Awarding Plaintiff nominal damages in the amount of One Dollar ($1.00);**

**B.    Awarding Plaintiff punitive damages in an amount to be determined by the Court or a jury, sufficient to punish Defendant for its bad faith conduct and to deter Defendant and other financial institutions from engaging in similar conduct in the future;**

**C.    Entering a declaratory judgment that:**

**D.    Plaintiff's use of "without prejudice" on the Certification of Trust was lawful and protected by A.R.S. § 47-1308;**

**E.    Defendant's refusal to honor Plaintiff's reservation of rights violated Arizona law;**

**F.    Defendant's refusal to produce the policy it relied upon to close Plaintiff's accounts constituted bad faith under Wells Fargo Bank v. Arizona Laborers;**

**G.    Reserving to Plaintiff the right to seek leave to amend this Complaint following the completion of discovery to assert additional claims based**

1    on facts and evidence obtained through discovery, including but not

2    limited to claims based on Defendant's degree of knowledge, intent, or

3    coordination among Defendant's employees;

4    H.    Awarding Plaintiff his costs of suit;

5    I.    Granting such other and further relief as the Court deems just and

6    proper.

## JURY DEMAND

8    Plaintiff hereby demands a trial by jury on all issues so triable.

9  Respectfully,

10  ERIK ARTHUR OTTESON

11  *Erik Arthur Otteson*

12  Plaintiff, Pro Se

13  PO Box 4093

14  Cottonwood, AZ 86326
    (928) 254-1037

15  erikotteson@gmail.com

16  **CERTIFICATE OF SERVICE**

17  I hereby certify that on this 17th day of October, 2025, a true and correct copy of the
    foregoing COMPLAINT was served via Certified Mail, Return Receipt Requested, upon

18  the following:

19  Nicole M. Goodwin

20  Greenberg Traurig, LLP
    2375 E. Camelback Road, Suite 700

21  Phoenix, Arizona 85016

22  CERTIFIED MAIL 9589 0710 5270 2831 2565 54

23

24  ERIK ARTHUR OTTESON

    *Erik Arthur Otteson*
25

26

27

28

**Exhibit A** – Certification of Trust (Signed and Accepted 05/14/2025)

# CHASE ⬡
## CERTIFICATION OF TRUST

The undersigned represent to JPMorgan Chase Bank, N.A. ("Bank") that we are the Trustee(s) ("Trustee[s]") under a Trust Agreement titled ___*Vkng Fleet Trust*___ ("Trust") Trust, which currently
<sub>Title of Trust</sub>
exists and was duly signed by the Settlor(s) of the Trust. The Trust has not been revoked, modified, or amended in any manner that would cause the representations contained in this Certification of Trust ("Certification") to be incorrect and the signatures below are those of all the currently acting Trustees. **Trustee(s) shall complete this Certification, which will be relied upon by the Bank to open, close, or maintain deposit account(s) in the Trust.**

## TRUST INFORMATION
❖ The Trust was originally executed on ___4/21/25___ and is governed under the laws of ___AZ___.
<sub>Date</sub> <sub>State</sub>
❖ The Trust's taxpayer identification number is (select one) ☐ SSN or ☑ EIN ___37-6804359___.
<sub>SSN or EIN</sub>
❖ The Trust is (select one) ☐ Revocable or ☑ Irrevocable
  ➢ If revocable list name of person(s) with power to revoke: _____.
  <sub>Name of person(s) with the power to revoke</sub>
  ➢ If the Trust was created under Will, indicate: (a) Date of Will_____, (b) Date Will admitted to
  <sub>Date will executed</sub>
  Probate_____, and (c) County _____, State of Probate_____.
  <sub>Date will admitted to Probate</sub> <sub>County</sub> <sub>State</sub>
❖ The Trust (select one) ☑ may be amended or ☐ may **not** be amended
  ➢ If the Trust may be amended, list name of person(s) with power to amend: ___Otteson, Erik Arthur.___
  <sub>Name of person(s) with the power to amend</sub>
  ➢ If previously amended, list effective date(s) of amendment(s): _____.
  <sub>Date(s) of effective amendment(s)</sub>
❖ The administration of the Trust (select one) ☐ is subject to court supervision or ☑ is **not** subject to court supervision.
  ➢ If subject to court supervision, Trustee must attach court orders indicating restrictions on the Trustee's ability to act.
❖ Manner of Taking Title to Trust Property: ___Otteson, Erik Arthur___, Trustees of the
  <sub>Name of Trustee(s)</sub>
  ___Vkng Fleet Trust___, dated ___4/21/25___.
  <sub>Title of Trust</sub> <sub>Date trust executed</sub>
❖ The name(s) and address(es) of the Grantor(s)/Trustor(s)/Settlor(s):
  1. Name:___Otteson, Erik Arth___ Address: ___PO Box 4093  Cottonwood, AZ  86326___
  2. Name:_____ Address:_____
  3. Name:_____ Address:_____
  4. Name:_____ Address:_____

## TRUSTEE(S) AND TRUSTEE POWERS
The name(s) and address(es) of all the **currently acting** Trustee(s):
  1. Name:___Otteson, Erik Arthur___ Address:___PO Box 4093   Cottonwood, AZ  86326___
  2. Name:_____ Address:_____
  3. Name:_____ Address:_____
  4. Name:_____ Address:_____

The Successor Trustee(s) is (leave blank if none):
  1. First Successor Trustee(s): _____
  2. Second Successor Trustee(s): _____

If any Trustee dies, resigns, or otherwise is unable to act as a Trustee, it is the obligation of another Trustee or Successor Trustee to notify Bank, to safeguard the account and account-related items and documents, to receive and review monthly account statements and notify Bank of errors, and to provide the Bank with new documentation authorizing Bank to act on the order or instruction of any newly designated Trustee. Unless otherwise indicated to Bank in writing, conditions for succession of a Trustee shall be death, incapacity, unwillingness to serve, or resignation of the trustee serving before them.

M1204-04  (08/24)



<u>Trustee Authority.</u> Each Trustee is authorized, individually, to open, close, and maintain, in the name of Trust, any type of deposit account(s) ("Account") generally offered by Bank for trusts, subject to Bank's deposit account agreement, as it may be amended. Trustees are authorized to deposit funds, from whatever source, to any Account and, individually, to withdraw or transfer funds, from any Account, by check or other order of instruction for the withdrawal or transfer of funds, payable to or for the benefit of any third party or any Trustee, in any capacity, personal or otherwise, to withdraw funds in cash or cash equivalents, or to perform any other transaction or maintenance related to the account. No transaction requires the consent or action of any person other than the undersigned. The Bank has no fiduciary duties or responsibilities to the Trust to monitor the disposition of funds to or from any Account.

<u>Delegation of Authority.</u> Select all that apply:

☑ The Trust expressly permits an Attorney-In-Fact designated under a **Power of Attorney** to act on the Trustee's behalf in a fiduciary capacity.

☑ The Trust expressly permits Trustee(s) to designate, by means of a signature card, one or more **authorized signer** on the Accounts who are not Trustees. Trustee(s) expressly represent that this delegation of authority is for the ministerial act of executing instruments payable by, providing instructions to, or making deposits in Bank with respect to the Trust assets in an Account, which actions have been authorized by all or a majority of the Trustees, or otherwise, in accordance with the trust instrument. The Bank is entitled to rely on this representation in conducting any business relating to any Account.

<u>Trustee Authority for Multiple Trustees.</u> *If more than one Trustee*, select one:

☐ The Trust allows Trustees to act **independently** (with the signature of any one Trustee) or with **majority action** (the signatures of the majority of the Trustees)

☐ The Trust requires Trustees to act **unanimously** (with the signatures of all Trustees)

Trustees certify to Bank that **(a) each trustee is acting with the consent required by all other trustees, (b) each trustee shall exercise trustee powers within the limits set forth under the trust instrument and applicable law, and (c) this Certification acts as a direction from all trustees that Bank may act in response to the request of any one trustee.** When more than one Trustee is acting, all communications from Bank to any one Trustee shall be deemed communicated to all Trustees then acting. In its sole discretion, Bank may require the written consent of all or any Trustees prior to acting upon the instructions of any Trustees.

## ADDITIONAL PROVISIONS

<u>Certification.</u> This Certification, effective upon execution, is provided to Bank by the Trustee(s) of the trust identified above, instead of and in place of any one or more pages of (a) the original trust instrument, (b) any amendment to the original trust instrument, and (c) any restatement of the original trust agreement. If requested by Bank, Trustee(s) shall provide Bank with a copy of any excerpts of the Trust which Bank reasonably requests. This Certification conforms to the terms of the Trust and accurately represents the authority of the Trustee(s) to act on behalf of the Trust. Trustees shall notify Bank in writing of any amendment to the Trust, any change in the Trustees, or any other event that may alter the representations and/or certifications in this Certification. Bank may rely on this Certification until it receives written notice of any amendment or termination of the Trust certified by another Trustee or Successor Trustee. Bank shall have reasonable time to act upon such certified notice of amendment or termination.

<u>Indemnification.</u> Trustees, on behalf of themselves individually and the Trust, release Bank and it's affiliates' from any and all claims and liabilities, covenant not to bring suit, and agree to indemnify and hold Bank, its directors, officers, agents, and employees harmless from and against any and all claims, losses, judgments, suits, and expenses (including reasonable attorneys' fees) and liabilities which it may suffer or incur by acting and relying upon this Certification.

<u>No Advice.</u> Trustees have not relied upon any representations or advice by Bank, its agents, employees, representatives, or affiliates regarding the legal, tax, accounting, or estate planning effects of this Certification.

<u>Knowledge.</u> Bank may act in reliance upon this Certification and has no duty to confirm that the representations contained herein are correct. Neither actual nor constructive knowledge of the terms of the trust instrument to the bank shall be inferred solely from the fact that Bank at any time is, or was, in possession of any part or all of the trust instrument. Bank shall have no responsibility for, and shall bear no liability in connection with, determining (or failing to determine) whether any transaction contemplated in or by this Certification is a reasonable or prudent exercise of a Trustee's powers under the terms of the trust instrument, applicable law, this Certification, or otherwise.

<u>Counterparts.</u> This Certification may be executed in any number of counterparts, each of which when executed and delivered shall constitute a duplicate original, but all counterparts together shall constitute a single Certification.

<u>Severability.</u> If any one or more provisions of this Certification shall be (1) held or made invalid or unenforceable by a court decision, statute or rule, (2) held to be in conflict with any applicable law, or (3) held or rendered to be otherwise invalid, the validity and enforceability of all other provisions of this Certification, including without limitation the Indemnification provision above, shall not be affected thereby.

M1204-04  (03/25)



**SIGNATURES**

The undersigned swear or affirm under penalty of perjury that the foregoing is true and correct

Signer 1: *Without prejudice*

Signature *Erik Arthur Otteson*

Printed Name: *Erik Arthur Otteson*

Date: *5/14/25*

Relationship to Trust (Select One): ❑ Settlor ☑ Settlor and Trustee ❑ Trustee ❑ Attorney for Trustee (Iowa, Michigan, and Washington trusts only)

**Signer 2:**

Signature _____

Printed Name: _____

Date: _____

Relationship to Trust (Select One): ❑ Settlor ❑Settlor and Trustee ❑Trustee ❑ Attorney for Trustee (Iowa, Michigan, and Washington trusts only)

**Signer 3:**

Signature _____

Printed Name: _____

Date: _____

Relationship to Trust (Select One): ❑ Settlor ❑ Settlor and Trustee ❑ Trustee ❑ Attorney for Trustee (Iowa, Michigan, and Washington trusts only)

**Signer 4:**

Signature _____

Printed Name: _____

Date: _____

Relationship to Trust (Select One): ❑ Settlor ❑ Settlor and Trustee ❑ Trustee ❑ Attorney for Trustee (Iowa, Michigan, and Washington trusts only)

Attach a notary acknowledgment of the signatures of all trustees for trusts established under the laws of **California, Delaware, Idaho, Kansas, Louisiana, Michigan, Mississippi, Nebraska, Nevada, New York, Oklahoma, Rhode Island, Tennessee.**

Attach a notary jurat of the signatures of all trustees for trusts established under the laws of **Colorado, Iowa, Minnesota, South Dakota, Vermont.**

M1204-04  (03/25)





**Exhibit B** – Chase "Action Needed Regarding Signature" Letter (05/27/2025)

# CHASE ⬤

Chase Customer Service
PO Box 659970
San Antonio, TX 78265-9672

**Questions?**

🖥  chase.com
📞  1-800-935-9935
We accept operator relay calls

|||·|₁₁·|||₁|·|||||||₁|·||||||₁·|||||₁|·₁₁₁|||·|||·||₁·||

00222 OST 000 040 14825 NNNNNNNNNNNN KYCCustLtr01
**VKNG FLEET TRUST**
RFD 798 CALLE TOMALLO
CLARKDALE AZ 86324



May 27, 2025

## Action Needed:  **Please act now to avoid disruption on your account(s)**

Dear VKNG FLEET TRUST:

Thank you for banking with Chase and giving us the opportunity to service your account(s).

Banking regulations require that we collect specific information from our clients. We'll need you to provide this information by 06/06/2025, to avoid any disruption to your account(s).

**Please visit your local branch to sign updated documentation.**

**Next steps:**
- You can use the Chase Mobile® app or chase.com to find open branches and updated hours, or to schedule a meeting.
- If we don't receive the information we need by 06/06/2025, we will restrict your account(s).
- If we still haven't received this information by 06/23/2025, we may be required to close your account(s). If your account(s) is closed, we will mail you a check for the balance within 10 business days.

Thank you for your prompt attention to this matter. If you have questions or believe you've received this in error, please call us at 1-877-382-8854.

Sincerely,

Customer Service

Si usted no sabe leer en inglés, por favor llame al 1-877-312-4273 para hablar con un representante en español.

**Exhibit C** – First Notice to Chase – Signature Clarification (06/03/2025)

# Vkng Fleet Trust

PO Box 4093
Cottonwood, AZ 86326
Date: 06/03/2025
To Whom It May Concern,
Thank you again for approving and opening the trust account for Vkng Fleet Trust. I've been informed
that there was an objection to my signature due to the inclusion of the phrase "without prejudice."

For the record, this language was included pursuant to UCC §1-308, which authorizes any party to
explicitly reserve their rights while performing or assenting to performance as demanded by the other
party. This provision ensures that the party reserving rights does not waive them by virtue of participation
or signature. The relevant statutory text provides:

UCC §1-308 -- Performance or Acceptance Under Reservation of Rights
(a) A party that with explicit reservation of rights performs, or assents to performance, in a manner
demanded or offered by the other party does not thereby prejudice the rights reserved.
(b) Phrases such as "without prejudice," "under protest," or similar are sufficient.

This reservation has no effect on the substance of the agreement and does not limit Chase Bank's rights,
remedies, or recourse. It is simply a lawful declaration of continued rights under contract law and
commercial code.

For reference, this provision is codified in both relevant jurisdictions:
- Arizona Revised Statutes Title 47 §1-308 (trust domicile)
- Delaware Code Title 6 §1-308 (state of Chase Bank's incorporation)

As the acting trustee, I executed the necessary documents and performed in accordance with the trust
account agreement. Chase's approval and full performance—by opening the accounts—constitutes
ratification of the contract, including the signature as submitted. Therefore, no amendment is necessary,
and the reservation remains valid and lawful as part of the executed record.

This clarification is provided for the record only. I look forward to continued smooth operation of the
trust account and appreciate your professionalism and attention to detail.

Respectfully,


By: *Erik Arthur Otteson*
Erik Arthur Otteson, Trustee
For: Vkng Fleet Trust

**Exhibit D** – Second Notice to Christian Zamora – Signature Policy Challenge (06/04/2025)

## Request for Written Confirmation and Record of Signature Objection

Erik Arthur Otteson
Trustee, Vkng Fleet Trust
PO Box 4093
Cottonwood, AZ 86326

Date: 04/06/2025
To: Christian Zamora
Subject: Request for Written Confirmation and Record of Signature Objection
Hi Christian Zamora,

Thanks for assisting with the trust account. I've been informed — via your outreach to another department — that there is an objection to my trustee signature due to the phrase "without prejudice." As you know, this phrase is a lawful reservation of rights under UCC §1-308, and the trust account has already been approved and opened.

Out of respect for the process and to clarify the record, I would appreciate it if you could obtain a written explanation from the department that made this determination. Specifically:

1. The name of the department and decision-maker,
2. The written policy or legal basis used to justify the rejection,
3. Confirmation of whether this policy applies to trustee signatures under UCC §1-308,
4. Whether Chase Bank intends to reject or close the account on this basis

I would like to resolve this promptly and in good faith, but I cannot proceed based solely on hearsay or unofficial phone representations. This is a matter of legal record for trust administration, and it must be treated accordingly.

Let me know how soon we can get this documented.

Respectfully,

*Erik Arthur Otteson*
Erik Arthur Otteson
Trustee, Vkng Fleet Trust

**Exhibit E** – Internal Chase Communication – Zamora/San Agustin Rejection Memo with handwritten

case number (06/09/2025)

**Zamora, Christian (CCB, USA)**          Complaint: ECW 250605-06896

| | |
|---|---|
| **From:** | San Agustin, Patriciatracyjude (CCB, PHL) |
| **Sent:** | Monday, June 09, 2025 1:31 PM |
| **To:** | Zamora, Christian (CCB, USA) |
| **Subject:** | VKNG FLEET TRUST 1003436581 |

Customer want info sent in writing regarding signature "without prejudice" not accepted

Is "without prejudice" acceptable on signature for bank documents?

No, "without prejudice" should not be included in the signature line of a legal bank document. The term "without prejudice" applies to communications made during settlement negotiations, and its use on a signature line would not be appropriate.

Explanation:

**"Without Prejudice" Privilege:**
The phrase "without prejudice" is used to indicate that a communication is made in a genuine attempt to settle a dispute. This privilege protects the communication from being used as evidence in court if the dispute is not resolved.

**Applicability:**
This privilege applies to communications, not to the actual terms of a legal agreement. The signature line on a bank document represents the final agreement, not a settlement negotiation.

**Misuse of the Term:**
Using "without prejudice" on a signature line would be a misapplication of the term and could be misinterpreted. It would suggest that the agreement itself is subject to later settlement, which is not the case.

**Example:**
If a bank and customer are in a dispute over a loan, "without prejudice" might be used in letters or emails exchanged during negotiation. However, once a final agreement is reached, the document signed by both parties should not include this term.

Patricia Tracy Jude D. San Agustin | Fraud Specialist IV | FCPS Philippines |JPMorgan Chase & Co. 38th Street corner 9th Avenue, Uptown Bonifacio, Taguig, Floor 11 ❖ Office: 877-691-8086 ❖ Cell: 922-440-9092 | patriciatracyjude.sanagustin@chase.com