Erik Arthur Otteson
PO Box 4093
Cottonwood, AZ 86326
(928) 254-1037
erikotteson@gmail.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ERIK ARTHUR OTTESON,<br><br>Plaintiff,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | Case No. 3:25-cv-08198-DWL<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

"It is to be regretted that the rich and powerful too often bend the acts of government to their selfish purposes."

— President Andrew Jackson, Veto Message (July 10, 1832)

## INTRODUCTION

Defendant admits that it is for a jury to determine whether Defendant wrongfully exercised its contractual power. If it is a jury question, it cannot be resolved at the pleading stage. Defendant's Motion to Dismiss should be denied for three reasons.

First, Defendant argues that no contract exists between Plaintiff and Defendant. This argument fails because two contracts exist: (1) the Certification of Trust is a written contract containing offer, acceptance, consideration, and sufficient specification of terms (Savoca Masonry Co. v. Homes & Son Const. Co., 112 Ariz. 392, 394, 542 P.2d 817, 819 (1975)); and (2) an implied contract exists based on Defendant's conduct in accepting the Certification and opening accounts (Wells Fargo Bank v. Arizona Laborers, 201 Ariz. 474, 490, ¶ 59, 38 P.3d 12, 29 (Ariz. 2002)). Defendant must defeat both contracts to prevail. Defendant cannot.

1

2   Second, Defendant admits that when a bank is "directly and contractually involved
3   in the transaction," it is for the jury to determine whether the bank "wrongfully exercised
4   a contractual power." Def.'s Mot. at 4 (citing Wells Fargo Bank v. Arizona Laborers, 201
5   Ariz. 474, 493, 38 P.3d 12, 31 (2002)). This admission defeats Defendant's Motion to
6   Dismiss. A jury cannot determine whether Defendant "wrongfully exercised a contractual
7   power" without knowing why Defendant closed Plaintiff's accounts. Defendant has
8   refused five times to produce the policy that would reveal its reason. Defendant has also
9   refused to produce the KYC email that would reveal its reason. This refusal prevents the
10  Court from determining whether Defendant acted wrongfully.
11      Third, Arizona law requires a showing that Defendant "wrongfully exercised a
12  contractual power" for "a reason beyond the risks" that Plaintiff assumed, or for a reason
13  inconsistent with Plaintiff's justified expectations. Wells Fargo, 38 P.3d at ¶ 67 (citing
14  Burton, Breach of Contract and the Common Law Duty to Perform in Good Faith, 94
15  Harv. L. Rev. 369, 386 (1980)). Plaintiff has alleged that Defendant closed Plaintiff's
16  accounts without explanation and refused to produce the policy that would explain the
17  closure. Whether Defendant's conduct was wrongful is a fact-specific question that
18  requires discovery. Defendant's own authority—Wells Fargo—says "fact-specific issues
19  preclude summary judgment." Def.'s Mot. at 4. The same is true here: fact-specific issues
20  preclude dismissal.
21      This Court should deny Defendant's Motion to Dismiss and order limited
22  discovery on the policy and the KYC email.

23                          **STATEMENT OF FACTS**

24  A.   Defendant required Plaintiff to sign Defendant's Certification of Trust in
25       order to open accounts. The Certification of Trust contains indemnifications
26       and consideration benefiting Defendant. Defendant accepted the
27       Certification of Trust and opened multiple accounts for Plaintiff.
28

    **B.**    The Certification of Trust contains Plaintiff's reservation of rights under UCC § 1-308. This reservation is part of the contract between Plaintiff and Defendant.

    **C.**    On July 31, 2025, Defendant closed all of Plaintiff's accounts without explanation. Defendant refused to provide the policy that would explain the closure.

    **D.**    Plaintiff has requested the policy five times:

1. Request #1: On June 4, 2025, Plaintiff sent a letter to Christian Zamora at Defendant's Camp Verde branch requesting "the written policy or legal basis used to justify the rejection" and "confirmation of whether this policy applies to trustee signatures under UCC §1-308." Defendant refused.

2. Request #2: On June 10, 2025, Plaintiff sent a letter to Defendant's Legal Department requesting "a copy of the internal JPMorgan Chase policy allegedly prohibiting this language." Defendant refused.

3. Request #3: On August 1, 2025, Plaintiff called Defendant's KYC Department and requested the policy. Plaintiff stated: "I was trying to get, you know, it was, it was the policy that, you know, that denied that, and I was just trying to see that policy." Defendant's representative explicitly refused, stating: "I'm sorry, but of course it's a Chase policy, and that's not something we can show to you. These are internal information that you're on, and it's privacy." When Plaintiff asked again—"so you can't tell me the internal memo, and you can't show me the policy?"—Defendant's representative refused again: "Well, of course, that would be internal information. That's the bank's information."

4. Request #4: On August 12, 2025, Plaintiff served Christian Zamora with a Notice to Preserve Evidence specifically requesting "Chase's internal trust policy or justification cited for reversal." On August 14, 2025, Plaintiff served Defendant's Legal Department and registered agent with a similar

|   |   |   |
|---|---|---|
| | | Notice to Preserve. Despite receiving this Notice to Preserve over four months ago, Defendant has refused to produce the policy. |
| | 5. | Request #5: On September 24, 2025, during a meet and confer call with Defendant's counsel, Plaintiff requested "the internal policy that Chase is quoting that subverts the UCC or ARS equivalent." Defendant's counsel explicitly refused, stating that the policy "would be something that would likely come during the course of discovery." |
| **E.** | | Defendant's refusal to produce the policy—the one document that would explain Defendant's conduct—supports the inference that the policy would show Defendant acted in bad faith. |
| **F.** | | Plaintiff has repeatedly requested the KYC email from Defendant's KYC Department to Christian Zamora that allegedly triggered the account closures. Defendant has refused to produce it. The KYC email would reveal Defendant's motive and interest in closing Plaintiff's accounts. |
| **G.** | | During the August 1, 2025 call, Defendant's representative stated that Defendant was "trying to comply with federal regulations" and that Defendant acts in "good faith." When Plaintiff asked which federal regulations, Defendant's representative stated: "I'm talking about in general." Defendant's representative confirmed that acting in good faith is Defendant's "job." |

## ARGUMENT

**I.   STANDARD OF REVIEW**

On a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the Complaint as true and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The question is whether the plaintiff has stated a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**II.  TWO CONTRACTS EXIST BETWEEN PLAINTIFF AND DEFENDANT**

### A. Defendant's Argument Fails Because Two Contracts Exist Between Plaintiff and Defendant.

1. Defendant argues that no contract exists. Def.'s Mot. at 4-7. This argument fails because two contracts exist between Plaintiff and Defendant.

### B. Arizona Law Defines a Contract in Three Complementary Ways—All Three Definitions Are Satisfied Here.

1. First, the Arizona Uniform Commercial Code defines "contract" as "the total legal obligation that results from the parties' agreement as determined by this title as supplemented by any other applicable laws." A.R.S. § 47-1201(12).

2. Second, Black's Law Dictionary defines a contract as "an agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law." Black's Law Dictionary (11th ed. 2019).

3. Third, Arizona case law holds that "for an enforceable contract to exist there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." Savoca Masonry Co., Inc. v. Homes & Son Const. Co., 112 Ariz. 392, 394, 542 P.2d 817, 819 (1975).

4. All three definitions are satisfied here—twice.

### C. The Certification of Trust Is a Written Contract That Satisfies All Four Elements.

1. Defendant provided the Certification of Trust form to Plaintiff. This was an offer: Defendant offered to open accounts if Plaintiff indorsed the Certification of Trust and provided the required indemnifications.

2. Plaintiff indorsed the Certification of Trust. Defendant accepted it and opened multiple accounts for Plaintiff. This is acceptance.

3. Plaintiff provided indemnifications to Defendant in the Certification of Trust. Defendant opened accounts for Plaintiff. This is consideration: Plaintiff gave something of value (indemnifications), and Defendant gave something of value (accounts).

4. The Certification of Trust contains sufficient specification of terms so that the obligations involved can be ascertained. Savoca, 112 Ariz. at 394, 542 P.2d at 819. The Certification specifies the terms under which Defendant agreed to open and maintain accounts for Plaintiff. The obligations of both parties are clear: Plaintiff provides indemnifications, and Defendant opens and maintains the accounts in good faith.

### D.     Defendant Cannot Now Argue the Certification Is Not a Contract After Defendant Accepted It and Opened Accounts.

1. Defendant asks "why Chase would be obligated to accept the Certification of Trust with the qualified indorsement." Def.'s Mot. at 5.

2. The answer is simple: Defendant DID accept it. Defendant accepted the Certification and opened multiple accounts for Plaintiff.

3. Defendant cannot now argue that Defendant was not obligated to accept the Certification after Defendant already accepted it and acted upon it by opening accounts. Defendant's conduct manifested Defendant's agreement to the terms of the Certification.

### E.     An Implied Contract Exists from Defendant's Conduct in Accepting the Certification and Opening Accounts.

1. "Arizona law implies a covenant of good faith and fair dealing in every contract." Wells Fargo Bank v. Arizona Laborers, 38 P.3d 12, ¶ 59 (Ariz. 2002). An implied contract was formed by the parties' conduct.

2. Plaintiff presented the Defendant's Certification of Trust to Defendant. Defendant accepted it and opened multiple accounts for Plaintiff. Defendant maintained the accounts. This conduct manifested an agreement to maintain the accounts in good faith. This is an implied contract.

3. The Certification of Trust contains indemnifications, consideration, and Plaintiff's reservation of rights under UCC § 1-308. These terms are part of the

implied contract created by Defendant's conduct in accepting the Certification and opening accounts.

 F. **Defendant Must Defeat Both Contracts to Prevail on its Motion to Dismiss—Defendant Cannot.**

  1. Defendant cannot defeat the Certification of Trust (a written contract with all four elements).

  2. Defendant cannot defeat the implied contract (created by Defendant's own conduct in accepting the Certification and opening accounts).

  3. Either contract—or both—support Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

 G. **Defendant Breached the Implied Covenant of Good Faith and Fair Dealing Under Both Contracts.**

  1. "Arizona law implies a covenant of good faith and fair dealing in every contract." Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund, 201 Ariz. 474, 490, ¶ 59, 38 P.3d 12, 29 (Ariz. 2002). Defendant had a duty of good faith and fair dealing to Plaintiff under both contracts. Defendant breached that duty.

## III. PLAINTIFF HAS ALLEGED ALL REQUIRED ELEMENTS FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

To establish a justiciable controversy for breach of contract, Plaintiff must allege three elements: (1) Duty, (2) Breach, and (3) Damages. "Arizona law implies a covenant of good faith and fair dealing in every contract." Wells Fargo Bank v. Arizona Laborers, 201 Ariz. 474, 490, ¶ 59, 38 P.3d 12, 29 (Ariz. 2002). Plaintiff has alleged all three elements:

 A. **Two Contracts Exist—Defendant Cannot Defeat Either One.**

  1. As demonstrated in Section II above, Plaintiff and Defendant entered into two contracts: (1) the Certification of Trust (written contract), and (2) an implied

contract created when Defendant accepted the Certification and opened accounts. Defendant must defeat both contracts to prevail. Defendant cannot.

### B. Defendant Breached the Implied Covenant by Closing Plaintiff's Accounts Without Explanation and Refusing to Produce the Policy.

1. Plaintiff alleges that Defendant closed Plaintiff's accounts without explanation, refused to produce the policy that would explain the closure, refused to consult with Plaintiff in good faith, and filed a false Certificate of Consultation. Complaint ¶¶ C(1)-(4). These allegations satisfy the second element.

### C. Plaintiff Was Harmed by Defendant's Breach.

1. Plaintiff alleges that Defendant's breach caused Plaintiff to lose access to banking services, suffer reputational harm, and incur costs. Complaint ¶¶ E(1)-(4). These allegations satisfy the third element.

### D. Defendant Admits This Is a Jury Question.

1. Defendant argues that Plaintiff has not stated a claim for breach of the implied covenant. But Defendant's own authority proves otherwise. Defendant admits that "when a bank is directly and contractually involved in the transaction, it is for the jury to determine whether the bank wrongfully exercised a contractual power." Def.'s Mot. at 4 (citing Wells Fargo, 38 P.3d at 31). Defendant is directly and contractually involved with Plaintiff through the Certification of Trust and the account agreements. Plaintiff alleges Defendant wrongfully exercised its contractual power by closing Plaintiff's accounts without explanation. This is exactly the type of claim Wells Fargo recognizes. If it is a jury question, Defendant's Motion to Dismiss must be denied.

### E. Wells Fargo Controls—Plaintiff Does Not Need to Identify an Express Provision Defendant Breached.

1. Defendant argues that Plaintiff has not identified an express contractual provision that Defendant breached. Def.'s Mot. at 4-5. This argument ignores Wells Fargo Bank v. Arizona Laborers, 201 Ariz. 474, 38 P.3d 12 (Ariz. 2002).

2. Wells Fargo holds that "a party may nevertheless breach its duty of good faith without actually breaching an express covenant in the contract." 201 Ariz. at 492, ¶ 64, 38 P.3d at 30 (citing Rawlings v. Apodaca, 151 Ariz. 149, 726 P.2d 565, 569-70 (1986)). The Arizona Supreme Court explained that "a party may be injured when the other party to a contract manipulates bargaining power to its own advantage" and may breach the implied covenant without breaching an express provision. Id.

3. Defendant manipulated its bargaining power to its own advantage. Defendant closed Plaintiff's accounts without explanation. Defendant refused to produce the policy. Defendant refused to consult in good faith. Defendant filed a false Certificate. Defendant did all of this without breaching an express provision of the contract. Wells Fargo controls. Plaintiff does not need to identify an express contractual provision that Defendant breached. Plaintiff only needs to show that Defendant breached the implied covenant of good faith and fair dealing. Plaintiff has done so.

## IV. THE BURTON TEST FULFILLED

Defendant admits the test for breach of the implied covenant: "when a bank is directly and contractually involved in the transaction, it is for the jury to determine whether the bank wrongfully exercised a contractual power." Def.'s Mot. at 4 (citing Wells Fargo, 38 P.3d at 31). The question is whether Defendant "wrongfully exercised a contractual power" for "a reason beyond the risks" that Plaintiff assumed, or for a reason inconsistent with Plaintiff's justified expectations. Wells Fargo, 201 Ariz. at 493, ¶ 67, 38 P.3d at 30 (citing Burton, Breach of Contract and the Common Law Duty to Perform in Good Faith, 94 Harv. L. Rev. 369, 386 (1980)). Plaintiff has satisfied this test.

### A. Defendant Had a Contractual Power to Close Accounts.

1. Defendant had discretion to close Plaintiff's accounts. Defendant exercised that discretion by closing Plaintiff's accounts on July 31, 2025. Defendant does not dispute this.

**B.      The Question Is Whether Defendant Exercised That Power Wrongfully.**

1. Plaintiff alleges that Defendant exercised its contractual power wrongfully by: (1) closing Plaintiff's accounts without explanation; (2) refusing to produce the policy that would explain the closure; (3) refusing to consult with Plaintiff in good faith; and (4) filing a false Certificate of Consultation. Complaint ¶¶ C(1)-(4). These allegations satisfy the Burton test.

**C.      Defendant's Reason Is Unknown Because Defendant Refuses to Produce the Policy.**

1. To determine whether Defendant acted "for a reason beyond the risks" Plaintiff assumed, the Court must know Defendant's reason for closing the accounts. Defendant has refused five times to produce the policy that would reveal its reason. Defendant has also refused to produce the KYC email that would reveal its reason. Without these documents, a jury cannot determine whether Defendant "wrongfully exercised a contractual power." This is a fact-specific question that requires discovery.

**D.      Fact-Specific Issues Preclude Dismissal.**

1. Defendant admits that Wells Fargo "identified several fact-specific issues in that case that precluded summary judgment." Def.'s Mot. at 4. The same is true here. Plaintiff's case presents fact-specific issues that preclude dismissal: What does Defendant's policy say? Why did Defendant close Plaintiff's accounts? What does the KYC email say? Did Defendant close accounts because of UCC § 1-308 reservations? If so, is Defendant's policy void as against public policy? These fact-specific issues cannot be resolved at the pleading stage. They require discovery. Defendant's Motion to Dismiss should be denied.

**V.    DEFENDANT'S AD HOMINEM ATTACK IS IRRELEVANT AND VIOLATES RULE 1**

Defendant argues that Plaintiff's invocation of UCC § 1-308 is a "sovereign citizen" tactic. Def.'s Mot. at 5 n.1. This ad hominem attack is irrelevant to the legal

issues and wastes the Court's time in violation of Rule 1. UCC § 1-308 is Arizona law (A.R.S. § 47-1308). Plaintiff has the right to reserve rights under Arizona law. Whether Defendant's policy prohibits customers from exercising their rights under Arizona law is a fact-specific question that requires discovery. Defendant's refusal to produce the policy—combined with Defendant's resort to ad hominem attacks instead of addressing the legal issues—supports the inference that Defendant acted in bad faith. **The question presents itself: What protections did Chase lose when a lawful, qualified indorsement was exercised that led them to fight so hard on simply producing the policy they referred to? The answer to this question proves Chase's scienter.**

## CONCLUSION

Defendant's Motion to Dismiss should be denied for three reasons. First, two contracts exist between Plaintiff and Defendant: the Certification of Trust (written contract) and the implied contract created when Defendant accepted the Certification and opened accounts. Defendant must defeat both contracts to prevail. Defendant cannot. Second, Defendant admits that when a bank is "directly and contractually involved in the transaction," it is for the jury to determine whether the bank "wrongfully exercised a contractual power." This admission defeats Defendant's Motion to Dismiss. If it is a jury question, it cannot be resolved at the pleading stage. Third, the Burton test requires a showing that Defendant "wrongfully exercised a contractual power" for "a reason beyond the risks" that Plaintiff assumed. To apply this test, the Court must know Defendant's reason for closing Plaintiff's accounts. Defendant has refused five times to produce the policy that would reveal its reason. Defendant has also refused to produce the entire KYC email that would reveal its reason. Plaintiff requested these documents during a September 24, 2025 meet and confer call, during which Defendant's counsel explicitly refused, stating that the policy "would be something that would likely come during the course of discovery." Plaintiff has exhausted informal efforts to obtain these documents.

Defendant's refusal to produce the policy and KYC email prevents the Court from applying the Burton test. Out of respect for Rule 1, this Court should deny Defendant's

Motion to Dismiss and order limited discovery on: (1) Defendant's policy regarding account closures and UCC § 1-308 reservations; (2) the entire KYC email; and (3) a deposition of Christian Zamora. A proposed order is attached.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court:

1. **DENY** Defendant's Motion to Dismiss;
2. **ORDER** Defendant to produce within 14 days: (a) Defendant's internal policy regarding account closures and UCC § 1-308 reservations; and (b) the entire KYC email referenced in Defendant's communications with Plaintiff;
3. **ORDER** Defendant to produce Christian Zamora for deposition within 30 days;
4. **GRANT** such other and further relief as the Court deems just and proper.

Respectfully,

ERIK ARTHUR OTTESON

*/s/ Erik Arthur Otteson*

Plaintiff, Pro Se

PO Box 4093
Cottonwood, AZ 86326
(928) 254-1037
erikotteson@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of December, 2025, a true and correct copy of the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT was served via Certified Mail, Return Receipt Requested, upon the following:

Nicole M. Goodwin
Greenberg Traurig, LLP
2375 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
CERTIFIED MAIL 9589 0710 5270 2831 2565 78

1
2  ERIK ARTHUR OTTESON
3  *Erik Arthur Otteson*
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ERIK ARTHUR OTTESON,<br><br>Plaintiff,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | Case No. 3:25-cv-08198-DWL<br><br>**PROPOSED ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND ORDERING LIMITED DISCOVERY** |

This matter having come before the Court on Defendant's Motion to Dismiss and Plaintiff's Opposition thereto, and the Court having reviewed the Motion, the Opposition, Defendant's admissions regarding the applicable legal standard, and all other materials submitted in support thereof, and being fully advised in the premises, the Court finds and orders as follows:

## **<u>FINDINGS</u>**

1.  Defendant admits that when a bank is "directly and contractually involved in the transaction," it is for the jury to determine whether the bank "wrongfully exercised a contractual power." Def.'s Mot. at 4 (citing Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund, 201 Ariz. 474, 493, ¶¶ 62-69, 38 P.3d 12, 31 (2002)).

2. Defendant is directly and contractually involved in this transaction through the Certification of Trust and the implied contract created when Defendant accepted the Certification and opened accounts.

3. The question under the Burton test is whether Defendant 'wrongfully exercised a contractual power' for 'a reason beyond the risks' that Plaintiff assumed, or for a reason inconsistent with Plaintiff's justified expectations. Wells Fargo Bank v. Arizona Laborers, 201 Ariz. 474, 490, ¶ 67, 38 P.3d 12, 31 (2002).

4. To determine whether Defendant wrongfully exercised its contractual power, the Court must know Defendant's reason for closing Plaintiff's accounts.

5. Plaintiff served Defendant with a Notice to Preserve Evidence on August 12, 2025 (to Christian Zamora) and August 14, 2025 (to JPMorgan Chase Bank's Legal Department), specifically requesting preservation of 'Chase's internal trust policy or justification cited for reversal' and 'Records of KYC/AML department reviews and internal determinations.'

6. Despite receiving the Notice to Preserve over four months ago, Defendant has refused five times to produce the policy that would reveal its reason for closing Plaintiff's accounts. Defendant has also refused to produce the KYC email that would reveal its reason.

7. Defendant admits that fact-specific issues precluded summary judgment in Wells Fargo. The same fact-specific issues exist here and preclude dismissal at the pleading stage.

8. Limited discovery on Defendant's policy and the KYC email is necessary to determine whether Defendant wrongfully exercised its contractual power.

## ORDER

IT IS HEREBY ORDERED that:

1.    Defendant's Motion to Dismiss is DENIED.

2.    Defendant shall produce the following documents to Plaintiff within fourteen (14) days of the date of this Order:

a. Defendant's internal policy regarding account closures and UCC § 1-308 reservations; and

b. The entire KYC email referenced in Defendant's communications with Plaintiff.

3.    Defendant shall make Christian Zamora available for deposition within thirty (30) days of the date of this Order.

4.    The parties shall complete this limited discovery within forty-five (45) days of the date of this Order and file a joint status report within seven (7) days thereafter.

5.    All deadlines and scheduling orders previously entered in this case shall remain in effect, and this action shall proceed on the merits.

_____
UNITED STATES DISTRICT JUDGE