# TRANSCRIPT OF AUDIO RECORDING

**Exhibit L — Telephone Call with Chase KYC Department ("Stephanie")**

**Date:** Friday, August 1, 2025, approximately 10:03 a.m.

**Duration:** Approximately 10 minutes, 57 seconds

**Participants:**

- **OTTESON:** Erik Arthur Otteson, Plaintiff

- **STEPHANIE:** Chase KYC Department Representative (identified herself as "Stephanie")

**Recording:** 20250801002.WAV (41.02 MB)

**Transcription Method:** Automated speech-to-text, reviewed and formatted for accuracy

**One-Party Consent:** Arizona is a one-party consent state (A.R.S. § 13-3005)

---

## TRANSCRIPT

**[00:00 – 00:17]**

OTTESON: [Speaking to recording] Okay, here we go. Today this is Erik Arthur Otteson calling Chase at 10:03 a.m., Friday, August 1st, 2025.

**[00:17 – 00:30]**

AUTOMATED SYSTEM: This call will be monitored and recorded and your voice may be used for verification.

**[00:30 – 00:41]**

STEPHANIE: Hi there, this is Stephanie with Chase. The call is being monitored and recorded. Can I have your name?

OTTESON: Hello Stephanie, my name is Erik Arthur Otteson.

**[00:41 – 00:56]**

STEPHANIE: Hello sir, can I have your account number or debit card number please?

OTTESON: Yes. Give me one sec.

STEPHANIE: Okay, sure.

**[01:27 – 01:39]**

OTTESON: So the account number is XXXXX-X592.

**[01:39 – 01:44]**

STEPHANIE: Thank you so much, one moment.

**[01:44 – 01:48]**

STEPHANIE: Mr. Otteson, what is the name on the account that you're calling in regards to?

OTTESON: The VKNG Fleet Trust.

**[01:53 – 01:58]**

STEPHANIE: Thank you so much. Okay, and for security, can you verify your date of birth please?

OTTESON: [REDACTED], 1990.

STEPHANIE: Thank you so much. How can I help?

**[02:05 – 02:18]**

OTTESON: Well, there was a prior issue with the account and I was calling to see if you could pull up the account and confirm the status with me.

**[02:18 – 02:21]**

STEPHANIE: Of course, yeah. I'm actually looking at it already.

**[02:21 – 02:30]**

STEPHANIE: I do see an alert from KYC way back May, and then the account was decripted in June. So there aren't any active accounts. These are all closed.

**[02:37 – 02:55]**

OTTESON: Okay, so there was a complaint number that they referenced for me and I was seeing if they ever got anywhere with that complaint. Can I give you that complaint number?

STEPHANIE: I can check if that's something that I can view.

**[02:58 – 03:18]**

OTTESON: Okay, so it's ECW250605-06896.

**[03:19 – 03:22]**

STEPHANIE: Sorry, I apologize, but no. On our end, we don't have these types of ticket numbers.

**[03:28 – 03:35]**

OTTESON: Hmm. Well, that was the complaint.

STEPHANIE: For our department. You are the KYC department, right?

STEPHANIE: Yes, that's correct. It may have been a different team that you spoke to. Not to — but let me check on the notes. Give me one moment.

**[03:51 – 03:53]**

STEPHANIE: Never heard of that ticket before.

**[03:59 – 04:17]**

STEPHANIE: So there was a note on the 26th of July. I see that you spoke with one of my colleagues in regards to the error that happened to the account. So you were advised to open up a new account and provide the necessary documents, correct?

**[04:17 – 04:22]**

OTTESON: Yeah, I talked to them, but then I was thinking about it…

**[04:30 – 04:35]**

OTTESON: …about that particular complaint number. And now you're not able to pull that up because I was told that —

**[04:38 – 04:43]**

STEPHANIE: I honestly never heard of that case number or complaint number. We don't provide case numbers on our end.

**[04:47 – 04:50]**

STEPHANIE: A simple account number would pull up all your information.

**[04:51 – 05:02]**

OTTESON: Well, as I had spoke with the banker, he had told me that he escalated the case.

STEPHANIE: But that would be for our bankers. We wouldn't have any visibility about that. Your bankers would be able to pull that up on their end.

**[05:10 – 05:16]**

OTTESON: Hmm, that's weird because he also gave me this number, so.

STEPHANIE: They have a different set of tools that we don't have access to. They can escalate things on their end that we don't have visibility for that case number either. So it's definitely something to do with your bankers doing the escalation on their end. They can check on the status.

**[05:37 – 05:42]**

OTTESON: Okay, so I'm basically at a dead end then.

## KEY ADMISSION #1 — ACCOUNT CLOSURE CONFIRMED:

**[05:44 – 05:52]**

OTTESON: So at this point, it's just you guys closed the account.

STEPHANIE: That is correct. It's because there were some documents that we were looking for. Unfortunately, we weren't able to get it in time and because there's a deadline, we weren't able to meet that. And therefore, the account got closed.

**[06:07 – 06:35]**

OTTESON: I'm just really confused as to the whole thing and I thought it was really being handled under the KYC department. Can you just tell me what it says on your end? Because it's been very challenging to actually get anything in writing. So it was always like he said, she said. So can you just relay to me what the notes say was the issue?

STEPHANIE: Hold on, please.

**[06:52 – 06:55]**

STEPHANIE: Do you have a personal banker who helps you out?

OTTESON: I do, but —

STEPHANIE: Because you've communicated — we've communicated this with that banker already and told them how this should be resolved.

## KEY ADMISSION #2 — NOTHING IN WRITING / POLICY CONCEALMENT:

**[07:08 – 07:14]**

STEPHANIE: It's not something we can take care of over the phone because these are paperwork you need to sign inside a Chase branch.

**[07:16 – 07:28]**

OTTESON: Yeah, but that's the thing — it's been very challenging in this whole process to get anything that I could actually read. So it's very, it's very, uh, he said, she said type, like, recommendations.

**[07:28 – 07:43]**

STEPHANIE: I understand where you're coming from, but, sir, to be really honest with you, there's really nothing that we could provide you in writing. The letter that you may have received, the notification that we sent you, it's really not going to indicate specifically what's going on.

## KEY ADMISSION #3 — CHASE CERTIFICATE OF TRUST IDENTIFIED:

**[07:53 – 08:08]**

STEPHANIE: We communicate with a banker on what exactly needs to be taken care of. It's called a Chase Certificate of Trust. You signed it, but there was some unacceptable information on it, therefore we needed you to sign a new one.

**[08:08 – 08:18]**

OTTESON: Uh, okay, but, and that's — that's why, you know, that's why we were talking about this in the first place. Because I was trying to get — you know, it was the policy that denied that, and I was just trying to see that policy.

## KEY ADMISSION #4 — INTERNAL POLICY CONCEALMENT:

**[08:32 – 08:43]**

OTTESON: So you guys can't divulge…

STEPHANIE: I'm sorry, but of course, it's a Chase policy, and that's not something we can show to you. These are internal information, Mr. Otteson. It's privacy.

**[08:46 – 09:01]**

OTTESON: Okay, um, so you can't tell me the internal memo, and you can't show me the policy?

STEPHANIE: Well, of course, that would be internal information. That's the bank's information.

**[09:03 – 09:09]**

OTTESON: Okay, um, is there anything that you can share?

**[09:10 – 09:25]**

STEPHANIE: All I can tell you is that if you still want to continue with a Chase account, you can step inside Chase Branch and fill out the form that we need, and we can reopen up the account. Of course, not the closed one. It's going to be a brand new account.

**[09:25 – 09:42]**

OTTESON: Okay, all right. Um, well, man, that's hard to — that's really hard to get anything, uh, other than verbal recommendations.

## KEY ADMISSION #5 — "GOOD FAITH" / FEDERAL REGULATIONS:

**[09:43 – 09:58]**

STEPHANIE: It's really starting to feel that way, but that would really be a branch policy, and because we are trying to comply with federal regulations, there are times that we do need to require a few more things.

**[09:58 – 10:04]**

OTTESON: You're — you're trying to comply with federal regulations?

STEPHANIE: Of course, the bank does.

**[10:04 – 10:12]**

OTTESON: Which federal regulations are those? That's kind of wild.

STEPHANIE: Not that specific. I'm talking about in general, Mr. Otteson.

**[10:12 – 10:17]**

STEPHANIE: The bank will not request for documents if we don't need it. If there's something that doesn't match, then that's the only time that we would request for new information.

**[10:17 – 10:26]**

OTTESON: Oh, so you're just saying, like, Chase is just trying to, um, adhere to federal regulations out of, like, good faith?

STEPHANIE: Yes, of course.

OTTESON: Oh, okay, good faith.

STEPHANIE: That's our job.

**[10:38 – 10:54]**

OTTESON: Yep, that's your job, for sure. Cool. Um, alright, thank you very much.

STEPHANIE: My pleasure.

OTTESON: Thank you, Stephanie, very much. Appreciate your time.

STEPHANIE: You do the same. This is Stephanie. Thank you for calling Chase. Have a good day. Goodbye.

OTTESON: Bye.

**[10:54 – 10:57]**

OTTESON: [To recording] Oh, buddy.

---

# EVIDENTIARY SIGNIFICANCE

This recording contains five critical admissions by Chase representative "Stephanie":

1. **Account closure confirmed** — "That is correct" — the account was closed by Chase

2. **Nothing in writing** — "There's really nothing that we could provide you in writing" — confirming Chase's deliberate opacity

3. **Chase Certificate of Trust identified** — "You signed it, but there was some unacceptable information on it" — confirming the closure was based on the signature/certification issue

4. **Internal policy concealment** — "It's a Chase policy, and that's not something we can show to you. These are internal information" — the direct admission of willful concealment

5. **"Good faith" admission** — When asked if Chase is acting "out of good faith," Stephanie responds "Yes, of course" — establishing Chase's own characterization of its conduct as "good faith" while simultaneously concealing the policy that governs the relationship

These admissions are offered as:

- Party-opponent statements under FRE 801(d)(2)(D) (agent within scope of employment)

- Evidence of willful concealment supporting the breach of implied covenant

- Foundation for the "good faith" estoppel — Chase cannot claim good faith while refusing to disclose the operative policy

---

I declare under penalty of perjury under the laws of the United States of America that the foregoing transcript is a true and accurate representation of the audio recording identified above, to the best of my ability.

Dated this 26th day of May, 2026

ERIK ARTHUR OTTESON

---

Plaintiff, Pro Se