# TRANSCRIPT OF AUDIO RECORDING

**Exhibit O — Telephone Call with Adrianna Gorton, Esq. (Rule 12(b) Meet and Confer)**

**Date:** Wednesday, September 24, 2025

**Duration:** Approximately 9 minutes, 8 seconds

**Participants:**

- **OTTESON:** Erik Arthur Otteson, Plaintiff

- **GORTON:** Adrianna Gorton, Practice Group Attorney, Greenberg Traurig LLP (Counsel for Defendant JPMorgan Chase Bank, N.A.)

**Recording:** 20250924018.WAV (33.65 MB)

**Transcription Method:** Automated speech-to-text, reviewed and formatted for accuracy

**One-Party Consent:** Arizona is a one-party consent state (A.R.S. § 13-3005)

**NOTE:** This call was initiated BY Gorton to satisfy the FRCP Rule 12(b) meet-and-confer requirement prior to filing Chase's Motion to Dismiss.

---

# TRANSCRIPT

**[00:00 – 00:15]**

GORTON: Hello. Hi, is this Mr. Otteson? This is — hello, this is Adrianna Gorton giving you a call from Greenberg Traurig. I represent JPMorgan Chase Bank. Is this still a good time to talk?

OTTESON: Yeah, yeah, it is.

**[00:15 – 00:21]**

GORTON: Okay, great. Um, so, as I mentioned yesterday, the Federal Rules of Civil Procedure have a meet-and-confer requirement wherein if a party is going to move to dismiss, we have to discuss kind of the grounds for dismissal and see whether or not we can agree that the allegations could be amended in order to state a legal claim.

**[00:43 – 00:55]**

GORTON: Um, so I'm calling to inform you and let you know that Chase is planning on filing a motion to dismiss today, um, to dismiss the complaint in its entirety because — and these are the reasons:

**[00:55 – 01:07]**

GORTON: One, the Certification of Trust is not an agreement between you and Chase, um, so that — with the breach of contract claim as well as the breach of implied covenants of good faith

and fair dealing claim.

**[01:07 – 01:21]**

GORTON: And then second, your claims for, um, deprivation of liberty or the right to contract under Article 2, Section 4 requires state action and Chase is not a state actor. So that's the basis that we're going to move to dismiss your claim.

**[01:21 – 01:27]**

OTTESON: Okay, um, well, we're going to have to agree to disagree.

GORTON: Yeah, that's fine. That's usually what happens on these. You know, there wouldn't be litigation if we agreed on —

**[01:39 – 01:57]**

OTTESON: Absolutely. I'm very interested — I'm very interested to see, uh, the elaboration of what you just said. So, um —

GORTON: Okay, great.

## GORTON RAISES TRUST REPRESENTATION ISSUE:

**[01:57 – 02:05]**

GORTON: I forgot an additional point and that's that you cannot represent —

**[02:06 – 02:20]**

OTTESON: Say that again? Uh oh. Hello? Did I — did I lose you there? I think I lost you, can you hear me?

**[02:20 – 02:34]**

OTTESON: Hello? Hello, are you there?

GORTON: Yes, I am.

OTTESON: Okay, yeah, that was weird. I'm living up in the mountains, so, um —

**[02:34 – 02:44]**

OTTESON: So, what — where did you leave off?

GORTON: I — it was — there was one other thing. I forgot to add an additional point and that's that, um, we will also move to dismiss on the basis that you cannot proceed in this matter without an attorney.

**[02:50 – 03:02]**

GORTON: Um, if you're not authorized by the bar to represent the trust, um, you have to have an attorney. Um, and so that's an additional basis that we'll be moving on.

## CAPTION CHANGE DISCUSSION:

**[03:02 – 03:10]**

OTTESON: Yeah, I noticed that when you remanded it from state court, you changed the caption. Did we?

**[03:10 – 03:18]**

OTTESON: Yeah, you know, I've been filing under, uh, my name, uh, as trustee under Rule 17(a)(1)(E), and then, because I really — I haven't been served by you at all, um, the only thing I've received —

**[03:28 – 03:36]**

GORTON: Did you receive copies in the mail?

OTTESON: I have not received — I have not received any copies in the mail, and, um, I have not consented to anything other than that.

**[03:36 – 03:54]**

GORTON: Um. Yeah, yeah, absolutely, you should have been getting mailed it, although in federal district court, ECF, if you have an email, it is proper service without having to mail. But I'll make sure that you get everything overnighted.

**[03:54 – 04:02]**

OTTESON: Well, and — and so what I — I need — anyway, so, to answer your point, first and foremost, um, when it was remanded, the caption was changed.

**[04:02 – 04:22]**

OTTESON: And I did receive a packet from, uh, the U.S. District Court, and what they — the caption on that was VKNG Fleet Trust, um, v. JPMorgan Chase, and that was a change from state court, so somehow that happened, and, uh, I'm not sure how that happened.

**[04:35 – 04:38]**

GORTON: That was likely done by the court.

**[04:38 – 04:51]**

GORTON: Let me see what we filed, because I'm almost positive — yeah, we filed under Erik Arthur Otteson, Trustee and Authorized Representative of the VKNG Fleet Trust.

OTTESON: That's what it is.

**[04:53 – 05:00]**

GORTON: All right, well — yeah, so that might have been — maybe it was just shortened by the court. Maybe they have some space, you know, constrictions. I'm not sure what the court sent you.

## SERVICE AND ECF DISCUSSION:

**[05:00 – 05:07]**

GORTON: I will make sure that you get everything over and good today.

**[05:08 – 05:23]**

OTTESON: So yeah, so the next thing I was going to bring up is, I've filed the motion for ECF, so that I can accept electronic filing. But I'm not going to be able to accept electronic filing until it's approved.

**[05:31 – 05:36]**

OTTESON: And just so you know, I am trying to speed this up.

**[05:39 – 05:45]**

OTTESON: I don't want to waste anyone's time. And I know how the mail can be a drag.

**[05:45 – 05:53]**

OTTESON: So getting the thing done.

GORTON: I'll go ahead and make sure I email everything to you today. And then we'll also overnight it to you, just so that you have copies of everything that's being filed.

**[05:58 – 06:03]**

GORTON: Because I obviously don't want you to not have copies. So I'll make sure that we do both of those as soon as possible.

**[06:06 – 06:12]**

GORTON: And then just let me know when you get approved on ECF, so that we can make sure that you're getting served that way as well. And anything that we file in court, we'll serve through the ECF.

**[06:17 – 06:23]**

GORTON: But I'll also make sure to send you a courtesy copy via email, so that you have it as soon as possible.

**[06:23 – 06:31]**

OTTESON: Yeah, once that's approved, once the ECF is approved, definitely. Until then, I've got to get it in the mail.

**[06:31 – 06:55]**

OTTESON: I will be filing a couple other notices, just to clarify my position. Sort of housekeeping stuff, just because of the weird caption, and just other things. And again, until I can file ECF, I will serve that in the mail, certified.

**[06:59 – 07:07]**

OTTESON: And then I will also get you an email copy, if you would like.

GORTON: OK. Yeah, that would be perfect.

## GORTON DIRECTS ALL COMMUNICATION TO HER OFFICE:

**[07:08 – 07:18]**

GORTON: And please make sure that you're sending any certified mail to our office, as opposed to directly to Chase. Since we represent Chase, any communication should be coming directly to us.

OTTESON: Understood. Understood.

## GORTON ASKS ABOUT SETTLEMENT / DAMAGES:

**[07:21 – 07:28]**

GORTON: And then, Mr. Otteson, I have a question for you. What is it that you're hoping to gain out of this litigation? Because maybe it's something that we can shortcut, and we can discuss, and kind of avoid the litigation.

**[07:28 – 07:35]**

GORTON: I'm just not sure what you're looking for.

**[07:35 – 07:54]**

OTTESON: Well, at this point, because of the intense resistance, what I'm really looking for is the internal policy that Chase is quoting that subverts the UCC, or ARS equivalent.

**[07:54 – 07:59]**

OTTESON: So first and foremost, that's what I'm looking for. And then beyond that, I would have to put some thoughtful consideration into that.

**[07:59 – 08:05]**

GORTON: OK. Well, please do, because I'm interested in hearing what it is that you're hoping to get out of this, in terms of how you believe you may be damaged, or what you're looking for, exactly.

**[08:05 – 08:15]**

GORTON: Because that's been unclear to me. And obviously, if we can reach a resolution, then — I mean, I don't have authorization for anything right now. But it's something that I can take back to my client, and we can discuss.

## KEY ADMISSION — INTERNAL POLICIES WOULD COME DURING DISCOVERY:

**[08:15 – 08:26]**

GORTON: As far as internal policies, that would be something that would likely come during the course of discovery, if this were to go forward.

## GORTON'S POSITION ON CERTIFICATION OF TRUST:

**[08:26 – 08:38]**

GORTON: But the Certification of Trust isn't an agreement between the parties. So Chase wasn't agreeing to anything when you filled that out.

**[08:38 – 08:45]**

GORTON: But you'll see that in our motion to dismiss. I'll make sure that everything gets mailed. I'll make sure that everything gets emailed, and that we can go from there.

**[08:45 – 08:51]**

OTTESON: Awesome. Very nice speaking to you, Adrianna. It's Adrianna, right?

GORTON: It is.

OTTESON: OK. I just didn't want to say it the wrong way.

GORTON: No. Keep chatting.

OTTESON: All right. Awesome. Thank you so much for your time.

GORTON: Thank you. Bye.

# EVIDENTIARY SIGNIFICANCE

This recording contains the single most damaging admission in the entire case:

> "As far as internal policies, that would be something that would likely come during the course of discovery, if this were to go forward."

This statement by Gorton is devastating because:

1. **It acknowledges internal policies exist** — She does not deny their existence; she says they "would likely come during the course of discovery"

2. **It acknowledges they are relevant** — If they were irrelevant, there would be no reason to produce them in discovery

3. **It contradicts her April 28, 2026 email** — Seven months later, Gorton wrote that Chase is "under no obligation to produce internal policies (even if relevant)" — directly contradicting her own earlier representation that they would be produced in discovery

4. **It establishes bad faith** — Gorton promised production in discovery, then filed a motion to dismiss specifically to prevent discovery from ever occurring

5. **It is a judicial admission** — Made by counsel during a Rule 12(b) meet-and-confer, this statement carries the weight of a representation to the opposing party in the context of litigation

This admission is offered as:

- Party-opponent statement under FRE 801(d)(2)(D) (attorney-agent authorized to speak on behalf of client)

- Judicial admission / admission by counsel binding on Chase

- Evidence of bad faith litigation strategy — promise production, then seek dismissal to prevent it

- Foundation for sanctions — the contradiction between this statement and the April 28 email constitutes a misrepresentation to the opposing party

---

I declare under penalty of perjury under the laws of the United States of America that the foregoing transcript is a true and accurate representation of the audio recording identified above, to the best of my ability.

Dated this 26th day of May, 2026

ERIK ARTHUR OTTESON

---

Plaintiff, Pro Se