ERIK ARTHUR OTTESON
PO Box 4093
Cottonwood, AZ 86326
(928) 254-1037
erikotteson@gmail.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ERIK ARTHUR OTTESON,<br><br>Plaintiff,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A.,<br>GREENBERG TRAURIG, LLP,<br>NICOLE M. GOODWIN,<br>ADRIANNA G. GORTON,<br><br>Defendants. | Case No. 3:25-cv-08198-DWL<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT (Re: Doc. 21)** |

"[I]n cases where the facts are all conceded, or where they are proved and uncontradicted by evidence, it has always been the practice of the courts to take the case from the jury and decide it as a question of law. No counsel has ever disputed the right of the court to do so. No respectable counsel will venture to doubt the correctness of such practice."

— Associate Justice Ward Hunt, *United States v. Anthony*, 24 F. Cas. 829 (C.C.N.D.N.Y. 1873)

## I.    INTRODUCTION

1. Plaintiff ERIK ARTHUR OTTESON, files this First Amended Complaint and alleges as follows:

2. This Complaint is Document 1 of a four-part evidentiary sequence designed to establish scienter and bad faith through Defendants' own adopted positions.

3. Under Federal Rule of Evidence 801(d)(2)(D), a statement offered against an opposing party that was made by the party's agent or employee on a matter within the scope of that relationship and while it existed is admissible as an opposing party's statement.

4. Furthermore, under the common law doctrine of adoptive admissions, as preserved by Federal Rule of Evidence 801(d)(2)(B) and recognized by the Ninth Circuit, a party's silence in the face of an accusation that naturally calls for a denial constitutes an adoption of that accusation.

5. As detailed in the concurrently filed Motion for Judicial Notice, the doctrine of adoptive admissions is a 210-year-old common law principle endorsed by forty-five states, including an unbroken chain of Arizona jurisprudence from 1923 to 2011.

6. The Statement of Facts herein is constructed entirely upon the adopted positions of Defendants. Every factual allegation is grounded in a statement made by Defendants' agents, or an accusation adopted by Defendants through their strategic silence.

7. By framing the facts as adopted positions, Plaintiff demonstrates that Defendants' own contradictory statements form an inescapable chain of bad faith, rendering summary judgment inevitable.

8. This First Amended Complaint adds Defendants Greenberg Traurig, LLP, Nicole M. Goodwin, and Adrianna G. Gorton based on conduct occurring after the filing of the original Complaint — specifically, counsel's adoption of contradictory positions regarding the existence and producibility of internal policies, counsel's written concession that concealed evidence is relevant, and counsel's reservation of all rights on behalf of all parties while maintaining that Plaintiff's identical reservation justified account closure.

9. The Uniform Commercial Code is codified in Arizona at A.R.S. Title 47. All UCC provisions cited herein are binding Arizona law applicable to this dispute under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).

## II. PARTIES

9. Plaintiff ERIK ARTHUR OTTESON ("Plaintiff") is an individual domiciled in Arizona and the owner of a sole proprietorship located in the State of Arizona.

10. Defendant JPMorgan Chase Bank, N.A. ("Chase") is a national banking association. For purposes of diversity jurisdiction, a national bank is deemed a citizen of the state in which its main office is located. 28 U.S.C. § 1348. Chase's main office is located in Columbus, Ohio. Chase is therefore a citizen of Ohio.

11. Defendant Greenberg Traurig, LLP ("Greenberg Traurig") is a limited liability partnership organized under the laws of the State of Florida, with its principal office in Miami, Florida. Greenberg Traurig is therefore a citizen of Florida.

12. Defendant Nicole M. Goodwin ("Goodwin") is a Managing Shareholder at Greenberg Traurig, admitted to practice in the State of Arizona, and a citizen of the State of Arizona.

13. Defendant Adrianna G. Gorton ("Gorton") is an attorney at Greenberg Traurig, admitted to practice in the State of Arizona, and a citizen of the State of Arizona.

## III. JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over the claims against Chase and Greenberg Traurig pursuant to 28 U.S.C. § 1332(a) (diversity of citizenship). Plaintiff is a citizen of Arizona. Chase is a citizen of Ohio. Greenberg Traurig is a citizen of Florida. Complete diversity exists between Plaintiff and these Defendants. The amount in controversy, including the potential for punitive

damages upon a finding of scienter and bad faith, exceeds $75,000, exclusive of interest and costs.

15. This Court has supplemental jurisdiction over the claims against Goodwin and Gorton pursuant to 28 U.S.C. § 1367(a). The claims against Goodwin and Gorton arise from the same case or controversy as the claims against Chase and Greenberg Traurig, forming part of the same nucleus of operative facts.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

## IV. STATEMENT OF FACTS: THE CHAIN OF ADOPTED POSITIONS

17. On May 14, 2025, Plaintiff executed a Certification of Trust to open an account with Chase, signing with the phrase "without prejudice" to explicitly reserve his rights under UCC § 1-308 (A.R.S. § 47-1308). A.R.S. § 47-1308(A) provides that such words as "without prejudice" or "under protest" are sufficient to reserve rights. Chase accepted the document and opened the account. On May 27, 2025, Chase adopted the position, via an "Action Needed" letter, that "banking regulations require" updated documentation, but deliberately failed to name any specific regulation.

18. On June 9, 2025, Chase adopted the position, via an internal email from Philippines-based Fraud Specialist Patricia Tracy Jude D. San Agustin, that "without prejudice" is a settlement negotiation term not applicable to signatures, demonstrating a fundamental misunderstanding of UCC § 1-308 (A.R.S. § 47-1308).

19. On July 26, 2025, Chase adopted the position, via a recorded call with a KYC representative, that "the account was closed because of the signature on the signature card" and that "the last review was done on June 11th, that it was really not accepted."

20. On July 31, 2025, Chase adopted the position, via a letter from its Executive Office, that "the signatures you provided included additional verbiage, without prejudice," confirming the sole reason for the account closure.

21. On August 1, 2025, Chase adopted the position, via a recorded call with KYC representative "Stephanie," that "there's really nothing we could provide you in writing," that the policy is "not something we can show to you," and that they were "trying to comply with federal regulations" but could not name a single one. Stephanie also confirmed that Chase acts in "good faith," stating, "Yes, of course. That's our job."

22. On August 22, 2025, Chase adopted the position, via a recorded call with Records representative "Miguel," that records would be preserved under case SB1746986-F1 and could be released upon legal request.

23. On September 24, 2025, Defendant Gorton adopted the position, in a recorded telephone conversation, that "internal policies would likely come during the course of discovery."

24. On February 24, 2026, Defendant Gorton adopted the position, via email, that "we intend to respond substantively to your letter within the next week" regarding Plaintiff's Preservation Demand. No substantive response was ever provided.

25. On April 28, 2026, Defendant Gorton adopted the position, via email on behalf of "we" (Gorton, Goodwin, and Chase), that "Chase is under no obligation to produce internal policies (even if relevant)." The phrase "even if relevant" constitutes a written concession that the concealed policies are relevant to the litigation.

26. In that same April 28, 2026 email, Defendant Gorton attacked the procedure of Plaintiff's Notices of Presumptions but never denied the substantive accusations of bad faith, willful concealment, and spoliation, thereby adopting those accusations by silence under FRE 801(d)(2)(B).

27. In that same April 28, 2026 email, Defendants adopted the position that one may lawfully reserve rights, stating: "Chase expressly reserves all rights." This reservation was made on behalf of "we" — Gorton, Goodwin, and Chase — exercising the identical legal act for which Chase closed Plaintiff's account. Defendants thereby adopted the position that reserving rights is proper, lawful, and enforceable, while simultaneously maintaining that Plaintiff's reservation of rights under UCC § 1-308 (A.R.S. § 47-1308) justified account closure.

28. The contradiction between Gorton's September 24, 2025 position (policies "would likely come") and her April 28, 2026 position ("no obligation to produce") demonstrates a deliberate, strategic decision to conceal evidence.

29. The contradiction between Defendants' reservation of all rights on April 28, 2026 and Chase's closure of Plaintiff's account for reserving rights on May 14, 2025 is irreconcilable. Defendants cannot adopt the position that reserving rights is lawful for themselves while punishing Plaintiff for exercising the identical right under codified statute.

V.   **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

*(Against Defendant Chase)*

Plaintiff incorporates all preceding paragraphs by reference.

A.   **"The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship."**

1. Chase's Philippines-based Fraud Specialist confused UCC § 1-308 (A.R.S. § 47-1308) (reservation of rights) with settlement negotiation privilege, and this incorrect analysis formed the sole basis for the closure decision — impairing Plaintiff's right to receive the benefits of the account.

2. Chase refused to provide the specific reason for closure despite multiple written demands, actively concealing the internal policy that governed the decision.

3. Chase demanded Plaintiff surrender his statutory rights as a condition of continued banking, stating: "If you would like to open new accounts, you may do so. However, they may not contain additional verbiage with the signatures."

**B.    "The obligation of good faith may not be disclaimed by agreement."**

1. Chase's Executive Office invoked the Deposit Account Agreement's "at-will" clause, stating the account may be closed "at any time for any reason or no reason without prior notice."

2. The "at-will" clause is void ab initio to the extent it purports to authorize bad-faith closure. UCC § 1-302(b) (A.R.S. § 47-1302(B)).

3. Chase's own representative adopted the position that Chase acts in "good faith" — "Yes, of course. That's our job" — confirming the duty exists and was owed.

**C.    The good faith obligation is enforceable by action.**

1. UCC § 1-304 (A.R.S. § 47-1304) provides: "Every contract or duty within this title imposes an obligation of good faith in its performance and enforcement."

2. UCC § 1-305(b) (A.R.S. § 47-1305(B)) provides: "Any right or obligation declared by this title is enforceable by action unless the provision declaring it specifies a different and limited effect."

3. No provision of Article 1 specifies a different or limited effect for the good faith obligation. This cause of action is therefore expressly authorized by statute.

**D.    As a direct and proximate result of Chase's breach, Plaintiff has suffered and continues to suffer damages.**

1. Chase denied Plaintiff the right expressly codified at UCC § 1-308 (A.R.S. § 47-1308) — the right to perform under a contract while reserving rights using the words "without prejudice." The denial of a statutory right is itself an injury.

2. UCC § 1-305(a) (A.R.S. § 47-1305(A)) provides that the aggrieved party must be put in "as good a position as if the other party had fully performed." Full performance means Plaintiff's account remains open with his reservation of rights honored. The void between that position and Plaintiff's current position — forced to expend time and resources proving what the statute plainly states — is one that produces ongoing damages accruing daily.

*Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 38 P.3d 12 (2002) (en banc); UCC § 1-302(b) (A.R.S. § 47-1302(B)); UCC § 1-304 (A.R.S. § 47-1304); UCC § 1-305 (A.R.S. § 47-1305).

## VI.    FRAUDULENT CONCEALMENT

*(Against Defendant Chase)*

Plaintiff incorporates all preceding paragraphs by reference.

 **A.    "Self-interest does not justify an affirmative strategy to deprive the other party of information."**

 1. On August 1, 2025, Chase's representative stated: "There's really nothing we could provide you in writing" and "It's a Chase policy, and that's not something we can show to you. These are internal information. It's privacy."

 2. Chase's Executive Office admitted internal processes exist but refused to share them, confirming the existence of the concealed evidence.

 3. Chase invoked unnamed "federal regulations" as justification but could not identify a single specific regulation when pressed.

 **B.    "Simple nondisclosure is not the claim" — the claim is active concealment.**

 1. On September 24, 2025, Gorton stated internal policies "would likely come during the course of discovery."

 2. On April 28, 2026, Gorton stated Chase is "under no obligation to produce internal policies (even if relevant)."

3.  The reversal from "would likely come" to "no obligation to produce" demonstrates consciousness of guilt and deliberate concealment.

**C.    As a direct and proximate result of Chase's fraudulent concealment, Plaintiff has suffered damages to be proven at trial.**

*Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 38 P.3d 12 (2002) (en banc).

## VII.    <u>INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS</u>

*(Against Defendant Chase)*

Plaintiff incorporates all preceding paragraphs by reference.

**A.    "The duty not to interfere with the contract of another arises out of law, not contract."**

1.  Chase accepted the Certification of Trust and opened the account, forming a binding contractual relationship governed by the Uniform Commercial Code (A.R.S. Title 47).

2.  Chase's Philippines-based Fraud Specialist provided a legally incorrect analysis confusing UCC § 1-308 (A.R.S. § 47-1308) with settlement negotiation privilege, and this analysis was used to terminate the contractual relationship.

3.  Chase demanded Plaintiff surrender his statutory rights as a condition of continued banking, stating: "If you would like to open new accounts, you may do so. However, they may not contain additional verbiage with the signatures."

**B.    Chase's interference was improper under the factors set forth in the Restatement (Second) of Torts § 767.**

1.  The nature of Chase's conduct — closing an account based on a legally incorrect analysis from a Philippines-based fraud specialist rather than legal counsel — is improper.

2.  Chase's motive — punishing a customer for exercising a codified statutory right — is improper.

3. The interests interfered with — Plaintiff's right to perform under the UCC while reserving rights — are expressly protected by statute. A.R.S. § 47-1308(A).

**C.** **As a direct and proximate result of Chase's intentional interference, Plaintiff has suffered damages to be proven at trial.**

*Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 38 P.3d 12 (2002) (en banc); Restatement (Second) of Torts § 767.

## VIII. <u>AIDING AND ABETTING FRAUDULENT CONCEALMENT</u>

*(Against Defendants Greenberg Traurig, Goodwin, and Gorton)*

Plaintiff incorporates all preceding paragraphs by reference.

**A.** **"(1) The primary tortfeasor must commit a tort that causes injury; (2) the defendant must know the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach."**

1. Chase committed the primary tort of fraudulent concealment by actively hiding the internal policy governing the account closure.

2. Gorton reversed her position on the producibility of internal policies — from "would likely come during the course of discovery" to "no obligation to produce (even if relevant)" — demonstrating knowing participation in the concealment strategy.

3. Gorton promised a substantive response to Plaintiff's Preservation Demand on February 24, 2026 and never provided one, enabling the continued concealment of evidence subject to a litigation hold.

**B.** **Defendants knew that Chase's conduct constituted a breach of duty.**

1. Gorton acknowledged on September 24, 2025 that internal policies exist and are producible — establishing knowledge of the concealed evidence.

2. Gorton's use of "even if relevant" on April 28, 2026 constitutes a written concession that the concealed policies are relevant — establishing knowledge that the concealment is material.

3. Goodwin received the First Notice of Presumptions on January 27, 2026, detailing the accusations of bad faith and concealment, and never responded — establishing knowledge and adoption by silence.

**C.** **Under Arizona law, aiding and abetting requires only proof by a preponderance of the evidence. As a direct and proximate result of this aiding and abetting, Plaintiff has suffered damages to be proven at trial.**

*Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 38 P.3d 12 (2002) (en banc).

## IX.    CONCLUSION

When one considers the totality of positions Chase and counsel have adopted — in breadth, diversity, and subject matter — **one can only logically presume that Defendants must either be wards, or be in complete possession of scienter.**

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests:

**A.**    One dollar ($1.00) in compensatory damages — representing the full value of the contractual relationship Defendants deemed worth destroying over a codified statutory right.

**B.**    Reasonable time expenditure — to be calculated at the conclusion of this matter, reflecting the hours Plaintiff was forced to spend proving what Defendants could have resolved with a single honest conversation.

**C.**    Punitive damages — in an amount to be determined by the Court upon its finding of scienter and bad faith, as the natural consequence of Defendants' choice to conceal rather than correct.

> **D.**    Production of the internal policy — the document Defendants have spent eleven months and untold billable hours refusing to produce.
>
> **E.**    Such other and further relief as this Court deems just and proper.

## XI.    JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated this 15th day of June, 2026

Respectfully,

ERIK ARTHUR OTTESON

*Erik Arthur Otteson*

Plaintiff, Pro Se

PO Box 4093
Cottonwood, AZ 86326
(928) 254-1037
erikotteson@gmail.com

## VERIFICATION

I, ERIK ARTHUR OTTESON, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual allegations set forth in this First Amended Complaint are true and correct to the best of my knowledge, information, and belief.

Dated this 15th day of June, 2026

ERIK ARTHUR OTTESON
*without prejudice*
*Erik Arthur Otteson*

Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on 06/15/2026, I caused the foregoing PLAINTIFF'S FIRST AMENDED COMPLAINT (Re: Doc. 21) to be served upon all Defendants via CM/ECF:

Nicole Goodwin
Adrianna Gorton
Greenberg Traurig, LLP
2375 E. Camelback Road
Suite 700
Phoenix, Arizona 85016
Counsel for Defendant JPMorgan Chase Bank, N.A., and Defendants in their individual capacities

Dated this 15th day of June, 2026

ERIK ARTHUR OTTESON

Plaintiff, Pro Se