ERIK ARTHUR OTTESON
PO Box 4093
Cottonwood, AZ 86326
(928) 254-1037
erikotteson@gmail.com

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

ERIK ARTHUR OTTESON,

Plaintiff,

vs.

JPMORGAN CHASE BANK, N.A.,
GREENBERG TRAURIG, LLP,
NICOLE M. GOODWIN,
ADRIANNA G. GORTON,

Defendants.

Case No. 3:25-cv-08198-DWL

**MOTION FOR SUMMARY JUDGMENT**

"[I]ndividual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts."

— Chief Justice William Rehnquist, *United States v. Huddleston*, 485 U.S. 681 (1988) (quoting *Bourjaily v. United States*, 483 U.S. 171 (1987))

## I.   INTRODUCTION

1.   Plaintiff ERIK ARTHUR OTTESON, respectfully moves this Court for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

2.   This Motion for Summary Judgment is Document 2 of the evidentiary sequence. It applies the facts established in the First Amended Complaint to the legal framework established by the Arizona Supreme Court in *Wells Fargo Bank v. Arizona Laborers*, 201 Ariz. 474 (2002), codified in Arizona at A.R.S. Title 47.

3. As the Arizona Supreme Court held in *Wells Fargo*, "This is a case alleging intentional conduct and thus not a duty case in the traditional sense." 201 Ariz. 474 at ¶17. Defendants cannot hide behind a defense of "no duty to disclose."

4. The undisputed record demonstrates that Defendants intentionally closed the accounts, intentionally refused to produce the policy governing that closure, and intentionally mischaracterized Plaintiff's lawful invocation of the Uniform Commercial Code to prevent further inquiry. In the entirety of this litigation, Defendants have never denied a single substantive factual accusation. They have attacked procedure, threatened sanctions, and reserved rights — but never once addressed the merits. The silence is not strategic caution. It is the absence of a defense.

5. There is no genuine dispute as to any material fact. The undisputed material facts are established through: (1) Defendants' own admissions by counsel; (2) adoptive admissions arising from Defendants' selective silence under FRE 801(d)(2)(B); (3) unrebutted presumptions under FRE 301; and (4) documentary evidence in the record.

6. Plaintiff is entitled to judgment as a matter of law on all counts pursuant to Federal Rule of Civil Procedure 56.

## II.   LEGAL STANDARD

6. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

7. The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

8. Once the moving party has met this burden, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden now shifts. Defendants

must, for the first time in this litigation, address the merits. The procedural obstruction that created the adoptive admissions cannot now serve as the vehicle to overcome them.

9. Defendants' pending Motion to Dismiss (Doc. 22) asserts "failure to state a claim." The First Amended Complaint moots that motion. However, even if the Court considers the argument, A.R.S. § 47-1305(B) expressly authorizes this action, stating: "Any right or obligation declared by this title is enforceable by action." The argument is foreclosed by statute.

III. **THE CHRONOLOGICAL TIMELINE OF ADMISSIONS**

A. **Chase adopted a legally incorrect interpretation of UCC § 1-308 (A.R.S. § 47-1308) as its official position and acted upon it.**

1. In 2025, Chase's Philippines-based Fraud Specialist Patricia San Augustin communicated her interpretation of UCC § 1-308 (A.R.S. § 47-1308) to Chase associate Christian Zamora via internal email. San Augustin's analysis confused a statutory reservation of rights with "without prejudice privilege" — a settlement negotiation concept with no application to commercial endorsements.

2. Zamora printed the email chain, wrote a case number on the document in wet ink, and Chase acted upon it by closing the account. Plaintiff is in possession of this internal email. See Exhibit E.

3. Under FRE 801(d)(2)(D), this is a statement by an agent on a matter within the scope of the agency relationship, binding the client.

4. Defendants have never disavowed this analysis.

B. **Chase acknowledged its duty of good faith to its customers.**

1. On August 1, 2025, Chase's representative stated in a recorded telephone conversation: "Yes, of course. That's our job" — acknowledging that Chase owes a duty of good faith to its customers.

2. Under FRE 801(d)(2)(D), this is an affirmative statement by an agent on a matter within the scope of the agency relationship, binding the client. See Exhibit L.

3. Defendants have never denied this statement was made or withdrawn the admission.

**C.     The sole reason for the account closure was Plaintiff's exercise of UCC § 1-308 (A.R.S. § 47-1308).**

1. On August 1, 2025, Chase's representative stated in a recorded telephone conversation that the account was closed "because of the signature on the signature card" — confirming that Plaintiff's UCC § 1-308 (A.R.S. § 47-1308) reservation was the sole and exclusive trigger.

2. Under FRE 801(d)(2)(D), this is an affirmative statement by an agent binding the client. See Exhibit L.

3. Defendants have never offered an alternative reason.

**D.     Internal processes governing the closure exist and Chase deliberately concealed them.**

1. On August 14, 2025, Chase's Executive Office stated in writing: "We are unable to share the specific details of our internal processes."

2. Under FRE 801(d)(2)(D), this is an affirmative statement by an agent binding the client. See Exhibit I.

3. Defendants have never denied this.

**E.     Internal policies governing account closures exist and are producible.**

1. On November 17, 2025, Defendants filed a Motion to Dismiss (Doc. 22). In Footnote 1, Defendant Gorton stated: "This section of the UCC (and the UCC in general) is often cited and used argument deployed under sovereign citizen theories."

2. Under FRE 801(d)(2)(D), this is an affirmative statement by an agent binding the client. See *United States v. Smith*, 390 F.3d 661, 665 (9th Cir. 2004) ("Smith is bound by his counsel's statement.").

3. This statement mischaracterizes A.R.S. Title 47 — binding Arizona state law — as "fringe theory" to prejudice the Court against Plaintiff's lawful exercise of a codified statutory right.

**F. Defendants adopted the position — in their own Motion to Dismiss — that the Uniform Commercial Code constitutes "sovereign citizen" fringe theory.**

1. In Document 22 (filed November 17, 2025), Defendants stated: "This section of the UCC (and the UCC in general) is often cited and used argument deployed under sovereign citizen theories." Doc. 22 at 6, n.1.

2. Defendants further cited *United States v. Studley*, 783 F.2d 934, 937 n.3 (9th Cir. 1986), for the proposition that "arguments based on sovereign citizen ideology is frivolous and grounds for sanctions." Id.

3. The Uniform Commercial Code has been adopted in all fifty states and governs every commercial transaction in the United States. UCC § 1-304 (A.R.S. § 47-1304) imposes a non-disclaimable obligation of good faith on every party to a commercial transaction. UCC § 1-302(b) (A.R.S. § 47-1302(B)) provides that this obligation may not be disclaimed by agreement.

4. Defendants have never withdrawn this characterization.

**G. Defendants adopted the accusations of bad faith and concealment by total silence.**

1. On January 27, 2026, Plaintiff served via licensed process server the First Notice of Presumptions upon Defendant Goodwin, detailing accusations of bad faith and concealment.

2. Goodwin provided no response.

3. Under FRE 801(d)(2)(B), silence in the face of an accusation constitutes an adoptive admission. See *Transbay Auto Serv., Inc. v. Chevron U.S.A. Inc.*, 807 F.3d 1113 (9th Cir. 2015). See Exhibit Q.

**H.     Defendants acknowledged the Preservation Demand, promised a response, and then deliberately failed to provide one.**

1. On February 24, 2026, Defendant Gorton stated in writing: "We intend to respond substantively to your letter within the next week."

2. No response was ever provided.

3. Under FRE 801(d)(2)(D), this is an affirmative statement by an agent binding the client. See Exhibit R.

4. Defendants have never explained this failure.

**I.     The internal policies are relevant to this litigation — conceded by Defendants' own counsel.**

1. On April 28, 2026, Defendant Gorton responded to the Second Notice of Presumptions. In that response, Gorton stated: "Chase is under no obligation to produce internal policies (even if relevant)."

2. The parenthetical concession — "even if relevant" — constitutes an admission of relevance.

3. Under FRE 801(d)(2)(D), this is an affirmative statement by an agent binding the client. See Exhibit U.

4. Defendants have never withdrawn this concession.

**J.     Defendants adopted the accusations of bad faith, willful concealment, and spoliation by selective silence.**

1. In that same April 28, 2026 response, Defendants addressed the procedural format of Plaintiff's notices but failed to deny the substantive factual accusations of bad faith, willful concealment, and spoliation contained therein.

2. Under FRE 801(d)(2)(B), a selective response that fails to deny specific accusations constitutes an adoptive admission of the unaddressed portions. See

*Sea-Land Serv., Inc. v. Lozen Int'l, LLC*, 285 F.3d 808 (9th Cir. 2002). See Exhibit U.

3. Critically, counsel's written statement that "Chase will not, however, engage in informal rebuttal of unsupported accusations" constitutes an affirmative refusal to deny the substance of the accusations — not mere silence, but a conscious, deliberate choice to leave the factual allegations uncontested while attacking only the procedural vehicle. A party who responds to an accusation, addresses its form, but deliberately refuses to deny its substance, adopts the unaddressed content with greater force than silence alone. See Sea-Land Serv., Inc. v. Lozen Int'l, LLC, 285 F.3d 808, 821 (9th Cir. 2002) ("A response that fails to deny specific allegations constitutes an adoptive admission of those allegations."). See Exhibit U.

4. Defendants have never denied these accusations on the merits.

**K.      Defendants adopted the final accusations by total silence.**

1. On May 8, 2026, Plaintiff served the Third Notice of Presumptions.

2. Defendants provided no response.

3. Under FRE 801(d)(2)(B), silence in the face of an accusation constitutes an adoptive admission. See *Transbay Auto Serv., Inc. v. Chevron U.S.A. Inc.*, 807 F.3d 1113 (9th Cir. 2015). See Exhibit W.

**L.      Counsel's good faith consultation was not conducted in good faith.**

1. Counsel's Certificate of Attempted Good Faith Consultation, filed with the Court in connection with the Rule 12 Motion, was directed to an incorrect email address despite counsel possessing Plaintiff's correct telephone number.

2. Under FRE 801(d)(2)(B), Defendants' failure to explain or correct this discrepancy when confronted constitutes an adoptive admission that the consultation was a sham.

3. Defendants have never explained why the wrong address was used or why the correct phone number was not called.

**M.** **Chase invoked UCC § 1-308 (A.R.S. § 47-1308) for itself while punishing Plaintiff for exercising the identical right.**

1. In the same April 28, 2026 correspondence, Defendant Gorton stated: "Chase expressly reserves all rights."

2. Under FRE 801(d)(2)(D), this is an affirmative statement by an agent binding the client. See Exhibit U.

3. Chase invoked UCC § 1-308 (A.R.S. § 47-1308) — the identical statutory code it punished Plaintiff for using — while simultaneously maintaining that Plaintiff's invocation of the same code justified account closure.

4. Defendants have never addressed this contradiction.

**IV.** **COUNT I: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (AGAINST CHASE)**

**A.** **"The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." Wells Fargo, 201 Ariz. 474 at ¶59.**

1. Chase's Philippines-based Fraud Specialist confused UCC § 1-308 (A.R.S. § 47-1308) (reservation of rights) with settlement negotiation privilege, and this incorrect analysis formed the sole basis for the closure decision — impairing Plaintiff's right to receive the benefits of the account. (See Fact A.)

2. Chase refused to provide the specific reason for closure despite multiple written demands, actively concealing the internal policy that governed the decision. (See Facts D, E, H.)

3. Chase demanded Plaintiff surrender his statutory rights as a condition of continued banking, stating: "If you would like to open new accounts, you may do so. However, they may not contain additional verbiage with the signatures." (See Exhibit I.)

**B. "The obligation of good faith may not be disclaimed by agreement." UCC § 1-302(b) (A.R.S. § 47-1302(B)).**

1. Chase's Executive Office invoked the Deposit Account Agreement's "at-will" clause, stating the account may be closed "at any time for any reason or no reason without prior notice." The "at-will" clause is void ab initio to the extent it purports to authorize bad-faith closure. UCC § 1-302(b) (A.R.S. § 47-1302(B)). (See Exhibit I.)

2. As Wells Fargo established, a party can breach the implied covenant "even in the absence of a breach of an express provision of the contract." 201 Ariz. 474 at ¶64. Retained discretionary power exercised in bad faith breaches the covenant.

3. The undisputed facts establish every element of this claim. Defendants have never denied any of these facts.

## V. COUNT II: FRAUDULENT CONCEALMENT (AGAINST CHASE)

**A. "Self-interest does not justify an affirmative strategy to deprive the other party of information." Wells Fargo, 201 Ariz. 474 at ¶86.**

1. On August 1, 2025, Chase's representative stated: "There's really nothing we could provide you in writing" and "It's a Chase policy, and that's not something we can show to you." (See Fact D; Exhibit L.)

2. Chase's Executive Office admitted internal processes exist but refused to share them, confirming the existence of the concealed evidence. (See Fact D; Exhibit I.)

3. Chase invoked unnamed "federal regulations" as justification but could not identify a single specific regulation when pressed. (See Exhibit L.)

**B. "Fraudulent concealment — without any misrepresentation or duty to disclose — can constitute common law fraud." *Wells Fargo*, 201 Ariz. 474 at ¶95.**

1. Gorton stated internal policies "would likely come during the course of discovery" (See Exhibit O) — acknowledging their existence and producibility —

then reversed to "no obligation to produce (even if relevant)" (See Exhibit U) — demonstrating deliberate concealment rather than legitimate privilege.

2. The undisputed facts establish every element of this claim. Defendants have never denied any of these facts.

## VI. COUNT III: INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS (AGAINST CHASE)

**A.** **"The duty not to interfere with the contract of another arises out of law, not contract."** *Wells Fargo*, **201 Ariz. 474 at ¶73.**

1. Chase accepted the Certification of Trust and opened the account, forming a binding contractual relationship governed by the Uniform Commercial Code (A.R.S. Title 47).

2. Chase adopted the position — via the San Augustin internal email — that UCC § 1-308 (A.R.S. § 47-1308) is equivalent to "without prejudice privilege," and acted upon this legally incorrect analysis to terminate the contractual relationship. (See Fact A; Exhibit E.)

3. Chase's motive was to punish a customer for exercising a codified statutory right. Defendants have never offered an alternative motive. (See Fact C.)

4. The undisputed facts establish every element of this claim. Defendants have never denied any of these facts.

## VII. COUNT IV: AIDING AND ABETTING FRAUDULENT CONCEALMENT (AGAINST GT, GOODWIN, GORTON)

**A.** **"(1) The primary tortfeasor must commit a tort that causes injury; (2) the defendant must know the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach."** *Wells Fargo*, **201 Ariz. 474 at ¶34.**

1. Chase committed the primary tort of fraudulent concealment by actively hiding the internal policy governing the account closure. (See Facts D, E, H.)

2. Gorton reversed her position on the producibility of internal policies — from "would likely come during the course of discovery" to "no obligation to produce (even if relevant)" — demonstrating knowing participation in the concealment strategy. (See Facts E, H; Exhibits L, U, O.)

3. Gorton promised a substantive response to Plaintiff's Preservation Demand on February 24, 2026 and never provided one, enabling the continued concealment of evidence subject to a litigation hold. (See Fact G; Exhibit R.)

4. Goodwin received the First Notice of Presumptions on January 27, 2026, detailing the accusations of bad faith and concealment, and never responded. (See Fact F; Exhibit Q.)

5. The undisputed facts establish every element of this claim. Defendants have never denied any of these facts.

## VIII. <u>THE MULTI-HIT COMBINATION</u>

The evidentiary framework in this case operates as a sequential combination, where each mechanism activates the next:

1. FIRST — UCC § 1-304 (A.R.S. § 47-1304): The duty of good faith applies to every transaction governed by the Uniform Commercial Code. A party to a UCC-governed contract cannot disclaim the existence of the duty itself. Where a party exercises retained discretionary power to terminate a contractual relationship, the duty of good faith governs that exercise. There is a claim.

2. SECOND — UCC § 1-302(b) (A.R.S. § 47-1302(B)): The obligation of good faith may not be disclaimed by agreement. No contractual provision — however broadly drafted — can override this statutory mandate. A clause purporting to authorize termination "for any reason or no reason" cannot authorize termination in bad faith. The defense is void as a matter of law.

3. THIRD — FRE 801: All communications between parties — written, oral, recorded, or served — are admissible as evidence when offered against the party who made them. Every letter sent, every demand served, every notice delivered

creates an obligation to respond. Even where a specific evidentiary sub-rule does not apply, the common law of evidence governs. Communication is communication.

4. FOURTH — FRE 801(d)(2)(D): A statement made by a party's agent or employee on a matter within the scope of that relationship, while it existed, is not hearsay when offered against that party. When counsel speaks, the client is bound. When an agent speaks within the scope of employment, the principal is bound. The statements are on the record.

5. FIFTH — FRE 801(d)(2)(B): A statement is not hearsay if it is offered against an opposing party and is one the party manifested an adoption or belief in its truth. Under the common law doctrine of adoptive admissions, silence in the face of an accusation that naturally calls for a denial constitutes an adoption of that accusation. A selective response that addresses procedure but fails to deny substance adopts the unaddressed substance. The silence speaks.

6. SIXTH — Adverse Inference: Where a party has control over evidence and fails to produce it — or actively conceals it — the Court may instruct that the concealed evidence is presumed unfavorable to the concealing party. The gaps in the record are filled by the conduct that created them.

7. SEVENTH — FRE 201: A court shall take judicial notice of a fact not subject to reasonable dispute because it is generally known or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Where a legal doctrine has been recognized for over two centuries and endorsed by forty-five states, it is not subject to dispute. The Court takes notice.

8. EIGHTH — UCC § 1-305(b) (A.R.S. § 47-1305(B)): Any right or obligation declared by the Uniform Commercial Code is enforceable by action. The duty exists, it cannot be disclaimed, it was breached, and the statute expressly authorizes enforcement.

9. NINTH — UCC § 1-305(a) (A.R.S. § 47-1305(A)): The remedies provided must be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed. Full performance requires the account to remain open with Plaintiff's reservation of rights honored. The measure of damages is the time and resources expended by Plaintiff to achieve the position he would have occupied but for Defendants' breach.

10. TENTH — Affirm or Deny: At the conclusion of this sequence, every avenue of evasion has been foreclosed. The duty exists and cannot be disclaimed. The communications are evidence. The statements bind. The silence admits. The concealment infers. The doctrine is noticed. The cause of action is statutory. The damages measure is statutory. What remains is a binary choice: affirm the conduct, or deny it on the record.

Each mechanism activates the next. The sum of this evidentiary presentation is greater than its constituent parts.

## IX.  **CONCLUSION**

There is no genuine dispute as to any material fact. The undisputed facts — established by Defendants' own admissions, adoptive admissions, unrebutted presumptions, and documentary evidence — demonstrate that Defendants breached the implied covenant of good faith, fraudulently concealed material evidence, intentionally interfered with contractual relations, and aided and abetted that concealment.

In a final turn of events, ironically and hypocritically, Defendants reserved all rights in their own filings — the undisputed reason why this claim started. Rules for thee, but not for me.

It is a factual impossibility to respect Rule 1 of the Federal Rules of Civil Procedure — which demands the just determination of every action — while simultaneously saying nothing about the substance of the action for eight months. These two positions are mutually exclusive. One of them is a lie.

The probative value of these positions, whether acquired by silence or deflection, MUST be considered: they are supported by sufficient guarantees of trustworthiness under the totality of circumstances in which they were made, and they are more probative on the points for which they are offered than any other evidence Plaintiff can obtain through reasonable efforts — because Defendants have concealed all other evidence. FRE 807(a); see *United States v. Huddleston*, 485 U.S. 681 (1988) ("[I]ndividual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts."). The notice requirement of FRE 807(b) is satisfied: Defendants received three formal Notices identifying the substance of every position now offered against them and were given fair opportunity to meet each one. They chose not to.

Now, maybe possibly, potentially, hopefully, after the entire Wells Fargo roadmap has run its course, the DEFENDANTS will choose to speak.

## X.     **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

   A.   GRANT Summary Judgment in favor of Plaintiff on all counts — as the undisputed facts establish liability as a matter of law.

   B.   ENTER an adverse inference instruction — that all concealed evidence is unfavorable to Defendants.

   C.   DECLARE the lawfulness of Plaintiff's indorsement under UCC § 1-308 (A.R.S. § 47-1308) — confirming that the exercise of a statutory right cannot serve as the basis for account closure.

   D.   ORDER the equitable remedy mandated by A.R.S. § 47-1305(A) — that Plaintiff be put in as good a position as if full performance had occurred, requiring the account to be reopened with the "without prejudice" reservation honored.

**E.** AWARD compensatory damages — calculated pursuant to A.R.S. § 47-1305(A) based on the documented time and resources Plaintiff was forced to expend due to Defendants' breach.

**F.** AWARD punitive damages — in an amount to be determined by the Court upon its finding of scienter and bad faith, as the natural consequence of Defendants' choice to conceal rather than correct.

**G.** DECLARE whether Defendants are wards of the court or possess scienter — as their conduct cannot be explained by anything other than profound ignorance or deliberate malice.

**H.** GRANT such other and further relief as the Court deems just and proper.

Dated this 15th day of June, 2026

Respectfully,

ERIK ARTHUR OTTESON

Plaintiff, Pro Se

PO Box 4093
Cottonwood, AZ 86326
(928) 254-1037
erikotteson@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on 06/15/2026, I caused the foregoing MOTION FOR SUMMARY JUDGMENT to be served upon all Defendants via CM/ECF:

Nicole Goodwin
Adrianna Gorton
Greenberg Traurig, LLP
2375 E. Camelback Road
Suite 700
Phoenix, Arizona 85016

Counsel for Defendant JPMorgan Chase Bank, N.A., and Defendants in their individual capacities

Dated this 15th day of June, 2026

ERIK ARTHUR OTTESON

Plaintiff, Pro Se