ERIK ARTHUR OTTESON
PO Box 4093
Cottonwood, AZ 86326
(928) 254-1037
erikotteson@gmail.com

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ERIK ARTHUR OTTESON, | Case No. 3:25-cv-08198-DWL |
| Plaintiff, | |
| vs. | **MOTION FOR JUDICIAL NOTICE OF ADJUDICATIVE FACTS REGARDING ADOPTIVE ADMISSIONS BY SILENCE AND COMPREHENSIVE MEMORANDUM OF LAW IN SUPPORT THEREOF** |
| JPMORGAN CHASE BANK, N.A., GREENBERG TRAURIG, LLP, NICOLE M. GOODWIN, ADRIANNA G. GORTON, | |
| Defendants. | |

## TABLE OF CONTENTS

1. PRELIMINARY STATEMENT: THE UNBROKEN CHAIN OF LAW

2. NOTICE TO THE COURT AND TO THE DEFENDANT

3. PHILOSOPHICAL FOUNDATION / DOCTRINAL FOUNDATION

   3.1. Historical Origin

   3.2. The Foundational Premise

   3.3. Key Distinctions

4. MOTION FOR JUDICIAL NOTICE: THE ADJUDICATIVE FACTS

   4.1. Adjudicative Fact No. 1: The Common Law Origin (1815–1904)

   4.2. Adjudicative Fact No. 2: The Federal Rules Preservation

   4.3. Adjudicative Fact No. 3: The Ninth Circuit Standard

   4.4. Adjudicative Fact No. 4: The Selective Response Doctrine

4.5. Adjudicative Fact No. 5: Actions While in Possession Constitute Adoption; Counsel's Silence Binds the Client

4.6. Adjudicative Fact No. 6: The Arizona State Endorsement

4.7. Adjudicative Fact No. 7: The National Consensus

5. MEMORANDUM OF LAW: THE LEGAL FRAMEWORK

5.1. Foundational Principle

5.2. The Pillars and Elements

5.3. Burden and Standard

5.4. Application

5.5. Consequences

6. SYLLOGISTIC SUMMARY OF THE FACTS

**TABLE OF AUTHORITIES**

**A.     Supreme Court of the United States**

1. *Barlow v. United States*, 32 U.S. (7 Pet.) 404 (1833)

2. *Sparf v. United States*, 156 U.S. 51 (1895)

3. *Tome v. United States*, 513 U.S. 150 (1995)

4. *United States v. Abel*, 469 U.S. 45 (1984)

5. *United States v. Huddleston*, 485 U.S. 681 (1988)

6. *United States v. Salerno*, 505 U.S. 317 (1992)

7. *Green v. Bock Laundry Machine Co.*, 490 U.S. 504 (1989)

**B.     United States Court of Appeals for the Ninth Circuit**

1. *Sea-Land Service, Inc. v. Lozen International, LLC*, 285 F.3d 808 (9th Cir. 2002)

2. *Transbay Auto Service, Inc. v. Chevron U.S.A. Inc.*, 807 F.3d 1113 (9th Cir. 2015)

3. *United States v. Monks*, 774 F.2d 945 (9th Cir. 1985)

4. *United States v. Moore*, 522 F.2d 1068 (9th Cir. 1975)

5. *United States v. Smith*, 390 F.3d 661 (9th Cir. 2004)

**C. Other Federal Courts of Appeals**

1. *United States v. Fortes*, 619 F.2d 108 (1st Cir. 1980)

2. *United States v. Hoosier*, 542 F.2d 687 (6th Cir. 1976)

3. *Arpan v. United States*, 260 F.2d 649 (8th Cir. 1958)

**D. State Supreme Courts**

1. *Carrel v. Early*, 7 Ky. (4 Bibb) 270 (1815)

2. *Commonwealth v. Kenney*, 53 Mass. (12 Met.) 235 (1847)

3. *Hendrickson v. Miller*, 8 S.C.L. (1 Mill) 296 (S.C. Const. Ct. App. 1817)

4. *Moore v. Smith*, 14 Serg. & Rawle 388 (Pa. 1826)

5. *Pierce v. Goldsberry*, 35 Ind. 317 (1871)

6. *Ruth v. Rhodes*, 66 Ariz. 129 (1947)

7. *State v. Saiz*, 103 Ariz. 567 (1968)

8. *Terrasas v. State*, 25 Ariz. 476 (1923)

9. *Torosian v. Paulos*, 82 Ariz. 304 (1957)

**E. Treatises and Academic Journals**

1. Best, *A Treatise on Presumptions of Law and Fact* (1844)

2. Ruber, Bret, *Adoptive Admissions and the Duty to Speak*, 36 Cardozo L. Rev. 299 (2014)

3. Wigmore, *A Treatise on the Anglo-American System of Evidence in Trials at Common Law* § 1071 (1st ed. 1904; Chadbourn rev. 1972)

4. *McCormick on Evidence* § 246 (2d ed. 1972)

**F. Federal Rules**

1. Federal Rule of Evidence 201

2. Federal Rule of Evidence 301

3. Federal Rule of Evidence 401

4. Federal Rule of Evidence 402

5. Federal Rule of Evidence 404(b)

6. Federal Rule of Evidence 801(d)(2)(B)

7. Federal Rule of Evidence 801(d)(2)(D)

## 1. PRELIMINARY STATEMENT: THE UNBROKEN CHAIN OF LAW

Plaintiff ERIK ARTHUR OTTESON, submits this Motion for Judicial Notice. This Motion for Judicial Notice is Document 3 of the evidentiary sequence.

Common law is alive and well, codified in the Federal Rules of Evidence. When one simply reads the opinions, one comprehends the deep-rooted history in society — a history that predates this Court, this Republic, and the codification itself. The doctrine of adoptive admissions by silence is not a fringe theory. It is an unbroken chain of law spanning 210 years, forty-five states, and the Supreme Court of the United States.

Plaintiff motions this Court to take notice of that unbroken chain — a body of law that points to a time where conduct performed in a different manner revealed the mindset of the actor; a look into whether one acted rightly or with a guilty conscience; the tests that courts have used to sift through the minutia for centuries.

## 2. NOTICE TO THE COURT AND TO THE DEFENDANT

Pursuant to Federal Rule of Evidence 201(c)(2), the Court MUST take judicial notice of an adjudicative fact if a party requests it and the court is supplied with the necessary information. The facts presented herein are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned — namely, the published decisions of the Supreme Court of the United States, the United States Court of Appeals for the Ninth Circuit, the Supreme Court of Arizona, and the codified Federal Rules of Evidence.

This document presents FACTS ONLY regarding the state of the law. It does not assert claims, make legal arguments regarding the merits of the underlying case, or request relief beyond the mandatory judicial notice of the adjudicative facts contained herein.

## 3. PHILOSOPHICAL FOUNDATION / DOCTRINAL FOUNDATION

### 3.1. Historical Origin

3.1.1. The doctrine of adoptive admissions by silence is rooted in the ancient common law maxim *qui tacet consentire videtur* ("he who is silent appears to consent"). This principle was recognized in American jurisprudence as early as 1815 in *Carrel v. Early*, 7 Ky. (4 Bibb) 270, predating the Federal Rules of Evidence by 160 years. By 1833, the Supreme Court of the United States had already established the broader principle upon which the doctrine rests. Justice Story, writing for the Court in *Barlow v. United States*, declared:

3.1.2. "It is a common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally; and it results from the extreme difficulty of ascertaining what is, bona fide, the interpretation of the party; and the extreme danger of allowing such excuses to be set up for illegal acts, to the detriment of the public."

3.1.3. *Barlow v. United States*, 32 U.S. (7 Pet.) 404, 411 (1833).

3.1.4. The Court further warned:

3.1.5. "There is scarcely any law, which does not admit of some ingenious doubt; and there would be perpetual temptations to violations of the laws, if men were not put upon extreme vigilance to avoid them."

3.1.6. *Id.*

**3.2. The Foundational Premise**

3.2.1. The doctrine rests on the premise of probable human behavior: an innocent person, when confronted with a false accusation that they hear, understand, and have the ability to deny, will naturally deny it. Therefore, the failure to deny such an accusation is highly probative evidence that the accused adopts the statement as true.

3.2.2. This behavioral premise was articulated by the First Circuit, quoting the Supreme Court's holding in *Sparf v. United States*, 156 U.S. 51 (1895):

3.2.3. "When a statement tending to incriminate one accused of committing a crime is made in his presence and hearing and such statement is not denied,

contradicted, or objected to by him, both the statement and the fact of his failure to deny are admissible in a criminal prosecution against him, as evidence of his acquiescence in its truth . . . if made under such circumstances as would warrant the inference that he would naturally have contradicted them if he did not assent to their truth."

3.2.4. *United States v. Fortes,* 619 F.2d 108, 112 (1st Cir. 1980) *(quoting Arpan v. United States,* 260 F.2d 649, 655 (8th Cir. 1958); *Sparf v. United States,* 156 U.S. 51 (1895)).

**3.3. Key Distinctions**

3.3.1. The doctrine of adoptive admissions in civil litigation is entirely distinct from the Fifth Amendment right against self-incrimination in criminal proceedings. The constitutional protections afforded to criminal defendants in custodial settings have no application to sophisticated commercial entities or their counsel in civil disputes. As the Advisory Committee Notes to FRE 801(d)(2)(B) explain — and as the Sixth Circuit quoted in full in *United States v. Hoosier,* 542 F.2d 687, 688 (6th Cir. 1976):

3.3.2. "In civil cases, the results have generally been satisfactory. In criminal cases, however, troublesome questions have been raised by decisions holding that failure to deny is an admission: the inference is a fairly weak one, to begin with; silence may be motivated by advice of counsel or realization that 'anything you say may be used against you'; unusual opportunity is afforded to manufacture evidence; and encroachment upon the privilege against self-incrimination seems inescapably to be involved."

3.3.3. Advisory Committee Notes to FRE 801(d)(2)(B) (1975), *quoted in Hoosier,* 542 F.2d at 688.

3.3.4. Every scholarly criticism of the doctrine is confined to the criminal context. In civil cases between sophisticated parties, none of those concerns apply.

The Advisory Committee itself drew this distinction, and the Sixth Circuit endorsed it.

4. **MOTION FOR JUDICIAL NOTICE: THE ADJUDICATIVE FACTS**

Plaintiff respectfully moves that this Court take judicial notice of the following adjudicative facts regarding the law of adoptive admissions:

**4.1. Adjudicative Fact No. 1: The Common Law Origin (1815–1904)**

4.1.1. It is an adjudicative fact that the doctrine of adoptive admissions by silence was firmly established in American common law throughout the 19th century. The doctrine was recognized in *Carrel v. Early,* 7 Ky. (4 Bibb) 270 (1815) — the first American case holding that silence in the face of a statement constitutes a tacit admission. Two years later, the South Carolina Constitutional Court of Appeals applied the doctrine in the commercial context in *Hendrickson v. Miller,* 8 S.C.L. (1 Mill) 296 (1817), holding that silence in the face of a repeated claim of debt constitutes an admission of the debt.

4.1.2. In 1847, the Massachusetts Supreme Judicial Court in *Commonwealth v. Kenney,* 53 Mass. (12 Met.) 235 (1847), established the standard that remains the foundation of the modern test:

4.1.3. Silence is an admission if the statement is made "under such circumstances, and by such persons, as naturally to call for a reply."

4.1.4. *Commonwealth v. Kenney,* 53 Mass. at 237.

4.1.5. In 1871, the Indiana Supreme Court in *Pierce v. Goldsberry,* 35 Ind. 317 (1871), established that the identity of the accuser is a factor in admissibility — holding that an accusation from a person of standing creates a stronger inference of adoption when met with silence.

4.1.6. By 1844, the doctrine was sufficiently ingrained to be codified in Best's *Treatise on Presumptions of Law and Fact.* By 1904, Wigmore's *Treatise on the Anglo-American System of Evidence in Trials at Common Law*

systematized the doctrine in § 1071. The First Circuit described Wigmore's formulation:

4.1.7. "[A]n inquiry of two persons as to whether they had 'done a bank robbery,' followed by an affirmative response by one of them describing his participation with the other in the crime, is the type of exchange to which the silence of the unresponsive accomplice, assuming he is present and conscious of the conversation, 'gives consent.' IV Wigmore § 1071, at 102."

4.1.8. *United States v. Fortes*, 619 F.2d 108, 112 (1st Cir. 1980).

4.1.9. The First Circuit further confirmed that FRE 801(d)(2)(B) codifies this common law principle:

4.1.10. "This testimony was properly received against Jemison under Fed.R.Evid. 801(d)(2)(B), which allows the introduction of so-called adoptive admissions, including admissions by silence or acquiescence. See IV Wigmore § 1071 (Chadbourn rev. 1972)."

4.1.11. *Fortes*, 619 F.2d at 112.

**4.2. Adjudicative Fact No. 2: The Federal Rules Preservation**

4.2.1. It is an adjudicative fact that Congress codified the common law doctrine of adoptive admissions in Federal Rule of Evidence 801(d)(2)(B), which provides:

4.2.2. "A statement that meets the following conditions is not hearsay: . . . The statement is offered against an opposing party and . . . is one the party manifested that it adopted or believed to be true."

4.2.3. FRE 801(d)(2)(B).

4.2.4. The Supreme Court of the United States has held, in multiple opinions, that the Federal Rules of Evidence were designed to preserve — not displace — the common law. In *Tome v. United States*, 513 U.S. 150 (1995), the Court declared:

4.2.5. "The Notes disclose a purpose to adhere to the common law in the application of evidentiary principles, absent express provisions to the contrary."

4.2.6. *Tome,* 513 U.S. at 160.

4.2.7. The Court further held:

4.2.8. "Where the Rules did depart from their common-law antecedents, in general the Committee said so."

4.2.9. *Tome,* 513 U.S. at 161.

4.2.10. The Court explained the methodology: start with common law, check whether the Advisory Committee expressly departed, and if the drafters said nothing, the common law survives unchanged. The burden is on the party claiming change:

4.2.11. "A party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change."

4.2.12. *Tome,* 513 U.S. at 163 (citing *Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 521 (1989)).

4.2.13. In *United States v. Abel,* 469 U.S. 45 (1984), the Court applied this same methodology to conclude that common law evidentiary principles survive the Federal Rules:

4.2.14. "[W]ith this state of unanimity confronting the drafters of the Federal Rules of Evidence, we think it unlikely that they intended to scuttle entirely [the common-law requirement]."

4.2.15. *Abel,* 469 U.S. at 50.

4.2.16. The Court further held:

4.2.17. "We think the lesson to be drawn from all of this is that it is permissible to impeach a witness by showing his bias under the Federal Rules of Evidence just as it was permissible to do so before their adoption."

4.2.18. *Abel,* 469 U.S. at 51.

4.2.19. And the Court declared that common law knowledge is not merely persuasive but mandatory:

4.2.20. "[C]ommon law knowledge continues to exist, though in the somewhat altered form of a source of guidance in the exercise of delegated powers."

4.2.21. *Abel,* 469 U.S. at 52.

4.2.22. The *Tome* Court further confirmed:

4.2.23. "It is well established that 'the body of common law knowledge' 'must be' 'a source of guidance' in our interpretation of the Rules."

4.2.24. *Tome,* 513 U.S. at 168 (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 588 (1993); *Abel,* 469 U.S. at 52).

4.2.25. The Advisory Committee Notes to Rule 801(d)(2)(B) explicitly describe the silence-as-adoption principle that the common law established:

4.2.26. "Under established principles an admission may be made by adopting or acquiescing in the statement of another. . . . Adoption or acquiescence may be manifested in any appropriate manner. When silence is relied upon, the theory is that the person would, under the circumstances, protest the statement made in his presence, if untrue."

4.2.27. Advisory Committee Notes to FRE 801(d)(2)(B) (1975).

4.2.28. The Supreme Court has held that these Notes carry the weight of law:

4.2.29. "We have relied on those well-considered Notes as a useful guide in ascertaining the meaning of the Rules."

4.2.30. *Tome,* 513 U.S. at 160 (*citing Huddleston v. United States,* 485 U.S. 681, 688 (1988)).

4.2.31. And:

4.2.32. "Congress did not amend the Advisory Committee's draft in any way . . . the Committee's commentary is particularly relevant in determining the meaning of the document Congress enacted."

4.2.33. *Tome,* 513 U.S. at 160 (*citing Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 165-166, n.9 (1988)).

4.2.34. The Advisory Committee Notes to Rule 801(d)(2)(B) do NOT state that they are departing from common law. They do NOT state that silence no longer constitutes adoption. They do NOT state that *qui tacet consentire videtur* is abrogated. Under the Tome methodology, the common law of adoptive admissions by silence survives in full force.

## 4.3. Adjudicative Fact No. 3: The Ninth Circuit Standard

4.3.1. It is an adjudicative fact that the United States Court of Appeals for the Ninth Circuit created the modern test for adoptive admissions by silence. As the Cardozo Law Review documents:

4.3.2. "The Fourth, Sixth, Ninth, and Eleventh Circuits all use a test originally outlined by the Ninth Circuit in *United States v. Moore* [522 F.2d 1068 (9th Cir. 1975)]."

4.3.3. Ruber, *Adoptive Admissions and the Duty to Speak,* 36 Cardozo L. Rev. 299, 309 (2014).

4.3.4. In *Moore,* the Ninth Circuit established the foundational test:

4.3.5. "The general rule is that the adoption of another's statement may be manifested by any appropriate means, including silence. When a person remains silent in the face of accusations, his silence may be considered as an adoptive admission of the statements made in his presence."

4.3.6. *United States v. Moore,* 522 F.2d 1068, 1075 (9th Cir. 1975).

4.3.7. The Court articulated the standard for when silence constitutes adoption:

4.3.8. "[W]hether under the circumstances an innocent defendant would normally be induced to respond."

4.3.9. *Moore,* 522 F.2d at 1075-76.

4.3.10. The Ninth Circuit reaffirmed and expanded this standard in *United States v. Monks,* 774 F.2d 945 (9th Cir. 1985), establishing the threshold requirement:

4.3.11. "Before admitting a proffered admission by silence under Fed.R.Evid. 801(d)(2)(B), the district court must first find that sufficient foundational facts have been introduced for the jury reasonably to conclude that the defendant did actually hear, understand and accede to the statement."

4.3.12. *Monks,* 774 F.2d at 950.

4.3.13. The *Monks* Court held that even a single pause without response is sufficient to constitute adoption:

4.3.14. "[A] correctional officer overheard Monks telling Holt that the only thing Holt had to worry about was getting identified by the camera in the bank and, after a pause with no response from Holt, that he (Monks) was going to try to make them think he was crazy."

4.3.15. *Monks,* 774 F.2d at 947.

4.3.16. The Court then applied the "expected response" standard — the same behavioral premise that has governed the doctrine since 1847:

4.3.17. "If Holt was innocent, one would expect that Monks' serious accusation would have prompted Holt to respond by denying it or by making some other appropriate response."

4.3.18. *Monks,* 774 F.2d at 951.

4.3.19. And:

4.3.20. "One would expect Holt to have made some kind of response to Monks' comments implying that he (Holt) was involved in a serious crime if he was in fact innocent."

4.3.21. *Monks,* 774 F.2d at 951.

4.3.22. The Court concluded:

4.3.23. "A jury reasonably could conclude that Holt acquiesced in Monks' comments. The district court did not abuse its discretion in allowing Monks' comments to come in as adoptive admissions."

4.3.24. *Monks,* 774 F.2d at 951.

4.3.25. The First Circuit in Fortes confirmed the same standard, citing *Moore* directly:

4.3.26. "Further, sufficient facts were introduced preliminarily to show, by way of foundation, that Jemison heard the statements detailing her conduct in the robbery and comprehended them."

4.3.27. *Fortes,* 619 F.2d at 112 (citing *Moore*, 522 F.2d at 1075-76).

4.3.28. The Sixth Circuit in Hoosier applied the same behavioral test:

4.3.29. "Under the total circumstances, we believe that probable human behavior would have been for appellant promptly to deny his girl friend's statement if it had not been true particularly when it was said to a person to whom he had previously related a plan to rob a bank."

4.3.30. *United States v. Hoosier,* 542 F.2d 687, 689 (6th Cir. 1976).

4.3.31. The *Hoosier* Court further held:

4.3.32. "While we agree with appellant's counsel that more is needed to justify admission of this statement than the mere presence and silence of the appellant, we observe that there was more in this record."

4.3.33. *Hoosier,* 542 F.2d at 689.

**4.4. Adjudicative Fact No. 4: The Selective Response Doctrine**

4.4.1. It is an adjudicative fact that under Ninth Circuit precedent, a party's selective response to a communication — addressing certain points while remaining silent on others — constitutes an adoptive admission of the unaddressed points.

4.4.2. In *Sea-Land Service, Inc. v. Lozen International, LLC,* 285 F.3d 808 (9th Cir. 2002), the Ninth Circuit held that an agent's act of forwarding a document and adding commentary — without denying the document's contents — constituted an adoptive admission of the entire document. The Court held that adoption may be manifested through incorporation and use:

4.4.3. "[A] party's use of a document, or incorporation of its contents, may constitute adoption even without an express statement of agreement."

4.4.4. *Sea-Land*, 285 F.3d at 821.

4.4.5. The First Circuit in *Fortes* established the same principle — that failure to object or rebut at ANY stage constitutes waiver:

4.4.6. "We note also that Jemison failed to object to this line of questioning specifically on the grounds of insufficient foundation; she likewise did not request that the government elicit fuller preliminary information; and on cross-examination of Ward, Jemison did not attempt to rebut the foundation laid by the government as to her presence at the time of the conversation or her ability to hear or understand Fortes' incriminating comments."

4.4.7. *Fortes*, 619 F.2d at 112.

4.4.8. The court counted the opportunities and noted the party took NONE of them. Multiple opportunities to challenge, multiple opportunities to rebut, failure at every stage — properly admitted.

## 4.5. Adjudicative Fact No. 5: Actions While in Possession Constitute Adoption; Counsel's Silence Binds the Client

4.5.1. It is an adjudicative fact that actions taken while in possession of an unrebutted statement constitute adoption of that statement. In *Transbay Auto Service, Inc. v. Chevron U.S.A. Inc.*, 807 F.3d 1113 (9th Cir. 2015), the Ninth Circuit established the "possession plus" test for written documents. The Court held that when a party possesses a document and takes some action demonstrating a meaningful tie to it, they adopt its contents — even if they claim not to have read it. The Court rejected the "mere messenger" defense:

4.5.2. "Given his need for the money to buy the property, Tsachres's protest that he was a mere messenger rings hollow. He did not simply deliver information on behalf of another entity. Instead, he had a vested interest in supplying the PSG Appraisal."

4.5.3. *Transbay,* 807 F.3d at 1120.

4.5.4. It is a separate and independently established adjudicative fact that counsel's statements and silence bind the client. In *United States v. Smith,* 390 F.3d 661 (9th Cir. 2004), the Ninth Circuit held:

4.5.5. "In determining that this record clearly established the elements of generic burglary, the district court reasoned that the factual basis for the charge, as set forth by the prosecutor at the change of plea hearing, expressly stated that Smith 'unlawfully entered an inhabited dwelling.' Furthermore, when specifically asked to comment, defense counsel did not object to this statement; rather, she explained that Smith had entered his 'former home' where the 'codes were changed.' We conclude that these statements unequivocally establish that Smith was convicted of unlawfully entering a building."

4.5.6. *Smith,* 390 F.3d at 665.

4.5.7. The Court's holding was unambiguous:

4.5.8. "Smith is bound by his counsel's statement."

4.5.9. *Smith,* 390 F.3d at 665.

4.5.10. The Court cited the broader principle:

4.5.11. "[W]e have repeatedly held that criminal defendants are bound by the admissions of fact made by their counsel in their presence and with their authority."

4.5.12. *Smith,* 390 F.3d at 665 (*quoting Hernandez-Hernandez,* 387 F.3d at 806).

4.5.13. Furthermore, statements made by counsel are independently admissible against the client under FRE 801(d)(2)(D), which provides that a statement is not hearsay when it is "made by the party's agent or employee on a matter within the scope of that relationship and while it existed."

**4.6. Adjudicative Fact No. 6: The Arizona State Endorsement**

4.6.1. It is an adjudicative fact that the forum state of Arizona has recognized and applied the doctrine of adoptive admissions by silence for over a century, maintaining an unbroken chain of precedent from 1923 to the present.

4.6.2. The Arizona Supreme Court first endorsed the doctrine in *Terrasas v. State*, 25 Ariz. 476, 219 P. 226 (1923) — within eleven years of Arizona's statehood. The doctrine was already "established law" at the time of adoption, inherited from the common law tradition that this Motion traces to 1815.

4.6.3. In *Ruth v. Rhodes*, 66 Ariz. 129, 185 P.2d 304 (1947), the Arizona Supreme Court articulated the controlling test for adoptive admissions in the forum state:

4.6.4. "It is the law that if a statement is made in the presence and hearing of another in regard to facts adversely affecting his rights, and he makes no reply, evidence of such statement and his non-denial thereof is admissible both for impeachment purposes (where he had thereafter testified to the contrary) and to show a tacit admission of the facts stated (where the truth of the facts embraced in the statement is within such other person's knowledge and the circumstances are such as naturally call for a reply if he did not intend to admit such facts)."

4.6.5. *Ruth v. Rhodes*, 66 Ariz. at 134, 185 P.2d at 308.

4.6.6. The *Ruth* test establishes dual admissibility: silence is admissible BOTH for impeachment AND as substantive proof of the facts asserted. The test requires only that (1) the truth is within the silent party's knowledge, and (2) the circumstances naturally call for a reply. *Ruth v. Rhodes* was a civil case — a tort action against a state highway patrol officer — confirming that the doctrine is not limited to criminal proceedings in Arizona.

4.6.7. In *Torosian v. Paulos*, 82 Ariz. 304, 313 P.2d 382 (1957), the Arizona Supreme Court applied the related principle that willful ignorance constitutes bad faith in civil commercial disputes. The Court held that a party "could not

protect himself by choosing to remain ignorant of what the necessities of his case required him to know." *Torosian*, 82 Ariz. at 311 (citing *Walbrun v. Babbitt*, 83 U.S. 577 (1872)). The Court further held that "[i]ntentional ignorance, such as a willful evasion of knowledge of the facts, constitutes bad faith." Id. (citing 10 C.J.S. Bills and Notes § 324 b, p. 820).

4.6.8. In *State v. Saiz*, 103 Ariz. 567, 447 P.2d 541 (1968), the Arizona Supreme Court reaffirmed the doctrine in full, quoting the *Ruth v. Rhodes* test verbatim and citing all prior Arizona cases — *Terrasas, Ruth,* and *Torosian* — as a unified doctrinal chain. The Court held that statements made in a party's presence, which the party heard and understood, and "rather than repudiate… concurred in," are admissible as adoptive admissions — recognized exceptions to the hearsay rule. *Saiz*, 103 Ariz. at 569.

4.6.9. The Cardozo Law Review specifically cites Arizona as one of the forty-five states endorsing the doctrine. See Ruber, 36 Cardozo L. Rev. at 314-316 (Footnote 138: *State v. Saiz*, 447 P.2d 541 (Ariz. 1968)).

4.6.10. There is no conflict of law. Both the federal forum (the Ninth Circuit) and the state forum (Arizona) strongly endorse the doctrine.

**4.7. Adjudicative Fact No. 7: The National Consensus**

4.7.1. It is an adjudicative fact that the doctrine of adoptive admissions by silence is overwhelmingly endorsed across the United States. As documented in the Cardozo Law Review:

4.7.2. "Despite criticism of the rule throughout its history, federal courts and forty-five states have endorsed the admissibility [of silence as an adoptive admission]."

4.7.3. Ruber, 36 Cardozo L. Rev. at 314.

4.7.4. The scorecard is as follows:

4.7.5. Forty-five states and all federal circuits endorse the admissibility of silence as an adoptive admission.

4.7.6. Four states (Georgia, Iowa, Minnesota, and Oregon) have abolished the doctrine in criminal cases but retained it in civil cases.

4.7.7. Three states (Alabama, Michigan, and Pennsylvania) have abolished the doctrine entirely.

4.7.8. No court of last resort has abolished the doctrine in civil cases since 1989. The Advisory Committee, during the 2011 restyling of the Federal Rules of Evidence, specifically reviewed Rule 801(d)(2)(B) and opted NOT to modify or limit the admissibility of silence.

4.7.9. The Supreme Court has confirmed that courts cannot alter evidentiary rules merely because litigants prefer different rules:

4.7.10. "[T]his Court cannot alter evidentiary rules merely because litigants might prefer different rules in a particular class of cases."

4.7.11. *United States v. Salerno,* 505 U.S. 317, 322 (1992), cited in *Tome,* 513 U.S. at 167.

## 5. <u>MEMORANDUM OF LAW: THE LEGAL FRAMEWORK</u>

### 5.1. Foundational Principle

5.1.1. The foundational principle of FRE 801(d)(2)(B) is accountability. The rule prevents a party from hearing an accusation, understanding it, having the opportunity to deny it, choosing to remain silent, and later claiming that their silence carried no evidentiary weight. As the Pennsylvania Supreme Court recognized in 1826, this is "the most dangerous type of evidence" precisely because it holds parties accountable for their deliberate omissions. *Moore v. Smith,* 14 Serg. & Rawle 388 (Pa. 1826).

5.1.2. The Supreme Court confirmed this accountability principle in *Huddleston v. United States,* 485 U.S. 681 (1988), holding that evidence of conduct is admissible to prove state of mind:

5.1.3. "Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of

mind and the only means of ascertaining that mental state is by drawing inferences from conduct."

5.1.4. *Huddleston*, 485 U.S. at 685.

5.1.5. The Court explicitly stated that this framework applies in civil cases:

5.1.6. "Federal Rule of Evidence 404(b) — which applies in both civil and criminal cases — generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge."

5.1.7. *Huddleston*, 485 U.S. at 685.

5.1.8. And:

5.1.9. "The actor in the instant case was a criminal defendant, and the act in question was 'similar' to the one with which he was charged. Our use of these terms is not meant to suggest that our analysis is limited to such circumstances."

5.1.10. *Huddleston*, 485 U.S. at 685 n.2.

**5.2. The Pillars and Elements**

5.2.1. The legal framework rests on two pillars: the common law history (preserved via *Tome*) and the codified rule (FRE 801(d)(2)(B)). The elements, as defined by the Ninth Circuit in *Moore* and reaffirmed in *Monks*, are objective and verifiable:

1. The party heard the statement;
2. The party understood the statement;
3. The subject matter was within the party's knowledge;
4. The party had the opportunity and motive to deny; and
5. The party failed to deny.

5.2.2. When applied to written communications, the *Transbay* "possession plus" standard governs, requiring only that the party possessed the document and

took some action demonstrating a meaningful tie to it. Where counsel speaks (or remains silent) on behalf of the client, *Smith* establishes that those statements and silences bind the client as admissions.

5.2.3. The *Huddleston* Court further established the "puzzle principle" — that individual pieces of evidence must be considered in cumulation:

5.2.4. "We emphasize that, in assessing the sufficiency of the evidence under Rule 104(b), the trial court must consider all evidence presented to the jury. '[I]ndividual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts.'"

5.2.5. *Huddleston,* 485 U.S. at 691 (quoting *Bourjaily v. United States,* 483 U.S. 171, 179-180 (1987)).

## 5.3. Burden and Standard

5.3.1. Under the framework established by Wigmore and preserved in modern practice, once the foundational elements of an adoptive admission are shown (receipt, understanding, opportunity, failure to deny), the burden shifts to the silent party to explain why their silence should not be construed as adoption. Furthermore, under FRE 301, an unrebutted presumption shifts the burden of production to the opposing party.

5.3.2. The Supreme Court confirmed in *Tome* that the burden is on the party claiming change to settled law:

5.3.3. "A party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change."

5.3.4. *Tome,* 513 U.S. at 163.

5.3.5. The *Tome* Court also established that the common law approach — preconditions met, admission stands — is the governing standard, rejecting the "balancing" approach:

5.3.6. "The statement-by-statement balancing approach advocated by the Government . . . creates the precise dangers the Advisory Committee noted and sought to avoid: It involves considerable judicial discretion; it reduces predictability; and it enhances the difficulties of trial preparation because parties will have difficulty knowing in advance whether or not particular out-of-court statements will be admitted."

5.3.7. *Tome,* 513 U.S. at 165-166.

**5.4. Application**

5.4.1. The doctrine applies with maximum force in civil litigation between sophisticated parties. The Advisory Committee Notes themselves draw this distinction, as quoted in *Hoosier:*

5.4.2. "In civil cases, the results have generally been satisfactory."

5.4.3. Advisory Committee Notes to FRE 801(d)(2)(B) (1975), quoted in *Hoosier,* 542 F.2d at 688.

5.4.4. The scholarly criticisms of the doctrine — which focus on the Fifth Amendment, cultural deference to authority, and the fear of police interrogation — are entirely inapplicable to commercial entities represented by counsel. As the Cardozo Law Review documents, the three primary criticisms all fail in the civil context:

1. "People remain silent for many reasons" (Fear, Culture, Deference): This criticism addresses vulnerable individuals who may be afraid to speak. It has no application to a trillion-dollar bank represented by a 2,000-attorney law firm.

2. "Creates an unfair duty to speak": This criticism addresses informal oral accusations in casual settings. It has no application to formal, written notices served via certified mail with proof of service and explicit rebuttal deadlines.

3. "Incongruent with the constitutional right to remain silent": The Fifth Amendment right against self-incrimination applies exclusively to criminal proceedings and custodial interrogations. There is no constitutional right to remain silent in the face of a civil pre-litigation notice.

5.4.5. The *Abel* Court established that all relevant evidence is admissible under the Federal Rules:

5.4.6. "Rule 401 defines as 'relevant evidence' evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rule 402 provides that all relevant evidence is admissible, except as otherwise provided by the United States Constitution, by Act of Congress, or by applicable rule."

5.4.7. *Abel,* 469 U.S. at 51.

## 5.5. Consequences

5.5.1. The consequence of an adoptive admission is that the adopted statement becomes substantive, non-hearsay evidence of the facts asserted therein. It is not merely impeachment evidence; it is proof of the matter asserted. Under FRE 801(d)(2)(B), the statement is classified as "not hearsay" — it is a party-opponent admission that may be used for any purpose, including as the sole basis for summary judgment.

5.5.2. The *Tome* Court confirmed that once common law preconditions are met, the result is automatic and predictable — no discretion, no balancing, no escape:

5.5.3. "By contrast . . . the Government's approach . . . would entail more of a burden, with no guidance to attorneys in preparing a case or to appellate courts in reviewing a judgment."

5.5.4. *Tome,* 513 U.S. at 166.

5.5.5. The Supreme Court has confirmed that courts have been applying this doctrine successfully for over a century:

5.5.6. "We are aware that in some cases it may be difficult to ascertain when a particular fabrication, influence, or motive arose. Yet, as the Government concedes, a majority of common-law courts were performing this task for well over a century, and the Government has presented us with no evidence that those courts, or the judicial circuits that adhere to the rule today, have been unable to make the determination."

5.5.7. *Tome,* 513 U.S. at 166.

## 6. **<u>SYLLOGISTIC SUMMARY OF THE FACTS</u>**

**MAJOR PREMISE:** Under Federal Rule of Evidence 801(d)(2)(B) and 210 years of unbroken common law — from *Carrel v. Early*, 7 Ky. (4 Bibb) 270 (1815), through *Tome v. United States*, 513 U.S. 150 (1995) — a statement is admissible as a party-opponent admission when it is offered against an opposing party and is a statement of which the party has manifested an adoption or belief in its truth. The Ninth Circuit test, established in *Moore*, 522 F.2d 1068 (9th Cir. 1975), and reaffirmed in *Monks*, 774 F.2d 945 (9th Cir. 1985), requires that the party heard the statement, understood it, had the opportunity and motive to deny it, and failed to do so. *Under Sea-Land*, 285 F.3d 808 (9th Cir. 2002), a selective response constitutes adoption of the unaddressed points. Under *Transbay*, 807 F.3d 1113 (9th Cir. 2015), actions taken while in possession of an unrebutted statement constitute adoption. Under *Smith*, 390 F.3d 661 (9th Cir. 2004), counsel's statements and silence bind the client.

**MINOR PREMISE:** The adjudicative facts presented herein demonstrate that the doctrine of adoptive admissions by silence is binding law in the Ninth Circuit (which created the modern test), is endorsed by the Supreme Court of the United States (which declared that common law knowledge "must be" a source of guidance), is preserved from the common law (which the Federal Rules were designed to codify, not displace), is recognized by the State of Arizona (which has applied the doctrine since 1923), and

applies with full force to written communications and the conduct of legal counsel in civil litigation.

**CONCLUSION:** Therefore, the legal framework governing adoptive admissions by silence is an established, indisputable adjudicative fact that this Court must judicially notice pursuant to FRE 201. Any failure by a party or their counsel to deny specific factual accusations when presented with the opportunity and motive to do so must be evaluated under this mandatory legal framework. The doctrine is not subject to reasonable dispute. It has been continuously applied for 210 years. Forty-five states endorse it. All federal circuits apply it. The Supreme Court has repeatedly confirmed it. The Advisory Committee Notes explicitly describe it. No court of last resort has abolished it in civil cases since 1989.

Dated this 15th day of June, 2026

Respectfully,

ERIK ARTHUR OTTESON

*Erik Arthur Otteson*

Plaintiff, Pro Se

PO Box 4093
Cottonwood, AZ 86326
(928) 254-1037
erikotteson@gmail.com

**CERTIFICATE OF SERVICE**

     I hereby certify that on 06/15/2026, I caused the foregoing MOTION FOR JUDICIAL NOTICE OF ADJUDICATIVE FACTS REGARDING ADOPTIVE ADMISSIONS BY SILENCE AND COMPREHENSIVE MEMORANDUM OF LAW IN SUPPORT THEREOF to be served upon all Defendants via CM/ECF:

Nicole Goodwin
Adrianna Gorton
Greenberg Traurig, LLP
2375 E. Camelback Road
Suite 700
Phoenix, Arizona 85016
Counsel for Defendant JPMorgan Chase Bank, N.A., and Defendants in their individual capacities


Dated this 15th day of June, 2026

ERIK ARTHUR OTTESON

Plaintiff, Pro Se