ERIK ARTHUR OTTESON
PO Box 4093
Cottonwood, AZ 86326
(928) 254-1037
erikotteson@gmail.com

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ERIK ARTHUR OTTESON,<br><br>Plaintiff,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A.,<br>GREENBERG TRAURIG, LLP,<br>NICOLE M. GOODWIN,<br>ADRIANNA G. GORTON,<br><br>Defendants. | Case No. 3:25-cv-08198-DWL<br><br><br>**MOTION FOR SANCTIONS** |

## I.    INTRODUCTION

Plaintiff ERIK ARTHUR OTTESON respectfully moves this Court for sanctions against Defendants Adrianna G. Gorton and Nicole M. Goodwin (formerly acting solely as counsel of record for JPMorgan Chase Bank, N.A.), pursuant to 28 U.S.C. § 1927 and this Court's inherent authority.

Defendants Goodwin and Gorton know the law, subvert it, and break their oaths in the process. One can only presume that conduct like this shows a complete disregard for the law, and the progenitor of common law, the Torah. These Biblical principles are without a doubt the foundation of our society, common law, and our codified Federal Rules of Civil Procedure and Federal Rules of Evidence. Yahuah perfected the law in His perfect word, and thus, we can see laws, statutes, warnings, procedures, and convictions about this same subversive conduct laid out thousands of years ago. As proven in the Motion for Judicial Notice on Adoptive Admissions, continuity from our legal roots is

alive and well — NOTHING HAS CHANGED SINCE YAHUAH CREATED THE PERFECT WORD.

Counsel has engaged in a pattern of conduct that has unreasonably and vexatiously multiplied the proceedings in this case. This conduct is not merely a violation of modern procedural rules; it is a violation of the ancient, foundational principles upon which those rules were built. The parallel is undeniable:

**A.** **The Law of Witnesses and False Testimony**

1. The Torah (Deuteronomy 19:15-19): "At the mouth of two witnesses, or at the mouth of three witnesses, shall the matter be established. If a false witness rise up against any man to testify against him that which is wrong... Then shall ye do unto him, as he had thought to have done unto his brother."

2. The FRE / The Conduct: Plaintiff established the matter through three witnesses (the three Notices of Presumptions). Counsel rose up to testify falsely to this Court, characterizing codified law as "fringe theory" and threatening sanctions. The remedy is measure for measure: the sanctions they threatened must be applied to them.

**B.** **The Prohibition of False Weights**

1. The Torah (Proverbs 20:23): "Divers weights are an abomination unto Yahuah; and a false balance is not good."

2. The FRE / The Conduct: Counsel applied one standard to Plaintiff (arguing his invocation of UCC § 1-308 was a "fringe theory" justifying account closure) and a different standard to themselves (invoking UCC § 1-308 to reserve their own rights in the very same correspondence). This is a false balance.

**C.** **The Prohibition of Broken Oaths**

1. The Torah (Numbers 30:2): "If a man vow a vow unto YAHUAH, or swear an oath to bind his soul with a bond, he shall not break his word, he shall do according to all that proceedeth out of his mouth."

2. "Under Torah law, one who swears an oath is bound absolutely — 'he shall not break his word.' Counsel broke theirs repeatedly, deliberately, and without consequence.

**D.    The Final Judgment**

1. The Torah (Daniel 5:27): "TEKEL: Thou art weighed in the balances, and art found wanting."

2. The FRE / The Conduct: Counsel's conduct has been weighed against the Federal Rules of Evidence, the common law, and the ancient foundations of jurisprudence. They are found wanting.

## II.    THE SCIENTER FRAMEWORK: TOME V. UNITED STATES AND THE MOTIVE TO LIE

The United States Supreme Court in *Tome v. United States*, 513 U.S. 150 (1995), established a foundational principle of evidentiary logic regarding the "motive to lie." While *Tome* specifically addressed the admissibility of prior consistent statements under FRE 801(d)(1)(B), its underlying logic governs the assessment of scienter and bad faith in this Court. The Supreme Court held that statements are inherently suspect—and cannot be used to rehabilitate a witness—if they were made after a motive to fabricate arose. The "pre-motive requirement" is absolute.

Applied to the conduct of Defendants Gorton and Goodwin, the *Tome* framework is devastating. Their motive to fabricate, mislead, and obstruct arose the moment they were retained to defend JPMorgan Chase Bank, N.A. against Plaintiff's claims. From that point forward, every statement they made to Plaintiff and to this Court was colored by that motive.

The "sovereign citizen" characterization (Offense 2) was not a genuine legal assessment; it was a litigation weapon deployed after the motive arose. The sham certificate of consultation (Offense 4) was not an oversight; it was a calculated act after the motive arose. The broken promise to respond (Offense 5) was not negligence; it was strategy after the motive arose. Under the logic of *Tome*, and the importance of said logic

that was stressed by the court, Defendants cannot rehabilitate their conduct because their motive to subvert the law pre-dates every filing they have made in this case. Their scienter is established by the timeline itself.

III. **THE NEXUS BETWEEN SANCTIONABLE CONDUCT AND SUBSTANTIVE LIABILITY**

The conduct documented in this Motion is not merely procedural misbehavior; it is the substantive basis for Plaintiff's claims against Defendants Gorton and Goodwin in the Verified First Amended Complaint (FAC). The two documents tell the same story:

1. The FAC alleges that Defendants engaged in bad faith obstruction, spoliation of the good faith obligation, and intentional misrepresentation to deny Plaintiff access to his property and the courts.

2. This Motion documents the specific, sanctionable acts that constitute that obstruction and misrepresentation.

When Defendants filed their Motion to Dismiss (Doc. 22), they were not merely acting as zealous advocates for a client; they were actively participating in the ongoing deprivation of Plaintiff's rights. Their sanctionable conduct IS the cause of action. Therefore, the sanctions requested herein are not merely punitive—they are compensatory for the direct harm caused by Defendants' actions in their dual capacity as counsel and tortfeasors.

IV. **SANCTIONABLE OFFENSES WITH PAIRED RULE VIOLATIONS**

A. **Misrepresentation of Law — UCC § 1-308 Scope**

1. In Doc. 22 at page 6:21-24, counsel states: "However, A.R.S. § 47-1308 applies to transactions in goods, not banking relationships. See A.R.S. § 47-2102." This is a material misstatement of law. A.R.S. § 47-1308 is codified within Article 1 of the UCC (General Provisions), which by its express terms applies to all transactions governed by the Uniform Commercial Code — not merely sales of goods under Article 2. Counsel's citation to A.R.S. § 47-2102 (Article 2 scope) is a

deliberate conflation designed to mislead the Court into believing Article 1 has the same limited scope as Article 2.

**B. Rules Violated in relation to Misrepresentation of Law — UCC § 1-308 Scope:**

1. FRCP Rule 11(b)(2): Counsel's legal contention that UCC § 1-308 applies only to "transactions in goods" is not warranted by existing law and cannot be supported by a nonfrivolous argument for modification.

2. Ariz. R. Prof. Conduct ER 3.3(a)(1): A lawyer shall not knowingly make a false statement of fact or law to a tribunal.

3. Ariz. R. Prof. Conduct ER 3.1: A lawyer shall not bring or defend a proceeding unless there is a basis in law and fact for doing so that is not frivolous.

**C. Misrepresentation of Fact — "Sovereign Citizen" Characterization**

1. In Doc. 22, Footnote 1 (page 6), counsel states: "This section of the UCC (and the UCC in general) is often cited and used argument deployed under sovereign citizen theories." Counsel then cites cases involving pro se litigants who invoked UCC § 1-308 in contexts wholly dissimilar to Plaintiff's (e.g., tax protestors, frivolous filings). Plaintiff invoked UCC § 1-308 in the precise context it was designed for — reserving rights when signing a commercial document (a Certification of Trust for a bank account). Counsel's characterization is a deliberate ad hominem attack designed to prejudice the Court against Plaintiff rather than address the merits.

**D. Rules Violated in relation to Misrepresentation of Fact — "Sovereign Citizen" Characterization:**

1. FRCP Rule 11(b)(1): The "sovereign citizen" characterization serves no legitimate legal purpose; it is presented to harass, prejudice, and inflame.

2. FRCP Rule 11(b)(3): There is no evidentiary support for the contention that Plaintiff is a "sovereign citizen" or that his claim arises from sovereign citizen ideology.

3. Ariz. R. Prof. Conduct ER 3.4(e): A lawyer shall not allude to any matter that the lawyer does not reasonably believe is relevant or supported by admissible evidence.

4. Ariz. R. Prof. Conduct ER 8.4(d): Conduct prejudicial to the administration of justice.

**E.    Hypocrisy as Evidence of Bad Faith — Chase's Own Use of the UCC**

1. While counsel labels UCC § 1-308 as "fringe theory" associated with "sovereign citizen" ideology, JPMorgan Chase Bank itself relied upon UCC Article 8 and UCC Article 9 in its clearance agreements with Lehman Brothers Holdings Inc. to seize and retain approximately $8.6 billion in collateral. The court validated Chase's UCC-based claims, holding that JPMC 'acted properly under the express language in the clearance agreements and Article 9 of the Uniform Commercial Code.' *Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A.*, 541 B.R. 551 (S.D.N.Y. 2015).

2. Furthermore, in Gorton's own email to Plaintiff (EXHIBIT U), she wrote: "Chase expressly reserves all rights" — the functional equivalent of UCC § 1-308's "without prejudice" reservation. This demonstrates that counsel's "fringe theory" characterization is knowingly false.

**F.    Rules Violated in relation to Hypocrisy as Evidence of Bad Faith — Chase's Own Use of the UCC:**

1. FRCP Rule 11(b)(2): Counsel cannot simultaneously rely on the UCC to retain $8.6 billion in collateral while calling it 'fringe theory' in this case.

2. FRCP Rule 11(b)(3): The assertion that UCC theories are "commonly rejected" is contradicted by Chase's own successful invocation of the UCC.

3. Ariz. R. Prof. Conduct ER 3.3(a)(1): Knowingly making a false statement of law by characterizing valid commercial law as "fringe".

4. 28 U.S.C. § 1927: Forcing the Court to waste resources adjudicating whether established commercial law is "fringe".

**G.     Sham Certificate of Good Faith Consultation (Doc. 23)**

1. On November 17, 2025, counsel filed a Certificate of Attempted Good Faith Consultation (Doc. 23) certifying that they "attempted to confer and engage in a good faith consultation with Plaintiff ERIK ARTHUR OTTESON via email multiple times and never received a response." However, the evidence demonstrates this was a sham:

2. Counsel sent all emails to vkngfleettrust@gmail.com (an address associated with the trust entity, not the individual Plaintiff) — NOT Plaintiff's email address listed on the Complaint (erikotteson@gmail.com).

3. Counsel had Plaintiff's phone number from the September 24, 2025 call (proven by the recorded call in EXHIBIT O) but chose not to call.

4. Counsel allowed only five days between the first email (Nov. 12) and filing the MTD (Nov. 17).

5. Counsel promised during the September 24 call to "email everything" and "overnight" materials, establishing she knew how to reach Plaintiff.

**H.     Rules Violated in relation to Sham Certificate of Good Faith Consultation (Doc. 23):**

1. FRCP Rule 11(b)(3): The certification that counsel "attempted" good faith consultation is contradicted by the deliberate use of an incorrect email address.

2. LRCiv 7.1(h): The consultation was not conducted in good faith; counsel used a known-incorrect contact method.

3. Ariz. R. Prof. Conduct ER 3.3(a)(1): Filing a certification that implies genuine effort when counsel deliberately avoided effective communication.

4. Ariz. R. Prof. Conduct ER 8.4(c): Conduct involving dishonesty, fraud, deceit, or misrepresentation.

5. FRCP Rule 11(b)(1): The sham certification was presented to create a false record of compliance.

**I.   Broken Promise to Respond — Bad Faith Delay Through False Assurance**

1. On February 24, 2026, Gorton emailed Plaintiff (EXHIBIT R) stating: "We intend to respond substantively to your letter within the next week." As of April 19, 2026 — nearly eight weeks later — no substantive response was ever provided. Plaintiff served a copy at Gorton's office on April 14, 2026, and followed up via email on April 19, 2026. No response was received. This constitutes a pattern of making promises to the opposing party to delay action, then failing to follow through.

**J.   Rules Violated in relation to Broken Promise to Respond — Bad Faith Delay Through False Assurance:**

1. FRCP Rule 1: Promising responses that never come wastes the opposing party's time and delays resolution. "They shall be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

2. Ariz. R. Prof. Conduct ER 3.4(a): Obstructing another party's access to evidence or information.

3. Ariz. R. Prof. Conduct ER 8.4(d): Conduct prejudicial to the administration of justice.

**K.   Contradictory Statements — Internal Policies and Discovery**

1. During the September 24, 2025 recorded call (EXHIBIT O), Gorton stated regarding Chase's internal policies: "As far as internal policies, that would be something that would likely come during the course of discovery, if this were to go forward." Yet in her subsequent email response to Plaintiff's Second Notice of Presumptions (EXHIBIT U), Gorton stated: "Chase is under no obligation to produce internal policies (even if relevant) nor is it under any obligation to respond to your premature demands for disclosure based on your speculative conclusions about their contents." These are directly contradictory positions.

Counsel told Plaintiff one thing to induce reliance, then reversed position when it suited her litigation strategy.

**L. Rules Violated in relation to Contradictory Statements — Internal Policies and Discovery:**

1. Ariz. R. Prof. Conduct ER 4.1(a): A lawyer shall not knowingly make a false statement of material fact to a third person.

2. Ariz. R. Prof. Conduct ER 8.4(c): Conduct involving dishonesty, fraud, deceit, or misrepresentation.

3. FRCP Rule 1: Inducing reliance on false promises delays resolution.

**M. Threat of Sanctions Against Pro Se Litigant as Intimidation**

1. In her email (EXHIBIT U), Gorton wrote: "Chase expressly reserves all rights, including the right to seek sanctions for improper litigation conduct should your conduct continue." This threat was made in response to Plaintiff's legitimate (if procedurally imperfect) attempt to invoke FRE 301 presumptions and request information. Threatening sanctions against a pro se litigant for exercising litigation rights — while simultaneously engaging in the very conduct that warrants sanctions — constitutes intimidation designed to chill Plaintiff's access to the courts.

**N. Rules Violated in relation to Threat of Sanctions Against Pro Se Litigant as Intimidation:**

1. Ariz. R. Prof. Conduct ER 4.4(a): Threatening criminal or disciplinary charges solely to gain advantage in a civil matter.

2. FRCP Rule 11(b)(1): Threats designed to intimidate rather than serve legitimate litigation interests.

**O. Mischaracterization of Plaintiff's Legal Theory**

1. Throughout Doc. 22 and Doc. 28, counsel characterized the Certification of Trust (EXHIBIT A) as merely a statutory disclosure under A.R.S. § 14-11013 — implying it was Plaintiff's document with no contractual force. In fact, the

Certification of Trust is Chase's own form (M1204-04), bearing Chase's logo, drafted by Chase, and containing indemnification, severability, and counterparts clauses — standard contractual provisions. The document explicitly states it "will be relied upon by the Bank to open, close, or maintain deposit account(s) in the Trust." Chase accepted this instrument, relied upon it to open the accounts, and is now asking the Court to treat it as though it creates no obligations. Counsel cannot mischaracterize her own client's instrument to obtain dismissal.

**P.      Rules Violated in relation to Mischaracterization of Plaintiff's Legal Theory:**

1. Ariz. R. Prof. Conduct ER 3.3(a)(1): A lawyer shall not knowingly make a false statement of fact or law to a tribunal. Characterizing Chase's own bilateral instrument as a unilateral disclosure is a false statement of fact.

2. 28 U.S.C. § 1927: Obtaining dismissal through mischaracterization of a document the court has not independently reviewed would necessitate re-litigation — unreasonably multiplying proceedings.

**Q.      Misrepresentation Regarding FRE 801(d)(2)(B) — Adoptive Admissions**

1. In her email (EXHIBIT U), Gorton states: "Your assertion that a failure to respond within fourteen days constitutes an 'adoptive admission' under Rule 801(d)(2)(B) is likewise incorrect and completely unsupported by the Federal Rules or applicable case law." This is itself a misstatement of law. FRE 801(d)(2)(B) provides that a statement is not hearsay if it is offered against an opposing party and "is one the party manifested an adoption or belief in its truth." Silence in the face of an accusation, where a party would normally be expected to deny, CAN constitute adoptive admission. See *United States v. Hoosier*, 542 F.2d 687 (6th Cir. 1976); *Doyle v. Ohio*, 426 U.S. 610 (1976) (discussing silence as adoption). As demonstrated in Plaintiff's Motion for Judicial Notice of Adjudicative Facts Regarding Adoptive Admissions by Silence, the adoptive

admissions doctrine has been established law for 210 years, recognized by the United States Supreme Court, the Ninth Circuit, and the Arizona Supreme Court since 1923. Counsel's assertion that this doctrine is 'completely unsupported' was made to a pro se litigant — a party she knew had no legal training to independently verify her claim. The misstatement was calculated to discourage Plaintiff from pursuing a theory that, if accepted, would be dispositive against her client.

**R.     Rules Violated in relation to Misrepresentation Regarding FRE 801(d)(2)(B) — Adoptive Admissions:**

1. Ariz. R. Prof. Conduct ER 4.1(a): Knowingly making a false statement of law to a third person (Plaintiff).

2. Ariz. R. Prof. Conduct ER 8.4(c): Misrepresenting the state of the law to an unrepresented party.

## V.     OATH VIOLATIONS

Both Nicole M. Goodwin (SBN 024593) and Adrianna Griego Gorton (SBN 031836) took the following oaths upon admission:

**A.     Arizona Attorney Oath (A.R.S. § 12-282):** "I do solemnly swear that I will support the Constitution of the United States and the Constitution of the State of Arizona; that I will maintain the respect due to courts of justice and judicial officers; that I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, nor any defense except such as I believe to be honestly debatable under the law of the land; that I will employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor..."

**B.     Oath of Admission to the Bar of the U.S. District Court for the District of Arizona:** "I will not knowingly advance a fact or legal position that is not warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law."

**C.    The conduct documented above violates both oaths. Specifically:**

1. Characterizing established commercial law (UCC § 1-308) as "fringe theory" is not "honestly debatable under the law of the land"

2. The sham Certificate of Consultation is inconsistent with "truth and honor"

3. The contradictory statements about discovery are inconsistent with "truth and honor"

4. The "sovereign citizen" ad hominem is not a "fact or legal position warranted by existing law"

5. Telling a pro se litigant that adoptive admissions by silence is "completely unsupported by the Federal Rules or applicable case law" is advancing a legal position "not warranted by existing law" — in direct violation of the federal oath.

## VI.    <u>FRCP RULE 1 VIOLATION</u>

"These rules should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

The cumulative effect of counsel's conduct — sham consultations, broken promises, misstatements of law, ad hominem attacks, contradictory positions, and intimidation — does not serve the just, speedy, or inexpensive determination of this action. It obstructs. It misleads. It wastes judicial resources. It forces a pro se litigant to expend time and resources responding to arguments that counsel's own client has proven false in other proceedings.

This case has been pending for over nine months in federal court. No discovery has been conducted. No scheduling order has been entered. The only substantive activity has been counsel's efforts to avoid addressing the merits; all for one policy and one visible contract between parties.

## VII.    LESSER PATTERNS OF CONDUCT (Not Independently Sanctionable, But Demonstrative of Mindset)

These patterns, while not individually rising to the level of sanctionable conduct, collectively demonstrate the mindset, strategy, and bad faith of Goodwin and Gorton. They reveal how counsel's minds work and establish the scienter necessary to elevate individual acts into a pattern warranting sanctions.

**A.      Deliberate Asymmetry of Communication**

1.  Gorton called Plaintiff on September 24, 2025 when it served Chase's interests (to inform him of the MTD and satisfy the meet-and-confer requirement for the FIRST motion). But when it came time for the SECOND meet-and-confer in November 2025, she emailed the wrong address instead of calling. The pattern: Gorton uses effective communication when it benefits Chase, and ineffective communication when compliance would benefit Plaintiff.

2.  This is calculated, not careless. The choice of communication method is strategic, not accidental.

**B.      Tone Shift Between Private and Public Communications**

1.  On the September 24 call, Gorton was professional, collegial, and even solicitous — asking what Plaintiff hoped to gain, offering to "shortcut" the litigation, promising to overnight materials. In Doc. 22 (filed less than two months later), the same attorney characterized Plaintiff's legal theory as "sovereign citizen" ideology and "frivolous and grounds for sanctions." The private tone was designed to lull; the public filing was designed to destroy.

2.  This shows the "sovereign citizen" characterization was not a genuine legal assessment — it was a litigation weapon deployed after the private approach failed to produce a capitulation.

**C.      Progressive Escalation of Hostility and the Timeline of Escalation:**

1.  Sept. 24, 2025 (EXHIBIT O Phone call): Collegial, helpful, offering resolution

2.  Nov. 12-16, 2025 (Email): Professional but increasingly urgent

3. Nov. 17, 2025 (MTD): Aggressive — "sovereign citizen," "frivolous," "grounds for sanctions"

4. Feb. 24, 2026 (EXHIBIT R): Neutral — promising response "within the next week"

5. Post-Feb (EXHIBIT U Email): Hostile — "baseless allegations," "unsupported accusations," threatening sanctions

The hostility increases in direct proportion to Plaintiff's persistence. This is not zealous advocacy — it is punitive escalation designed to exhaust a pro se litigant into abandonment.

**D.      Strategic Use of Silence**

1. Gorton promised on February 24, 2026 (EXHIBIT R) to respond "within the next week." Eight weeks of silence followed. This is not negligence — it is strategy. By remaining silent, counsel forces Plaintiff to expend resources following up, creates uncertainty about whether communications are being received, and runs out the clock on any informal resolution.

2. The silence is weaponized. When Gorton wants to communicate (Sept. 24 call, MTD filing), she does so immediately and effectively. When silence serves Chase's interests, she goes dark for months.

**E.      Selective Application of Legal Standards**

1. In Doc. 22, counsel argues that a Certification of Trust "is not an agreement" and that Chase has no contractual obligations. Yet Chase's own Certification of Trust form states: "Trustee shall complete this Certification, which will be relied upon by the Bank to open, close, or maintain deposit account(s) in the Trust." If Chase "relies upon" the Certification to take action (opening accounts), this creates at minimum an implied relationship. Counsel ignores Chase's own form language while arguing no relationship exists.

2. Counsel applies legal standards selectively — strict construction against Plaintiff, liberal construction in favor of Chase — even when Chase's own documents contradict their position.

**F.      Dual Signature as Shield — Destroyed by "We" (Adoptive Admission)**

1. Every filing is signed by both Goodwin and Gorton: "/s/ Adrianna Griego Gorton" with "Nicole M. Goodwin" listed above. Yet all substantive communications (calls, emails) come from Gorton alone. This creates plausible deniability — if challenged, Goodwin can claim she was unaware of Gorton's specific representations, while Gorton can claim she was acting under Goodwin's supervision and direction.

2. In every communication — calls, emails, and filings — Gorton consistently uses the collective pronoun "we":

    i.   Email 1 (EXHIBIT R): "We are in receipt of your letter..."

    ii.  Email 1 (EXHIBIT R): "We intend to respond substantively to your letter within the next week."

    iii. Email 2 (EXHIBIT U): "We write in response to your 'Second Notice of Presumptions...'"

    iv.  Phone Call (EXHIBIT O): "We will also move to dismiss on the basis that you cannot proceed..."

Under FRE 801(d)(2)(D), a statement offered against an opposing party is not hearsay if it "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." See *United States v. Smith*, 790 F.2d 789, 791 (9th Cir. 1986) (holding that an attorney's statements made within the scope of representation constitute admissions of the client under Rule 801(d)(2)(D)). Gorton's use of "we" is not merely stylistic — it is an adoptive admission that collapses the distinction between Gorton, Goodwin, and Chase into a single speaking entity. Every statement made under the collective "we" binds all three.

Goodwin cannot claim ignorance of Gorton's representations because Gorton's own language declares them a collective unit. If "we intend to respond within the next week," then Goodwin also intended to respond. If "we" called the UCC "fringe theory," then Goodwin also called it fringe theory. The dual-signature shield is pierced by the "we" sword — and both are of counsel's own making.

The dual-signature structure was designed to distribute accountability. But the consistent use of "we" in all communications — now locked into the record as adoptive admissions under FRE 801(d)(2)(D) — binds Goodwin and Gorton together in every misrepresentation, every broken promise, and every act of bad faith. They built their own cage. They cannot now claim to be separate occupants of it.

### G. The "Discovery Has Not Yet Started" Deflection

1. In her email (EXHIBIT U), Gorton writes: "Chase's Motion to Dismiss is pending; discovery has not yet started (if it ever does)." The parenthetical "(if it ever does)" reveals the strategy: file a motion to dismiss, refuse all informal information exchange, and then argue that Plaintiff cannot support his claims because he lacks the very information Chase refuses to provide. This is a Catch-22 designed to ensure Plaintiff can never obtain the evidence he needs.

2. The litigation strategy is not to win on the merits but to prevent the merits from ever being reached. This is obstruction dressed as procedure.

## VIII. SUMMARY: THE COMPLETE PICTURE

### A. The nine sanctionable offenses and seven conduct patterns together establish:

1. Scienter — Counsel knows the UCC is legitimate law (Section IV.E). The "fringe theory" characterization is therefore intentional misrepresentation, not mere error.

2. Motive — Chase's motive is to avoid producing internal policies that would reveal why Plaintiff's account was closed (Sections VII.D, VII.G). The aggressive litigation posture is designed to prevent discovery, not to adjudicate the merits.

3. Pattern — The conduct is not isolated. It spans from September 2025 through at least April 2026, escalating in hostility as Plaintiff persists (Section VII.C). This is a campaign, not a series of mistakes.

4. Prejudice — Plaintiff, proceeding pro se, has been subjected to ad hominem attacks, intimidation, broken promises, sham consultations, and deliberate obstruction — all while counsel enjoys the resources of Greenberg Traurig, LLP and JPMorgan Chase Bank, N.A.

5. Judicial Waste — The Court's time has been consumed by arguments counsel knows are false, characterizations designed to prejudice rather than inform, and certifications that misrepresent the record.

## IX. CONCLUSION

Nine sanctionable offenses. Seven patterns of calculated misconduct. Two broken oaths. One motive: to prevent this Court from ever reaching the merits of Plaintiff's claims. Defendants Goodwin and Gorton did not merely bend the rules of professional conduct — they shattered them, systematically, over seven months, against a pro se litigant who asked only for the documents Chase relied upon to close his accounts. They called codified law "fringe theory" while invoking that same law for themselves. They certified good faith consultation while emailing the wrong address. They promised a substantive response and delivered eight weeks of silence. They threatened sanctions for the very conduct they engaged in. Every act was deliberate. Every misrepresentation was knowing. Every broken promise was strategic. The timeline proves it. The recordings prove it. Their own words — locked into the record as adoptive admissions by their own silence — prove it.

As we conclude this journey into the depths of the Defendants' minds, as well as the scrutiny of their conduct, one must ask — whether their oath was sworn on the Bible or affirmed, did they forget the Word that these acts are based upon?

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

**A.** Impose monetary sanctions against Defendants Nicole M. Goodwin and Adrianna G. Gorton, jointly and severally, pursuant to 28 U.S.C. § 1927 and the Court's inherent authority, for vexatiously multiplying these proceedings;

**B.** Enter an adverse inference instruction against Defendants regarding their failure to preserve and produce internal policies, should this matter proceed to trial;

**C.** Award Plaintiff the equivalent of attorney's fees, calculated at Plaintiff's demonstrated commercial rate of $417.94 per hour, for all time consumed responding to Defendants' sanctionable conduct, misrepresentations, and bad faith obstruction;

**D.** Refer Defendants Goodwin and Gorton to the State Bar of Arizona for disciplinary review regarding their knowing misstatements of law, sham certifications, and violations of the Arizona Rules of Professional Conduct; and

**E.** Grant such other and further relief as the Court deems just and proper.

Dated this 22nd day of June, 2026

Respectfully,

ERIK ARTHUR OTTESON

Plaintiff, Pro Se

PO Box 4093
Cottonwood, AZ 86326
(928) 254-1037
erikotteson@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on 06/22/2026, I caused the foregoing MOTION FOR SANCTIONS to be served upon all Defendants via CM/ECF:

Nicole Goodwin
Adrianna Gorton
Greenberg Traurig, LLP
2375 E. Camelback Road
Suite 700
Phoenix, Arizona 85016
Counsel for Defendant JPMorgan Chase Bank, N.A., and Defendants in their individual capacities


Dated this 22nd day of June, 2026

ERIK ARTHUR OTTESON

Plaintiff, Pro Se