**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Erik Arthur Otteson, | No. CV-25-08198-PCT-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| JPMorgan Chase Bank NA, | |
| Defendant. | |

Erik Arthur Otteson ("Plaintiff"), who is proceeding *pro se*, alleges that he applied to JPMorgan Chase Bank NA ("Defendant") to open bank accounts on behalf of a non-party entity called the VKNG FLEET TRUST in his capacity as a trustee of the trust. (Doc. 21 at 2.) In lieu of submitting the actual trust documents as part of the account-opening process, Plaintiff submitted a document entitled "Certification of Trust." (*Id.*) When executing that document, Plaintiff hand-wrote the phrase "without prejudice" just above his signature, based on his belief that including this phrase was a way to "exercise[] his statutory rights under the Uniform Commercial Code to reserve his common-law rights." (*Id.* at 1.) Plaintiff alleges that Defendant initially accepted the Certification of Trust, opened the accounts, and "provided banking services" but "then abruptly reversed course, demanded Plaintiff sign without the reservation, and ultimately closed the accounts." (*Id.*) Based on these allegations, Plaintiff—who is proceeding in an individual capacity and not in his capacity as a trustee of the trust—asserts a single claim against Defendant for breach of the implied covenant of good faith and fair dealing. (*Id.* at 5-7.)

Now pending before the Court are Defendant's motion to dismiss (Doc. 22), Plaintiff's motion for judicial notice (Doc. 27), and Plaintiff's motion for leave to file a first amended complaint ("FAC") that would assert additional claims against Defendant and also add, as new defendants, the law firm and attorneys representing Defendant in this action (Docs. 35, 45 [redline]).[1]  The motions are fully briefed (Docs. 24, 26, 28, 29, 48, 49) and neither side requested oral argument.  For the reasons that follow, Defendant's motion to dismiss is granted, Plaintiff's motion for judicial notice is granted in part and denied in part, and Plaintiff's motion for leave to file the FAC is denied (although the Court will grant limited leave to amend should Plaintiff wish to make another attempt to amend his implied covenant claim against Defendant).

## BACKGROUND

I.    Relevant Factual Allegations

The following factual allegations, presumed true, are derived from the operative complaint.  (Doc. 21.)

Plaintiff "is an individual domiciled in Cottonwood, Arizona," who serves as trustee of the VKNG FLEET TRUST ("the Trust").  (*Id.* at 2.)  "Plaintiff is the sole Grantor, sole Trustee, and, by operation of law, the sole beneficial owner of the Trust, as the trust instrument designates no other beneficiaries."  (*Id.* at 4.)  Defendant "is a national banking association" and "a citizen of Ohio."  (*Id.* at 2.)

In June 2025,[2] Plaintiff, "acting as Trustee of [the Trust], sought to open trust bank accounts with Defendant . . . at a branch location in Arizona."  (*Id.*)  "As part of the account

___

[1]    Also before the Court is Plaintiff's "Response to Defendant's Certificate of Consultation."  (Doc. 25.)  In that filing, "Plaintiff respectfully notes that no meet and confer occurred" before Defendant filed its motion to dismiss and argues that defense counsel sent the requests to meet and confer "to an incorrect address" and "chose not to call" him.  (*Id.* at 1.)  Plaintiff argues that the Certificate of Consultation "demonstrates Defendant's pattern of bad faith."  (*Id.*)  Plaintiff's "Response," however, seeks no relief from the Court.  At any rate, the Certificate of Consultation explained that defense counsel sent requests for a meet and confer to an email address that Plaintiff previously used to communicate with defense counsel and that Plaintiff had previously confirmed was correct.  (Doc. 23.)

[2]    The Court assumes, based on the chronology of the remainder of the allegations in the complaint, that this was intended to read as "May 2025."

- 2 -

opening process, [Defendant] required Plaintiff to execute a standard form document titled 'Certification of Trust.'" (*Id.*) "Plaintiff signed this document on or about June 14, 2025." (*Id.*)[3] When signing, "Plaintiff wrote the words 'without prejudice' immediately above his signature on the Certification of Trust," which he claims he did pursuant to A.R.S. § 47-1308. (*Id.* at 2-3.)[4] "[Defendant] accepted the Certification of Trust bearing Plaintiff's qualified indorsement, processed the application, and opened trust bank accounts for the Trust." (*Id.* at 3.)

"Shortly thereafter, on or about May 27, 2025, [Defendant] sent Plaintiff a letter titled 'Action Needed,' stating that Plaintiff must 'visit [his] local branch to sign updated documentation' by June 6, 2025, or the accounts would be restricted or closed." (*Id.*)[5] "The letter cited . . . 'Banking Regulations' but did not identify any specific regulation, statute, or internal policy, nor did it explain what was allegedly deficient about the documentation Plaintiff had already provided." (*Id.*)

On June 3, 2025, "in an effort to resolve the matter in good faith and to create a written record, Plaintiff hand-delivered a formal letter to [Defendant]." (*Id.*) "In this letter, Plaintiff explained that his indorsement was made pursuant to his rights under UCC § 1-308, that [Defendant's] acceptance of the indorsement and opening of the accounts constituted ratification of the contract, and that he sought clarification regarding [Defendant's] objections." (*Id.*)[6]

The next day, "[h]aving received no substantive response, Plaintiff hand-delivered a second, more specific letter . . . addressed to [Defendant] employee Christian Zamora."

[3]    The "Certification of Trust" is attached to the complaint as Exhibit A. (*Id.* at 9-12.) Exhibit A was signed on May 14, 2025. (*Id.* at 12.)

[4]    A.R.S. § 47-1308 adopts Uniform Commercial Code (U.C.C.) § 1-308. It provides: "A. A party that with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not prejudice the rights reserved. Such words as 'without prejudice', 'under protest' or the like are sufficient. B. Subsection A does not apply to an accord and satisfaction." A.R.S. § 47-1308.

[5]    A copy of this "Action Needed Letter" is attached to the complaint as Exhibit B. (*Id.* at 13-14.)

[6]    A copy of Plaintiff's June 3, 2025 letter is attached to the complaint as Exhibit C. (*Id.* at 15-16.)

- 3 -

(*Id.*)[7]  "In this letter, Plaintiff formally requested four pieces of information: (1) the name of the decision-maker who objected to his indorsement; (2) the specific written policy or legal basis [Defendant] was relying upon; (3) confirmation of whether this policy applies to trustee indorsements made under UCC § 1-308; and (4) whether [Defendant] intended to close the account on this basis."  (*Id.* at 3-4.)  "Plaintiff explicitly stated his desire to 'resolve this promptly and in good faith' but noted that he could not proceed 'based solely on hearsay or unofficial phone representations.'"  (*Id.* at 4.)[8]

Defendant "did not respond in writing to this request," "did not produce a written policy," "did not provide a legal basis for its position," and "did not identify the decisionmaker." (*Id.*)  Plaintiff alleges that Defendant "provided no good faith explanation whatsoever."  (*Id.*)  "Instead, on or about June 9, 2025, [Defendant] internally circulated an email in which a [Defendant] 'Fraud Specialist' responded to an inquiry about Plaintiff's account."  (*Id.*)[9]  "When asked whether 'without prejudice' is acceptable on a signature for bank documents, the Fraud Specialist replied, 'No, "without prejudice" should not be included in the signature line of a legal bank document.'  The Fraud Specialist's explanation was that the term 'applies to communications made during settlement negotiations' and that its use on a signature line 'would be a misapplication of the term.'"  (*Id.*)  "[T]his internal email makes no mention of UCC § 1-308."  (*Id.*)

"Based on this internal communication and without ever providing Plaintiff the written policy or legal justification he had requested, [Defendant] proceeded to close Plaintiff's bank accounts."  (*Id.*)  As a result, Plaintiff alleges that he suffered "injuries," including "the loss of time, the interference with Plaintiff's ability to conduct business, and the denial of the benefits of the banking relationship," which Plaintiff alleges "are personal

---

[7]    A copy of Plaintiff's June 4, 2025 letter is attached to the complaint as Exhibit D. (*Id.* at 17-18.)

[8]    The complaint later alleges that Plaintiff "made three separate written requests for Defendant to produce the policy or articulate its legal basis" for refusing his signature "without prejudice" (*id.* at 6), but the complaint only identifies the two instances at Exhibits C and D.

[9]    A copy of this email is attached to the complaint as Exhibit E.  (*Id.* at 19-20.)

to Plaintiff as an individual" and that "[t]he Trust, a legal entity that never became operational, suffered no cognizable harm." (*Id.* at 4-5.)

Based on these allegations, Plaintiff asserts a single claim against Defendant for breach of the implied covenant of good faith and fair dealing. (*Id.*at 5.) Plaintiff alleges that "[w]hen Defendant accepted Plaintiff's Certification of Trust bearing his qualified indorsement and opened the trust bank accounts, a contractual relationship was formed" and that "[t]he benefit of this contract to Plaintiff was the ability to use the accounts for business purposes." (*Id.*)

II.     Relevant Procedural Background

On August 15, 2025, Plaintiff filed the action styled *Erik Arthur Otteson, Trustee and Authorized Representative of the VKNG Fleet Trust v. JPMorgan Chase Bank, N.A.* in the Superior Court of Yavapai County. (Doc. 1 at 9-27.) The complaint alleged that Plaintiff "appears solely in his capacity as duly appointed Trustee and Authorized Representative of the VKNG FLEET TRUST." (*Id.* at 9.)

On August 29, 2025, Plaintiff filed an amended complaint in Yavapai County, which again stated that Plaintiff "appears solely in his capacity as duly appointed Trustee and Authorized Representative of the VKNG FLEET TRUST. (*Id.* at 28-35.)

On September 17, 2025, Defendant removed the action to federal court. (*Id.* at 1.) The sole basis for removal was diversity jurisdiction. (*Id.* at 3-4 ¶¶ 8-12.)

Following a series of procedurally irregular filings by Plaintiff, the Court struck several documents, including the complaint and first amended complaint filed in Yavapai County and a purported second amended complaint filed after removal. (Doc. 16.) The Court explained that Plaintiff was suing "in his capacity as trustee and representative of [the Trust]" but "purports to proceed pro se," and "a nonlawyer cannot represent himself to the extent that he appears in his capacity as trustee for a trust." (*Id.* at 1, citing *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 698 (9th Cir. 1987).) The Court ordered that "Plaintiff may not file any additional pleadings or motions until he is represented by competent counsel." (*Id.*)

On November 3, 2025, the Court granted Plaintiff's request to substitute Plaintiff in his personal capacity for Plaintiff in his capacity as trustee of the Trust. (Doc. 20, granting Doc. 17.) That same day, Plaintiff filed the operative complaint. (Doc. 21.)[10]

On November 17, 2025, Defendant filed a motion to dismiss the complaint (Doc. 22) along with a Certificate of Attempted Good Faith Consultation (Doc. 23). On December 1, 2025, Plaintiff opposed Defendant's motion to dismiss (Doc. 24) and responded to Defendant's Certificate of Attempted Good Faith Consultation (Doc. 25). On December 11, 2025, Defendant filed a reply. (Doc. 26.)

On January 27, 2026, Plaintiff filed a motion for judicial notice. (Doc. 27.) On February 13, 2026, that motion became fully briefed. (Docs. 28-29.)

On June 15, 2026, Plaintiff filed a motion for leave to file a FAC. (Doc. 35.) That same day, Plaintiff also purported to file a FAC (Doc. 36) and filed a motion for summary judgment and several summary judgment-related motions (Docs. 37, 39, 41).

On June 22, 2026, after receiving a notice of filer deficiency (Doc. 44), Plaintiff filed a redlined copy of his proposed FAC (Doc. 45). That same day, Plaintiff filed a motion for sanctions. (Doc. 46.)

On June 23, 2026, the Court issued an order (1) extending Defendant's time to respond to Plaintiff's motion for leave to file a FAC; (2) striking the purported FAC filed on June 15, 2026; (3) denying Plaintiff's motion for summary judgment; (4) denying as moot Plaintiff's various summary judgment-related motions; and (5) denying Plaintiff's motion for sanctions. (Doc. 47.) Finally, because "Plaintiff's procedurally improper filings are placing a strain on the Clerk's office," the Court discontinued the privilege of electronic filing that had been previously granted to Plaintiff. (*Id.* at 3-4, citing Doc. 34.)

On July 6, 2026, Defendant opposed Plaintiff's request for leave to file a FAC. (Doc. 48.) On July 13, 2026, Plaintiff filed a reply. (Doc. 49.)

…

---

[10]    The pleading at Doc. 21 is referred to herein as the "complaint" because all prior complaints have been stricken. (Doc. 16; Doc. 20 at 2.)

**DISCUSSION**

I.    Plaintiff's Request For Judicial Notice

Before addressing Defendant's motion to dismiss, the Court first addresses Plaintiff's request for judicial notice.

A.    **The Parties' Arguments**

Plaintiff asks the Court "to take judicial notice of certain adjudicative facts pursuant to Federal Rule of Evidence 201." (Doc. 27 at 1.)  Plaintiff argues that "[t]hese facts are not subject to reasonable dispute and are directly relevant to Defendant's credibility and its asserted defense of good faith." (*Id.*)  First, Plaintiff asks to the Court to take judicial notice of a U.S. Department of Justice press release, dated September 29, 2020, announcing that Defendant "agreed to pay $920 million and admitted to wire fraud in connection with schemes to manipulate the precious metals and U.S. Treasuries markets." (*Id.* at 1-2.)[11] Second, Plaintiff asks the Court to take judicial notice of a Consumer Financial Protection Bureau ("CFPB") press release announcing that "[o]n December 20, 2024, the [CFPB] filed a lawsuit against Defendant alleging it failed to properly investigate fraud complaints, denied legally required reimbursement to victims, and 'rushed to market' the Zelle payment platform without adequate consumer safeguards." (*Id.* at 2.)[12]  Third, Plaintiff asks the Court to take judicial notice of a February 2025 U.S. Senate Committee on Banking, Housing, and Urban Affairs "staff analysis titled 'De-Banking in America,'" which "found that Defendant . . . had the highest number of improper account closure complaints (1,423) and improper account denial complaints (443) among all banks analyzed." (*Id.*)[13]  Fourth, Plaintiff asks the Court to take judicial notice of a complaint filed on January 22, 2026 by President Trump and others against Defendant and its CEO James Dimon "alleg[ing] Defendant closed accounts without explanation based on political or ideological concerns."

---

[11]    This press release is attached to Plaintiff's motion as Exhibit A.  (Doc. 27-1 at 1-7.)

[12]    This press release is attached to Plaintiff's motion as Exhibit B.  (Doc. 27-1 at 8-12.)

[13]    This report is attached to Plaintiff's motion as Exhibit C.  (Doc. 27-1 at 13-29.)

(*Id.* at 2-3.)[14]  Plaintiff argues that "[t]hese public records establish a clear and undeniable pattern of institutional bad faith by Defendant" and that the "adjudicative facts contained in Exhibits A-D directly impeach" "Defendant's primary defense in this case . . . that it acted in good faith and within its contractual discretion." (*Id.* at 3.)  Plaintiff argues that he is not "ask[ing] the Court to adjudicate the merits of these other matters" and that he "asks only that the Court acknowledge their existence as public records under FRE 201" because "[t]heir existence demonstrates that the allegations in this case are not an isolated incident, but part of a documented, ongoing pattern of misconduct." (*Id.*)

Defendant objects to Plaintiff's judicial notice requests.  (Doc. 28 at 1.)  Defendant argues that Exhibits A-D "are neither proper subjects of judicial notice under Federal Rule of Evidence 201 nor relevant to the claim asserted in the operative Complaint." (*Id.* at 3.)  Specifically, Defendant argues that Exhibits A-D "may not be admitted for the truth of the facts contained therein, and are therefore not appropriate for judicial notice under Federal Rule of Evidence 201." (*Id.*)  Defendant also argues that "neither the proposed exhibits nor the allegations made therein have any bearing or relevance to Plaintiff's sole claim against [Defendant] for breach of the implied covenant of good faith and fair dealing." (*Id.* at 4.)  In other words, Defendant argues that "[e]ven if the proposed exhibits were proper for judicial notice," Plaintiff's motion should be denied "because the documents are irrelevant." (*Id.*)  Defendant also contends that "should the Court seek to consider any of the Exhibits as being subject to judicial notice," it should be given "leave and opportunity to address each specific item." (*Id.* at 5.)

In reply, Plaintiff argues that Defendant's response "mischaracterizes both the nature of Plaintiff's request and the controlling legal standard for judicial notice." (Doc. 29 at 1.)  Specifically, Plaintiff argues that he "does not ask this Court to characterize [Defendant's] conduct, only to notice that it occurred." (*Id.*)  And Plaintiff argues that "[t]he fact that [Defendant] has been criminally prosecuted by the Department of Justice, investigated by the United States Senate, and sued by both the [CFPB] and President of the

---

[14]    This complaint is attached to Plaintiff's motion as Exhibit D.  (Doc. 27-2 at 1-57.)

United States are historical, adjudicative facts, not reasonably subject to dispute." (*Id.*) Next, Plaintiff seeks to distinguish caselaw cited by Defendant. (*Id.* at 1-2.) Plaintiff also argues that under Ninth Circuit precedent, "[a] court may take judicial notice of the *existence* of public records, but not of the disputed facts *within* them" and that this "is precisely what Plaintiff requests: notice that these proceedings and investigations occurred . . . not a finding of the ultimate truth of the allegations therein." (*Id.* at 2.) Last, Plaintiff "enthusiastically agrees" that Defendant should be given the opportunity to further brief the issue because "[i]f [Defendant] believes it can explain away a criminal prosecution, a federal enforcement action filed in this District, a United States Senate report, and a lawsuit brought by the sitting President of the United States—all concerning bad faith toward its own customers—Plaintiff agrees it should have the opportunity to do so, on the record." (*Id.* at 2-3.)

B.    **Legal Standard**

Federal Rule of Evidence 201(a) "governs judicial notice of an adjudicative fact only, not a legislative fact." Under Rule 201(b), a court "may judicially notice a fact that is not subject to reasonable dispute" if it "is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Under Rule 201(c), a court "may take judicial notice on its own," and it "must take judicial notice if a party requests it and the court is supplied with the necessary information." A court may, however, decline to take judicial notice of facts that are irrelevant. *See, e.g.*, *Pearson v. Arizona*, 2020 WL 5544373, *2 (D. Ariz. 2020) ("Although relevance is not explicitly required to satisfy Rule 201, the Ninth Circuit has declined to take judicial notice of facts that are irrelevant."); *Hargis v. Access Cap. Funding, LLC*, 674 F.3d 783, 793 (8th Cir. 2012) ("Courts are not required to take judicial notice of irrelevant materials.").

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to

respond." *United States v. Ritchie*, 342 F. 3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or *matters of judicial notice*—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908 (emphasis added).

C.     **Analysis**

1.     Exhibits A & B

The Court denies Plaintiff's request to take judicial notice of Exhibits A and B because they are irrelevant. *Pearson*, 2020 WL 5544373 at *2; *Hargis*, 674 F.3d at 793.

As discussed, Exhibit A is a U.S. Department of Justice press release, dated September 29, 2020, regarding "a resolution" entered into by Defendant "with the Department of Justice to resolve criminal charges related to two distinct schemes to defraud: the first involving tens of thousands of episodes of unlawful trading in the markets for precious metals futures contracts, and the second involving thousands of episodes of unlawful trading in the markets for U.S. Treasury futures contracts and in the secondary (cash) market for U.S. treasury notes and bonds." (Doc. 27-1 at 2.) Exhibit A is therefore unrelated to the allegations in the complaint, which concern Defendant's alleged closure of bank accounts.

Exhibit B is a press release from the CFPB, dated December 20, 2024, announcing that the CFPB "sued the operator of Zelle and three of the nation's largest banks," including Defendant, "for failing to protect consumers from widespread fraud on America's most widely available peer-to-peer payment network." (Doc. 27-1 at 9.) Again, this is unrelated to the allegations in the complaint concerning Defendant's alleged closure of bank accounts.

2.     Exhibits C & D

Both Exhibits C and D appear at least marginally relevant to the allegations in the complaint. Exhibit C is a Supplemental Memorandum from the U.S. Senate Committee on Banking, Housing, and Urban Affairs, dated February 4, 2025. (Doc. 27-1 at 14-29.) The

memorandum states that "the Minority Staff of the Committee conducted an analysis of consumer complaints filed with the [CFPB] related to debanking practices," and the results of that analysis concluded that "[t]he four largest banks in the county, [Defendant], Wells Fargo, Bank of America, and Citigroup, had the highest volume of complaints" and that Defendant "was the subject of 1,423 improper closure complaints." (*Id.* at 14.) The Court will take judicial notice of the *existence* of this memorandum and of the *existence* of the allegations contained therein. The Court will not, however, take judicial notice of the truth of any disputed facts contained within Exhibit C. *See, e.g.*, *Potter v. Meza*, 2026 WL 35276, *12 (D. Ariz. 2026) ("The Court will take judicial notice of the existence of the press release attached as Exhibit 3 to Plaintiff's motion; however, the Court declines to take judicial notice of the truth of its contents."); *EVO Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1320-21 (C.D. Cal. 2023) ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth. A court may not take judicial notice of the truth of disputed factual matters at the pleading stage."). Moreover, the Court will not take judicial notice of any of Plaintiff's interpretations or characterizations of Exhibit C.

Exhibit D is a copy of a complaint filed by President Trump and others against Defendant and Defendant's chairman and CEO. (Doc. 27-2.) In that complaint, the plaintiffs allege, in a nutshell, that Defendant closed several of the plaintiffs' bank accounts without "provid[ing] [the] [p]laintiffs any recourse, remedy, or alternative" and without providing "any advance notice." (*Id.* at 4.) This complaint has, at the very most, marginal relevance to Plaintiff's claim. Nevertheless, the Court will take judicial notice of the *existence* of this complaint and of the fact that Defendant was sued for closing bank accounts. However, the Court will not take judicial notice of the truth of any disputed facts contained within Exhibit D. And again, for clarity, the Court also will not take judicial notice of any of Plaintiff's interpretations or characterizations of Exhibit D.[15]

---

[15]    Defendant's request for "leave and opportunity to address each specific item" "should the Court seek to consider any of the Exhibits as being subject to judicial notice" (Doc. 28 at 5) is denied as moot given the outcome here.

II.     Defendant's Motion To Dismiss

      A.     **Legal Standard**

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings, Int'l, LLC*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

      B.     **The Parties' Arguments**

Defendant argues that "Plaintiff cannot state a claim for breach of the implied covenant of good faith and fair dealing because no contractual relationship exists between Plaintiff and [Defendant]." (Doc. 22 at 1.) Defendant further argues that the Certification of Trust, "the very document Plaintiff attempts to enforce," "does not constitute a valid or enforceable agreement between the parties." (*Id.* at 1-2.) Defendant thus argues that Plaintiff's reliance on *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12 (Ariz. 2002), "is misplaced and incorrect," as "the fundamental distinction between the facts" of *Wells Fargo* "and the facts alleged by Plaintiff in this matter is the existence of a contractual agreement between the parties which Plaintiff has failed to sufficiently allege in his Complaint." (*Id.* at 4-5.)[16]

---

[16]     Defendant also notes that Plaintiff's complaint attributes a quote to *Wells Fargo*— that a bank acts in bad faith when it "refuse[s] to articulate its reasons" for its actions—that is not found anywhere in that opinion. (Doc. 22 at 4, citing Doc. 21 at 5.) Plaintiff is proceeding *pro se*, but he still "must follow the same rules of procedure that govern other

"Because the existence of a valid contract is required to assert a claim for breach of the implied covenant of good faith and fair dealing, and Plaintiff cannot plead a valid contract based on the Certification of Trust," Defendant argues that Plaintiff "cannot plead a legally cognizable claim under his current theory, and the Complaint must be dismissed." (*Id.* at 5.) Furthermore, Defendant argues that "Plaintiff fails to allege or provide any reasoning as to why Chase would be obligated to accept the Certification of Trust with the qualified signature, fails to reference any provision within the Certification that would impose such a requirement on Chase, and further fails to articulate how the UCC (as adopted in Arizona) applies to this matter." (*Id.* at 5-6.) Next, Defendant argues that a "Certification of Trust is not an agreement" and that under A.R.S. § 14-1103, "a trustee is permitted to provide a Certification of Trust to third parties in lieu of disclosing the full trust instrument," but the "purpose of the Certification of Trust is to serve as a mechanism wherein the trustee or an authorized representative of the trust asserts the existence of the trust and their authority to act on behalf of the trust." (*Id.* at 6.) In a nutshell, Defendant argues that a Certification of Trust "is merely a summary of the essential terms of the trust instrument." (*Id.*) Defendant contends that it "is not a 'party' to the Certification of Trust, but rather a 'recipient' of it." (*Id.*) Last, Defendant argues that "[r]eceiving a Certification of Trust does not confer obligations on [Defendant]" and that "Plaintiff has failed to plead a binding agreement between him and [Defendant], or even the Trust and [Defendant], to serve as a

_____

litigants." *Ghadimi v. Ariz. Bank & Tr.*, 2025 WL 2928933, *4 (D. Ariz. 2025) (quoting *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012)). "It appears the incorrect citation[] may be the result of [Plaintiff] using artificial intelligence to draft his filings." *Id.* "But whether [Plaintiff] used artificial intelligence or simply imagined the cases himself, filing documents that contain such cases results in confusion and unnecessary work for opposing parties and the court." *Id.* Plaintiff is hereby on notice that future filings that include fabricated citations or quotations may subject him to sanctions. *Malkeet Lnu v. Blanche*, 177 F.4th 1014, 1020 (9th Cir. 2026) ("We issue this disciplinary order . . . as a warning to the members of this Court's bar: be aware of the risks of overreliance on generative AI, read everything cited in a court filing—whether drafted by generative AI or not—and disclose quickly and transparently generative AI hallucinations that are inadvertently included in court filings."); *id.* at 1027 ("Sethi also violated these rules when he attributed quotations to opinions in which the quoted language does not appear. . . . It makes no difference that the quotation does in fact appear in another case or that the misquoted language is supported generally by [the cited case].").

- 13 -

basis for his claim." (*Id.* at 7.)

In response, Plaintiff argues that "Defendant admits that it is for a jury to determine whether Defendant wrongfully exercised its contractual power" and thus "it cannot be resolved at the pleading stage." (Doc. 24 at 1.) Plaintiff then argues that Defendant's motion "should be denied for three reasons." (*Id.*) First, Plaintiff argues that Defendant's argument "that no contract exists . . . fails because two contracts exist: (1) the Certification of Trust is a written contract containing offer, acceptance, consideration, and sufficient specification of terms; and (2) an implied contract exists based on Defendant's conduct in accepting the Certification and opening accounts." (*Id.*, citations omitted.) Second, Plaintiff argues that "Defendant admits that when a bank is 'directly and contractually involved in the transaction,' it is for the jury to determine whether the bank 'wrongfully exercised a contractual power'" and that "[t]his admission defeats Defendant's Motion to Dismiss." (*Id.* at 2.) Third, Plaintiff argues that he "has alleged that Defendant closed [his] accounts without explanation and refused to produce the policy that would explain the closure" and that "[w]hether Defendant's conduct was wrongful is a fact-specific question that requires discovery" and "preclude[s] dismissal." (*Id.*) Next, Plaintiff provides a lengthy statement of facts. (*Id.* at 2-4.)[17] As for Plaintiff's argument that there are two contracts, Plaintiff's first contract theory is that (1) "Defendant provided the Certification of Trust form to Plaintiff" and that "[t]his was an offer: Defendant offered to open accounts if Plaintiff indorsed the Certification of Trust and provided the required indemnifications"; (2) "Plaintiff indorsed the Certification of Trust" and "Defendant accepted it and opened multiple accounts for Plaintiff" and "[t]his is acceptance"; and (3) "Plaintiff provided indemnifications to Defendant in the Certification of Trust" and "Defendant opened accounts for Plaintiff" and "[t]his is consideration: Plaintiff gave something of value (indemnifications), and Defendant gave something of value (accounts)." (*Id.* at 5.)

---

[17] Several of the facts included in Plaintiff's "Statement of Facts" are not found anywhere in the complaint. Because Defendant's motion is brought pursuant to Rule 12(b)(6), the Court will not consider factual allegations outside the pleadings. *Ritchie*, 342 F. 3d at 907. At any rate, even if the Court were to consider them, they would not alter the dismissal analysis.

Plaintiff also argues that the "Certification of Trust contains sufficient specification of terms so that the obligations involved can be ascertained" because it "specifies the terms under which Defendant agreed to open and maintain accounts for Plaintiff" and "[t]he obligations of both parties are clear: Plaintiff provides indemnifications, and Defendant opens and maintains accounts in good faith." (*Id.* at 6.) Plaintiff further argues that Defendant was obligated to accept his signature "without prejudice" because "Defendant DID accept it" and "opened multiple accounts for Plaintiff," so "Defendant cannot now argue that Defendant was not obligated to accept the Certification after Defendant already accepted it and acted upon it by opening accounts." (*Id.*) As for Plaintiff's second contract theory, he argues that "[a]n implied contract was formed by the parties' conduct"—namely, "Plaintiff presented the Defendant's Certification of Trust to Defendant," "Defendant accepted it and opened multiple accounts for Plaintiff," "Defendant maintained the accounts," and "[t]his conduct manifested an agreement to maintain the accounts in good faith." (*Id.*) Next, Plaintiff argues that Defendant breached the implied covenant of good faith and fair dealing by "clos[ing] Plaintiff's accounts without explanation, refus[ing] to produce the policy that would explain the closure, refus[ing] to consult with Plaintiff in good faith, and fil[ing] a false Certificate of Consultation." (*Id.* at 8.)[18] Plaintiff also argues that he suffered harm—namely, "los[s] [of] access to banking services, . . . reputational harm, and . . . costs." (*Id.*) Next, Plaintiff argues that "Defendant is directly and contractually involved with Plaintiff through the Certification of Trust and the account agreements,"[19] that "Defendant wrongfully exercised its contractual power by closing Plaintiff's accounts without explanation," and that this "is a jury question." (*Id.*) Plaintiff also argues that he need not identify a specific contractual provision that was breached. (*Id.* at 9.) Next, Plaintiff argues that the "Burton test" is "fulfilled" because (1) "Defendant

[18]     To the extent Plaintiff is attempting to argue that his implied covenant claim is based on defense counsel's alleged failure to consult with him before filing the motion to dismiss, that argument is without merit for the reasons explained in footnote 1.

[19]     It is unclear what Plaintiff is referring to when he mentions "the account agreements." To the extent Plaintiff is referring an agreement between the Trust and Defendant, Plaintiff has not specified what that agreement is, what its terms are, or why he, in his personal capacity, has standing to enforce that unspecified agreement.

had discretion to close Plaintiff's accounts"; (2) "Defendant exercised its contractual power wrongfully"; (3) the Court cannot determine if Defendant acted "for a reason beyond the risks" that Plaintiff assumed because Defendant has refused to produce its internal policies; and (4) the presence of fact-issues requires dismissal. (*Id.* at 9-10.)[20]

In reply, Defendant argues that Plaintiff's response "does little to rebut the fact that his Complaint fails to allege a critical prerequisite for his claim of breach of the implied covenant of good faith and fair dealing—the existence of a valid and enforceable contract." (Doc. 26 at 1.) Defendant also argues that both of Plaintiff's contract theories fail. (*Id.*) First, Defendant argues that "the Certification of Trust upon which Plaintiff relies is simply not a contractual agreement between the parties" and "is nothing more than a representation made by Plaintiff, in his capacity as trustee, summarizing the terms of the trust." (*Id.*) Defendant argues that "[t]here are no obligations imposed upon [it] in the Certification of Trust (nor could there be) and the essential elements of contract formation . . . are neither pled nor met." (*Id.* at 1-2.) Defendant argues that the "Certification of Trust is nothing more than a statutorily created instrument under which a trustee can provide specific categories of information to a third-party instead of furnishing trust documents." (*Id.* at 4.) And Defendant reiterates that it "is not a 'party' to the Certification of Trust, but rather a 'recipient' of it." (*Id.*) Defendant also reiterates that "neither the Certification of Trust nor A.R.S. § 14-11013 create binding obligations on [Defendant]" and instead "both provide safe harbors for [Defendant] as a recipient of the representations contained therein." (*Id.*) Defendant argues that "[c]ontrary to Plaintiff's arguments, [Defendant's] request that Plaintiff provide a certification of trust is not an 'offer'; it is simply a request for information in lieu of requiring disclosure of confidential trust instruments." (*Id.* at 5.) Defendant also argues that there was no "acceptance" because "there are no terms to which the parties are agreeing" and that the Certification of Trust and the complaint "lack[] any

---

[20] Plaintiff's prayer for relief and his proposed order appear to ask the Court to compel the production of various documents as well as to require certain of Defendant's employees to be available for deposition. (Doc. 24 at 12, 16.) Because the Court grants Defendant's motion to dismiss, Plaintiff's apparent request for expedited discovery is denied as moot.

allegations to provide the required elements of consideration and mutual assent." (*Id.*) Second, Defendant argues that "Plaintiff's assertion of an implied contract fails for the same reason"—i.e., "Plaintiff has failed to plead the essential elements of the contract." (*Id.* at 2.) Specifically, Defendant argues that "[o]ther than concluding that [Defendant's] 'acceptance' of the Certification of Trust created a binding contractual relationship between the parties, Plaintiff fails to allege any facts to support the required elements of contract formation and fails to provide sufficient allegations for this Court to determine the terms of the alleged implied contract between the parties," and "[w]hile Plaintiff argues that either the Certification of Trust or [Defendant's] acceptance of the Certification of Trust created an express or implied contract between the parties, Plaintiff makes no allegations to substantiate when and to what extent the contracts applied." (*Id.* at 6.) Defendant also emphasizes that there is "no contractual agreement between Plaintiff, individually, and [Defendant]" and notes that "Plaintiff does not argue that the basis for his claim for breach of the implied covenant of good faith and fair dealing is a contractual relationship between the Trust and [Defendant] after the Trust accounts were opened," "[n]or can he," because, "[a]fterall, Plaintiff, in his individual capacity, would not be a party to any agreement between [Defendant] and the Trust." (*Id.* at 6 & n.2.) Third, Defendant argues that "even if Plaintiff had sufficiently alleged the existence of an express or implied contract . . . , Plaintiff's claim for breach of the implied covenant of good faith and fair dealing still fails" because "Plaintiff has not pled, nor can he, the essential elements required for his claim—namely, the terms of the alleged agreement." (*Id.* at 2.) Defendant argues that "[w]ithout the terms, the Court cannot assess whether Plaintiff had a justifiable expectation that [Defendant] would either accept the Certification of Trust without reserving any rights, or maintain Plaintiff's unidentified accounts open in perpetuity without proper documentation." (*Id.*)

C.    **Analysis**

"Arizona law implies a covenant of good faith and fair dealing in every contract." *Keg Rests. Ariz., Inc. v. Jones*, 375 P.3d 1173, 1186 (Ariz. Ct. App. 2016). "The covenant

requires that neither party do anything that will injure the right of the other to receive the benefits of their agreement." *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1038 (Ariz. 1985).

It is a "well-settled principle that a contract must exist before there can be a breach of the covenants of good faith and fair dealing implied in every contract." *Norman v. State Farm Mut. Auto. Ins. Co.*, 33 P.3d 530, 532 (Ariz. Ct. App. 2001). Put differently, "[w]hile every contract contains implied covenants of good faith and fair dealing, such covenants presume the existence of a valid contract." *Id.* at 537. *See also Wassef v. JPMorgan Chase Bank, N.A.*, 2013 WL 1123678, *3 (D. Ariz. 2013) ("The lack of an enforceable contract is also fatal to Plaintiffs' breach of the covenant of good faith and fair dealing claim.").

"For an enforceable contract to exist, there must be an offer, acceptance, consideration, a sufficiently specific statement of the parties' obligations, and mutual assent." *Buckholtz v. Buckholtz*, 435 P.3d 1032, 1035 (Ariz. Ct. App. 2019) (cleaned up). "The party seeking enforcement of the contract has the burden of proving its existence." *Slater v. Arizona*, 2019 WL 5801981, *3 (D. Ariz. 2019).

### 1.    Theory 1: The Certification Of Trust

Plaintiff's first contract theory is that the Certification of Trust is itself "a written contract that satisfies all four elements" of a valid contract. (Doc. 24 at 5, cleaned up.) This theory fails because (1) the Certification of Trust does not constitute an "offer"; and (2) the Certification of Trust is not itself a contract.

First, Defendant's act of providing the Certification of Trust form to Plaintiff was not an "offer." "An offer is a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Muchesko v. Muchesko*, 955 P.2d 21, 25 (Ariz. Ct. App. 1997) (cleaned up). In the Certification of Trust, Defendant does not "offer" to open accounts for Plaintiff if he signs the Certification of Trust and agrees to the indemnification provision. Rather, the Certification of Trust is merely a summary document of the terms of the underlying trust, provided by Plaintiff to Defendant in lieu of "furnishing a copy of the trust

- 18 -

instrument," that certifies "1. That the trust exists and the date the trust instrument was executed. 2. The identity of the settlor. 3. The identity and address of the currently acting trustee. 4. The powers of the trustee. 5. The revocability or irrevocability of the trust and the identity of any person holding a power to revoke the trust. 6. The authority of cotrustees to sign or otherwise authenticate and whether all or less than all are required in order to exercise powers of the trustee. 7. The manner of taking title to trust property." A.R.S. § 14-11013. (*See also* Doc. 21 at 11 ["This Certification, effective upon execution, is provided to Bank by the Trustee(s) of the trust identified above, instead of and in place of any one or more pages of (a) the original trust instrument, (b) any amendment to the original trust instrument, and (c) any restatement of the original trust agreement."].) The Certification of Trust provides that Defendant "will . . . rel[y]" on it "to open, close, or maintain account(s) in the Trust." (Doc. 21 at 10.) But the Certification of Trust contains no offer by Defendant that if Plaintiff signs it and agrees to indemnify Defendant, then Defendant will open bank accounts for Plaintiff. Put simply, the Certification of Trust itself does not constitute an offer.

Second, the Certification of Trust itself is not a contract. As discussed above, the Certification of Trust contains no offer by Defendant to open accounts if Plaintiff signs the Certification of Trust and agrees to indemnify Defendant. And because there was no offer by Defendant, Plaintiff's completion of the Certification of Trust and delivery of that completed document to Defendant did not qualify as an acceptance. *Cf. Fletcher v. Ricks Expl.*, 905 F.2d 890, 893 (5th Cir. 1990) ("Without an offer, there can be no acceptance."); *AmTrust N. Am., Inc. on behalf of Tech. Ins. Co., Inc. v. Signify Ins. Ltd.*, 2019 WL 3034891, *7 (S.D.N.Y. 2019) ("Without an offer, there was no acceptance because Signify could not accept what was not offered.") (cleaned up). Indeed, Plaintiff's signature on the Certification of Trust—which is what Plaintiff appears to argue was the "acceptance" under his first contract theory (Doc. 24 at 5)[21]—was made to "swear or affirm under penalty of

---

[21] Plaintiff appears to argue there were two "acceptances"—Plaintiff "indors[ing] the Certification of Trust" and "Defendant accept[ing] it and open[ing] multiple accounts for Plaintiff." (Doc. 24 at 5.) Because Plaintiff's first contract theory is premised on *Defendant* allegedly making an offer, the Court interprets Plaintiff's argument to be that

perjury that the foregoing is true and correct" (Doc. 21 at 12), not to "accept" anything.

The Certification of Trust also lacks the required consideration. "To constitute consideration, a performance or a return promise must be bargained for. A performance or return promise is bargained for if sought or given in exchange for the promise of the other party." *Schade v. Diethrich*, 760 P.2d 1050, 1057 (Ariz. 1988). Even if Plaintiff had alleged that Defendant promised to open accounts, there is no indication in the Certification of Trust or the allegations in the complaint that Plaintiff's endorsement of the Certification of Trust and agreement to indemnify Defendant was "sought or given in exchange for the promise of" Defendant to open accounts. *Id.* Plaintiff argues that Defendant "gave something of value (accounts)" (Doc. 24 at 5), but as discussed, there is no mention anywhere that this act was done *in exchange for* Plaintiff's endorsement of the Certification of Trust. Last, because these terms are not mentioned in the Certification of Trust itself, it does not contain "a sufficiently specific statement of the parties' obligations." *Muchesko*, 955 P.2d at 24. Put simply, the Certification of Trust is a summary document that is not, itself, a contract.[22]

### 2.    Theory 2: Implied Contract

Plaintiff's second contract theory is that an implied contract exists between the parties. Specifically, Plaintiff's argument appears to be that his presentation of the Certification of Trust to Defendant was an "offer," and that "Defendant accepted it and

his endorsement of the Certification of Trust was the acceptance. With respect to his first contract theory, Plaintiff has not argued, and the complaint does not allege, that Plaintiff's endorsement of the Certification of Trust was somehow a valid counteroffer that was thereafter accepted by Defendant. At any rate, and as discussed below, Plaintiff's second contract theory is premised on his endorsement of the Certification of Trust serving as the offer and Defendant's acceptance of the Certification of Trust and opening accounts serving as the "acceptance." Thus, any argument by Plaintiff with respect to his first contract theory that his endorsement served as a valid counteroffer would be subject to the same dismissal analysis as his second contract theory—which the Court rejects below.

[22]    In an analogous context, several courts have concluded that "certificates of insurance" are summary documents and not themselves contracts. *See, e.g.*, *Pilgrim's Pride Corp. v. Allegiant Elec., Inc.*, 717 F. Supp. 3d 1036, 1046 (D. Colo. 2024) ("In Colorado, a certificate of insurance is not a contract of insurance but is merely the evidence that a contract has been issued.") (cleaned up); *Vrazel v. Long Island Railroad Co.*, 2017 WL 2559137, *3 (E.D.N.Y. 2017) ("LIRR offered a certificate of liability insurance as evidence that S&B had to indemnify them, but the certificate is not a contract . . . .")

opened multiple accounts for Plaintiff" and "maintained the accounts" such that Defendant's "conduct manifested an agreement to maintain the accounts in good faith." (Doc. 24 at 6.)  This theory fails for similar reasons as Plaintiff's first contract theory.  To the extent Plaintiff is arguing that by signing the Certification of Trust he made an "offer" to Defendant, that argument is without merit.  Once again, a Certification of Trust is a summary document provided to a banking institution in lieu of providing trust documents themselves—and banks, such as Defendant, are statutorily permitted to rely on such certifications.  A.R.S. § 14-11013.  Plaintiff's endorsement of the Certification of Trust is merely an affirmation, under penalty of perjury, that the information he is providing about the underlying trust is accurate. (Doc. 21 at 12.)  Nothing in the terms of the Certification of Trust, nor in the allegations in the complaint, indicates that Plaintiff signed the Certification of Trust and agreed to the indemnification provision as an offer seeking, *in exchange for that offer*, Defendant's promise to open accounts.  Therefore, Plaintiff's second contract theory also fails.

### 3.    Summary

Because Plaintiff's first and second contract theories fail, there is no valid contract alleged.  As a result, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing necessarily fails.[23]

III.    Plaintiff's Motion For Leave To File A FAC

A.    **The Parties' Arguments**

After Defendant's motion to dismiss became fully briefed, Plaintiff moved for leave to file a FAC.  (Doc. 35.)  Plaintiff argues his request should be granted because there is "[n]o undue delay," "[n]o bad faith or dilatory motive," "[n]o repeated failure to cure," "[n]o undue prejudice," the proposed amendments are "[n]ot futile," and the "proposed amendment seeks to add parties whose conduct giving rise to liability occurred after the original complaint was filed." (*Id.* at 1-2.)  Plaintiff also belatedly filed a redlined copy of

---

[23]    This conclusion renders it unnecessary to reach Defendant's alternative dismissal arguments premised on the remaining elements of an implied covenant claim.

his proposed FAC. (Doc. 45.) In a nutshell, Plaintiff's proposed FAC seeks to do the following: (1) add Defendant's counsel in this action—Greenberg Traurig, LLP ("Greenberg Traurig"), Nicole M. Goodwin ("Goodwin"), and Adrianna G. Gorton ("Gorton")—as defendants; (2) revise Plaintiff's claim for breach of the implied covenant of good faith and fair dealing against Defendant; (3) add a claim for fraudulent concealment against Defendant; (4) add a claim for intentional interference with contractual relations against Defendant; and (5) add a claim for aiding and abetting fraudulent concealment against Greenberg Traurig, Goodwin, and Gorton. (*Id.*)

Defendant opposes the request, arguing that (1) "Plaintiff's theory of liability based on [Defendant's] alleged 'failure' to produce its 'internal policies' is legally baseless" (Doc. 48 at 5-7, cleaned up); (2) "Plaintiff's claim for breach of the implied covenant of good faith and fair dealing continues to fail for the same reasons argued" in Defendant's motion to dismiss (*id.* at 7); (3) Plaintiff's proposed fraudulent concealment claim fails because it fails to plead a transaction, fails to plead that Plaintiff was ignorant of such concealment or any intent that such concealment "be acted upon," and fails to satisfy the heightened pleading requirements of Rule 9(b) (*id.* at 8-9); (4) Plaintiff's proposed claim for intentional interference with contractual relations fails because it is "based on the alleged banking relationship between [Defendant] and Plaintiff," yet one cannot tortiously interfere with a contract to which it is alleged to be a party, and because Plaintiff fails to plead "improper" conduct (*id.* at 9-10); and (5) Plaintiff's proposed aiding and abetting claim fails because there is no primary tort, Plaintiff's knowledge allegations are conclusory, Plaintiff fails to plead "substantial assistance," and Plaintiff's claim merely repackages his unsuccessful motion for sanctions (*id.* at 10-11). Defendant also argues that Plaintiff's request should be denied because it was sought in bad faith. (*Id.* at 12-13.)

In reply, Plaintiff first argues that his proposed amendment to his implied covenant claim is not futile because "the contractual relationship cannot be disputed." (Doc. 49 at 2, cleaned up.) Specifically, Plaintiff argues that the Certification of Trust states that it "will be relied upon by [Defendant] to open, close, or maintain deposit account(s)"; that

Defendant "accepted the Certification of Trust, opened the account, and operated under it for the duration of the relationship"; and that this "is offer, acceptance, and performance." (*Id.*)  Plaintiff also argues that "Defendants have already adopted the position that there is a contract" because "[i]n their Opposition to Plaintiff's Motion to Substitute (Doc. 19), Defendants affirmatively invoked A.R.S. § 12-341.01—Arizona's statute for fee awards in actions 'arising out of a contract, express or implied.'" (*Id.*)  Next, Plaintiff argues that "this Court has already resolved the standing and real-party-in-interest question" in its March 10, 2026 order.  (*Id.*, citing Doc. 20.)  Plaintiff also reiterates that he has suffered damages.  (*Id.* at 2-3.)  As for his proposed fraudulent concealment claim, Plaintiff argues that it satisfies the "who, what, when, where, and how" requirements of Rule 9(b).  (*Id.* at 3.)  Plaintiff also argues that Gorton stated to him that "[Defendant] is under no obligation to produce internal policies (even if relevant)" and that "[t]his reversal stands in direct contradiction to her September 24, 2025 statement that internal policies 'would likely come during the course of discovery.'"  (*Id.* at 4.)  Plaintiff argues that "[t]he document progression from acknowledgment, to promise, to silence, to reversal, to threat is consistent with a mindset shift upon engagement with the preservation case file" and that "[f]rame of mind is central to fraudulent concealment."  (*Id.*)  Next, Plaintiff argues that statements by Defendant's counsel are "binding admissions under FRE 801(d)(2)."  (*Id.*)  As for his proposed tortious interference and aiding and abetting claims, Plaintiff argues that Defendant is "correct" that "a party cannot interfere with its own contract," but he argues that Greenberg Traurig, Goodwin, and Gorton "are third parties" who "are not signatories to the Certification of Trust, nor are they parties to the banking relationship."  (*Id.* at 5.)  Plaintiff further argues that his tortious interference claim has plausibility because "(1) a valid contractual relationship exists; (2) [Greenberg Traurig], Goodwin, and Gorton had knowledge of that relationship; (3) they intentionally interfered by withholding evidence and misrepresenting [Defendant's] preservation obligations; (4) resulting in damage to Plaintiff; and (5) their actions were improper."  (*Id.*)  Plaintiff also argues that Greenberg Traurig, Goodwin, and Gorton "aided and abetted [Defendant's] breach by providing

- 23 -

substantial assistance in the ongoing concealment." (*Id.*) Plaintiff also argues that his motion for judicial notice (Doc. 27) "demonstrate[s] a documented pattern of institutional bad faith that provides critical context for the plausibility of these claims." (*Id.* at 6.) Last, Plaintiff argues "Defendants have . . . offered a premature merits attack that ignores the 53 exhibits already lodged with the Court (Doc. 38) and the sworn declaration establishing damages (Doc. 40)." (*Id.*)[24]

B. **Legal Standard**

Plaintiff's amendment request is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which "advises the court that leave shall be freely given when justice so requires." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (cleaned up). "This policy is to be applied with extreme liberality." *Id.* (cleaned up). Thus, leave to amend should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Additionally, "[a] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (cleaned up). "[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992), as amended (May 22, 1992).

C. **Analysis**

As an initial matter, Plaintiff's amendment request is futile because the Court would lack subject-matter jurisdiction over the proposed FAC.[25] The proposed FAC alleges that

---

[24]　Separately, Plaintiff "formally apologize[s] to the Court for the procedural errors that led to the revocation of [his] ECF filing privileges" and acknowledges that although he "is navigating this complex litigation pro se, ignorance of the local rules is no excuse." (*Id.* at 1.) Plaintiff states that he "deeply respects this Court, its time, and its procedures and is committed to strict compliance with all filing requirements moving forward." (*Id.* at 1-2.)

[25]　Although Defendant did not raise this argument, the Court has an independent

Plaintiff is a citizen of Arizona and that subject-matter jurisdiction exists under 28 U.S.C. § 1332(a) (diversity jurisdiction) because Defendant and Greenberg Traurig are citizens of Ohio and Florida, respectively. (Doc. 45 at 3.)

The problem with this approach is that the proposed FAC alleges that Goodwin and Gorton are, like Plaintiff, citizens of Arizona. (*Id.*) Although the proposed FAC asserts that Plaintiff's shared Arizona citizenship with Goodwin and Gorton is of no moment because the Court has supplemental jurisdiction over his claims against them under 28 U.S.C. § 1367(a) (*id.*), Plaintiff is mistaken on this point—he cannot use supplemental jurisdiction to avoid the complete diversity requirement. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553-54 (2005) ("[W]e have consistently interpreted § 1332 as requiring complete diversity: In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action. . . . In order for a federal court to invoke supplemental jurisdiction . . . , it must first have original jurisdiction over at least one claim in the action. Incomplete diversity destroys original jurisdiction with respect to all claims, so there is nothing to which supplemental jurisdiction can adhere.").[26]

Plaintiff's amendment request also fails for other reasons. As for the proposed FAC's amendments to Count One (breach of the implied covenant of good faith and fair dealing), Defendant is correct that the proposed FAC fails to cure the deficiency identified in Section II above—namely, that "Plaintiff does not plausibly allege the existence of a contractual relationship between Plaintiff and [Defendant]." (Doc. 48 at 7.)[27] Thus,

_____

obligation to determine whether it has subject-matter jurisdiction. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

[26] This is not the only problem with the proposed FAC's jurisdictional allegations. The proposed FAC alleges that Greenberg Traurig is a citizen of Florida because it is a limited liability partnership "organized under the laws of the State of Florida, with its principal office in Miami, Florida" (Doc. 45 at 3), but "a partnership is a citizen of all of the states of which its partners are citizens." *Wells Fargo Bank NA v. WPT Props. LP*, 2025 WL 3264545, *2 (D. Ariz. 2025) (quoting *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006)). The FAC does not provide the required allegations on this topic.

[27] Indeed, Plaintiff's reply confirms that he is relying on the same contract theory

Plaintiff's proposed amendment to Count One is futile.

As an aside, the proposed FAC now alleges that Chase "invoked the Deposit Account Agreement's 'at-will' clause," which provides that accounts may be closed "at any time and for any reason or no reason without prior notice," when closing the accounts. (Doc. 45 at 7.) But the proposed FAC does not allege, and Plaintiff does not argue in his motion for leave to amend or in his reply, that this "Deposit Account Agreement" is the contract underlying his implied covenant claim. To the contrary, the proposed FAC continues to identify the Certification of Trust as the document giving rise to the alleged contract. (Doc. 45 at 9 ["[Defendant] accepted the Certification of Trust and opened the account, forming a binding contractual relationship governed by the Uniform Commercial Code."].)

As for the proposed FAC's claim for fraudulent concealment, amendment would be futile. This claim appears to be premised on Defendant's alleged refusal, in advance of the formal discovery process in this case, to provide Plaintiff with the internal policy upon which Defendant based its decision to close the trust accounts. This claim fails for at least three reasons. First, it is nothing more than an attempt to end-run Rule 26(d)(1), which provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Plaintiff cannot amend his complaint to assert a tort claim as a means of short-circuiting the discovery process. Second, Defendant is correct that Plaintiff has not identified, and cannot identify, a "transaction" in which Plaintiff and Defendant were parties. *Hale v. Norcold Inc.*, 2019 WL 3556882, *2 (D. Ariz. 2019) ("Under Arizona law, a fraudulent concealment claim transpires when one party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter the other was prevented from discovery. Under this definition, it is clear that the Plaintiffs' claim should immediately

discussed, and rejected, above—i.e., that Defendant accepted the Certification of Trust and opened accounts and that this "is offer, acceptance, and performance." (Doc. 49 at 2.)

- 26 -

fail because the Plaintiffs and the Defendants were never parties to the same transaction.")
(cleaned up). Plaintiff's and Defendant's status as parties to this *litigation* does not transform them into "parties to the same transaction." *Id.*[28] Third, Plaintiff's disagreement with Defendant's alleged refusal to provide its internal policies to Plaintiff was, in part, the subject of Plaintiff's motion for sanctions against Defendant's attorneys (Doc. 46 at 8-9), which the Court already denied (Doc. 47).[29]

As for the proposed FAC's claim for intentional interference with contractual relations, amendment would also be futile. "Arizona has long recognized the tort of intentional interference with contractual relations. A prima facie case of intentional interference requires," among other things, the "existence of a valid contractual relationship." *Wells Fargo*, 38 P.3d at 31. The proposed FAC appears to allege that the contractual agreement that exists is between Plaintiff and Defendant and that Defendant interfered with this contract (Doc. 45 at 9), but "[a]s a general rule, a party cannot be held liable in tort for intentional interference with its own contract." *Wells Fargo*, 38 P.3d at 31 n.19.[30]

As for the proposed claim for aiding and abetting fraudulent concealment against Greenberg Traurig, Goodwin, and Gorton, such a claim requires, among other things, the commission of an underlying tort by a primary tortfeasor. *Id.* at 23 ("Claims of aiding and abetting tortious conduct require proof of three elements: (1) the primary tortfeasor must commit a tort that causes injury to the plaintiff . . . ."). Putting aside the jurisdictional

---

[28] Plaintiff confusingly argues, without support, that "[t]he transaction at issue is the account closure itself." (Doc. 49 at 3.) But Plaintiff, in his personal capacity, was not a party to the banking relationship between Defendant and the Trust (even if Plaintiff was acting on behalf of the Trust in his capacity as trustee).

[29] This conclusion makes it unnecessary to address Defendant's Rule 9(b) arguments.

[30] In his reply, Plaintiff agrees that "a party cannot interfere with its own contract" but argues that Greenberg Traurig, Goodwin, and Gorton "are third parties" that tortiously interfered in the alleged banking relationship between Plaintiff and Defendant. (Doc. 49 at 5.) This argument is without merit for at least two reasons. First, the proposed FAC asserts the tortious interference claim against Defendant only, and not against Greenberg Traurig, Goodwin, and Gorton. (Doc. 45 at 9.) Second, as discussed above, to the extent Plaintiff intended to bring this claim against Goodwin and Gorton (and to the extent Greenberg Traurig has any partners with Arizona citizenship), any assertion of this claim against those defendants would defeat complete diversity.

issues regarding Greenberg Traurig, Goodwin, and Gorton that are addressed elsewhere in this order, because Plaintiff has not asserted, and cannot assert, a claim for fraudulent concealment premised on Defendant's alleged refusal to provide Plaintiff with its internal policies, his proposed aiding and abetting claim fails.[31]

IV.    Further Leave To Amend

The rule in the Ninth Circuit is that "[a] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar*, 698 F.3d at 1212 (cleaned up). The Court has serious doubts that Plaintiff will be able to identify an underlying contract between himself, in his personal capacity, and Defendant sufficient to support his claim for breach of the implied covenant of good faith and fair dealing. Nevertheless, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdik*, 963 F.2d at 1261. The Court has not yet given Plaintiff notice that his complaint is deficient because it fails to allege an underlying contract sufficient to support an implied covenant claim. Accordingly, the Court will grant Plaintiff leave to amend, but only to address the deficiencies discussed above with respect to Count One. *Cf. United States ex rel. Relator, LLC v. Erskine*, 2026 WL 2041561, *7 (9th Cir. 2026) ("In denying leave to amend, the district court noted that CalCon and Erskine had challenged this theory in their motion to dismiss the original complaint, and that Relator failed to cure the pleading deficiency when it voluntarily amended its complaint. We have never held that failing to cure all pleading deficiencies after a single, voluntary amendment necessarily means further amendment would be futile. To the contrary, our precedents indicate that the '*[r]epeated* failure to cure deficiencies by amendments previously allowed' is indicative of the futility of future amendment. Relator here elected to amend its complaint as a matter of course after CalCon and Erskine filed a motion to dismiss but

---

[31]    Because Plaintiff's proposed amendments are futile, it is unnecessary to reach Defendant's arguments regarding bad faith. (Doc. 48 at 12-13.)

before the district court had an opportunity to address the arguments presented therein. In other words, when it filed its amended complaint, Relator did not have the benefit of a court order identifying specific deficiencies in its pleading. When it issued its order crediting CalCon and Erskine's challenge to the employee headcount theory, the district court should have given Relator an opportunity to amend its complaint to address the district court's concerns.") (citations omitted). However, leave to amend is denied on futility grounds as to other new claims that Plaintiff sought to raise in the proposed FAC and as to the new Defendants that Plaintiff sought to name in the proposed FAC.

Accordingly,

**IT IS ORDERED** that:

1.    Defendant's motion to dismiss (Doc. 22) is **granted**. The complaint (Doc. 21) is dismissed.

2.    Plaintiff's motion for judicial notice (Doc. 27) is **granted in part and denied in part**.

3.    Plaintiff's motion for leave to file his proposed FAC (Doc. 35) is **denied**.

4.    Within 14 days of the issuance of this order, Plaintiff may file a FAC. The changes shall be limited to addressing the deficiencies identified above regarding Count One. Plaintiff shall, consistent with LRCiv 15.1, attach, as an exhibit, a redlined version of the pleading showing any changes made from the complaint filed at Doc. 21.

5.    If Plaintiff does not file a FAC within 14 days of the issuance of this order, the Clerk shall enter judgment accordingly and terminate this action.

Dated this 17th day of July, 2026.

Dominic W. Lanza
United States District Judge